**IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE BLACK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00101 |
| | ) | Judge Matthew F. Kennelly |
| CHERIE WRIGLEY, MELISSA COHENSON, BRAIN A. RAPHAN, P.C. and PAMELA KERR, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CHERIE WRIGLEY'S
MOTION TO DISMISS**

**Murray Mancilla & Fantone, LLP
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225 – 6686
F (646) 655 – 0269
June 12, 2017**

**PRELIMINARY STATEMENT**

On January 29, 2016, Plaintiff's husband, Bernard Black, filed an action for a declaratory judgment against his sister Joanne Black ("Joanne"), a long-time sufferer of mental health illness, in an effort to continue the multi-million dollar fraud he committed against her.[1] On July 13, 2016, the Honorable Virginia M. Kendall dismissed the complaint with prejudice for lack of personal jurisdiction. Plaintiff now brings the instant action subsequent to two additional actions currently pending in the Eastern District of New York[2] to continue the pattern of harassing litigation the Black family has perpetuated against Ms. Wrigley and the other Defendants, who assisted in defending Joanne from the Plaintiff and her husband.

When Plaintiff's mother-in-law Renata Black passed away in 2012, she left 95% of her assets to Mr. Black's sister Joanne, who was suffering from schizophrenia at the time. In 2011, Renata Black adjusted her estate plan to leave 100% to Joanne, but decided sometime before her death to leave 1% to each of Mr. Black's children from his first marriage. Since that time, Plaintiff and her husband, both attorneys and law school professors at Northwestern University ("Northwestern"), have stopped at nothing to steal Joanne's assets.

With respect to the instant action, count 3 of the Complaint (Defamation) must be dismissed because Ms. Wrigley's alleged defamatory publications are substantially true, constitute non-actionable opinion, and do not fall under the limitedly defined categories of defamation *per se*. Plaintiff also failed to plead special damages. As to count 8 of the

---

[1] *See Bernard Black and Samuel Black v. Joanne Black*, No. 16-cv-01763 (VMK)
[2] *Black, et. al. v. Dain, et al.,* No.16-cv-01238 and *Black et. al. v. Wrigley, et al.*, No.1:17-cv-00101(motions to dismiss pending)

Complaint (Assault), Plaintiff failed to allege that she was in reasonable apprehension of fear from an *imminent* danger due to Ms. Wrigley's alleged threats.

As to count 1 of the Complaint (Intentional Infliction of Emotional Distress), Plaintiff's allegations fail to constitute extreme and outrageous conduct. Count 2 of the Complaint (Conspiracy) is not an independent tort under Illinois law. As to count 4 of the Complaint (Interference with Contractual Relations and Economic Advantage), Plaintiff did not plead an actual breach of contract nor that Ms. Wrigley was aware of an economic expectancy.

As to count 5 of the Complaint (Intrusion Upon Seclusion), Plaintiff failed to plead any intrusive actions on the part of Ms. Wrigley. As to count 6 of the Complaint (Publication of Private Acts), Plaintiff did not plead that the facts Ms. Wrigley published were shocking, only that her act of publication was alarming. As to count 7 of the Complaint (Stalking and Cyber Stalking), Illinois does not recognize such torts. Thus these counts of the Complaint must be dismissed.

## STATEMENT OF FACTS

Prior to the death of Renata Black, Plaintiff and her husband were hoping to receive one-third of Renata's roughly $4 million estate. However, Renata Black designated 95% of those assets payable on death ("POD") to her daughter Joanne, leaving Plaintiff and her two children entirely unaccounted for. Exhibit A at 8-9.[3]

After Renata Black's death in May 2012, Mr. Black and Plaintiff began to implement a scheme to steal the assets that the late Renata Black left to Joanne. On October 16, 2012, Plaintiff's husband petitioned the Denver Probate Court ("DPC") to

---

[3] *See* the DPC's September 28, 2015 order, attached hereto as Exhibit A.

permit him to manage Joanne's assets. *Id.* at 2. Joanne was suffering from extreme mental illness at the time, living on the streets of Denver. *Id.* at 2. By making repeated misrepresentations to the DPC, Joanne's counsel, and Joanne's guardian *ad litem*, Plaintiff's husband succeeded in disclaiming more than $3 million of Joanne's POD assets, which caused one-third of the assets to go to him and his children, including Plaintiff's children. *Id.* at 7. In addition, he stole a Roth IRA worth more than $500,000. *Id* at 10, 11.

In September 2014 Ms. Wrigley[4] and her brother Anthony Dain began to uncover Plaintiff's and Mr. Black's fraudulent scheme . Ms. Wrigley and Mr. Dain filed objections with the DPC and requested a forensic accounting. *Id.* Subsequently, Ms. Wrigley filed a cross-petition in a proceeding that Mr. Black had instituted in New York State Supreme Court, Richmond County ("RSC") to become legal guardian over Joanne's property. Once the DPC published its September 28, 2015 order, Mr. Black essentially withdrew from the RSC proceedings and the RSC granted Ms. Wrigley's cross-petition for guardianship.

However, due to alleged procedural errors in entering the judgment, the RSC issued a December 15, 2015 order directing the relevant parties to take proper action to enter the judgment. In response, Plaintiff filed a letter with the RSC, dated January 7, 2016, asserting false and disparaging remarks about Ms. Wrigley and the other parties who had assisted in uncovering Mr. Black's fraud in Denver. Ms. Wrigley's response to such letter serves as the foundation for the causes of action in the instant Complaint.[5]

---

[4] Ms. Wrigley spent her career as a school counselor working with gifted and mentally impaired students. Upon retirement, Ms. Wrigley began volunteer work with mentally ill and homeless individuals. *Id.* at 1.
[5] With the exception of Plaintiff's eighth cause of action for Assault.

Since the passing of Renata Black, members of the Black family have filed conservatorship proceedings in the DPC; guardianship proceedings in the RSC; an action in the Supreme Court of the State of New York, New York County; two actions in the United States District Court for the Eastern District of New York; and the instant action.

As noted above, the Black family also filed a complaint for a declaratory judgment against Joanne in this District, which Judge Kendall dismissed for lack of personal jurisdiction. After Judge Leith of the DPC reviewed the complaint in such action she issued the following statement in a February 25, 2016 order[6]:

> Bernard Black and his current wife both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court […] The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this Court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law professor.

Exhibit B, p.5.

Like the instant action, all of these filings were designed to further a scheme to defraud Joanne out of millions of dollars and to intimidate those who came to the aid of Joanne.[7] It is clear that the Black family's litigation strategies are working nicely as they have thus far returned none of the stolen monies and continue to submit filings to intimidate their opponents.

---

[6] *See* the DPC's February 25, 2016 order attached hereto as Exhibit B.
[7] Although Plaintiff's husband had a fiduciary duty as conservator over Joanne's assets in Denver, and remains a fiduciary as trustee of a Supplemental Needs Trust created for the benefit of Joanne, Plaintiff repeatedly labels Joanne as an "associate" that "provided support and encouragement to Defendants' effort to harass and threaten Plaintiff, and sought to benefit from Defendants' illegal actions." Compl. ¶315; *see also* Compl. ¶¶22, 330. Also, as noted above, Plaintiff's husband filed an action against her in this District.

**ARGUMENT**

On a Rule 12(b)(6) motion to dismiss, the Court must review the Complaint in the light most favorable to the Plaintiff, and accept all well-pleaded facts as true. *Huon v. Denton,* 841 F.3d 733, 738 (7th Cir. 2016). A complaint need only contain enough factual content to state a claim for relief that is plausible on its face, (*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2009)) and must contain more than mere labels and conclusions and a formulaic recitation of the elements of a cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted).

When deciding a Rule 12(b)(6) motion, the Court may consider documents of which it can take judicial notice. *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991). The Court may also consider documents incorporated by reference into the complaint, especially if a document is central to Plaintiff's causes of action. *Wright v. Ass. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

**I. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**A. As to Count 3, Ms. Wrigley's alleged Defamatory Publications Are Substantially True, Constitute Privileged Non-Actionable Opinion, Are Not Defamatory *Per Se*, and Plaintiff Failed to Plead Special Damages.**

Plaintiff's third cause of action alleges Defamation. Compl. ¶¶333-359. Plaintiff alleges that Ms. Wrigley contacted individuals at Plaintiff's place of employment, Northwestern, and made false and defamatory statements about Plaintiff related to her involvement in judicial proceedings. Compl. ¶¶ 343, 350. Specifically, Plaintiff alleges that Ms. Wrigley published the following defamatory statements in a January 8, 2016 complaint submitted to Northwestern:

    1.    "that Plaintiff was acting unethically,"

    2.    "that Plaintiff lied to the court,"

    3.    "that Plaintiff falsely represented to the court that her employer was supporting her actions in litigation,"

    4.    "that Plaintiff was using her employer's official letterhead to enable her to lie to the court,"

    5.    "and that Plaintiff is therefore unfit to do her job."

*Id.* at ¶343. Plaintiff also alleges that Ms. Wrigley published a number of defamatory statements to Northwestern contained in Ms. Kerr's January 8, 2017 letter[8]:

    6.    "Plaintiff committed a criminal offense (perjury) in one court,"

    7.    "Plaintiff lied to a different court in her description of Kerr's duties in prior litigation,"

    8.    "that Plaintiff lied to the court by claiming that Plaintiff's employer supports Plaintiff in family litigation,"

    9.    "Plaintiff used her employer's letterhead to enable her to lie to the court."

    10.    "Plaintiff acted unethically in litigation."

    11.    "Kerr's letter also strongly intimated that Plaintiff committed other criminal violations, vaguely related to financial misconduct."

*Id.* at ¶350.

---

[8] Ms. Kerr's letter, which is incorporated by reference into the Complaint, is attached hereto as Exhibit C. *See* Compl. ¶¶210-20; *Wright,* 29 F.3d at 1248*; Wallace v. Xerox Corp.,* No. 87 C 8810, 1988 U.S. Dist. LEXIS 12578, *5 (N.D. Ill.1988)("Excerpts of the Personnel Manual attached as an exhibit to the complaint incorporated by reference other policies which were not included as exhibits to the complaint."); *Taggart v. WMAQ Channel 5 Chicago*, Civil No. 00-4205, 2000 U.S. Dist. LEXIS 19499, *4 n.1 (SD Ill. October 30, 2000) (Murphy, CDJ) (citing *Fudge v. Penthouse Int'l,* 840 F.2d 1012, 1014-15 (1st Cir. 1988)("considering publication attached to defendant's motion to dismiss where plaintiff did not attach a copy of the challenged publication to the complaint.")

### (i) Publications 2, 3, 4, 7, 8, and 9 Are Substantially True

To sufficiently plead Defamation a plaintiff must establish "that defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that plaintiff was damaged." *Wynne v. Loyola Univ. of Chicago,* 318 Ill. App.3d 443, 741 N.E.2d 669, **676 (Ill. App. 2000)(internal citations omitted). "One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true. Only 'substantial truth' is required for this defense. While substantial truth is normally a question for the jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law." *Id* at **675-76(internal citations omitted).

Here, based on the allegations in the Complaint concerning Ms. Wrigley's disclosure that Plaintiff used Northwestern letterhead, no reasonable jury could find that publications 3, 4, 7, 8, and 9 were not substantially true. Plaintiff admits to using "Northwestern" letterhead. Compl. ¶¶174-5. Plaintiff's embarrassing attempt to offer distinctions between her Northwestern letterhead and the "official" Northwestern letterhead only serve to highlight the substantial truth of the publications. Her trivial distinctions do not negate the publication's truth for purposes of Defamation. *See, Wynne,* 741 N.E.2d at **672-73, 674, 676.

Publications 2 and 7 relate to Ms. Wrigley's publication that Plaintiff lied to the RSC about Ms. Kerr's role in the DPC proceedings. Plaintiff characterized, and continues to characterize, Ms. Kerr's role as a "court appointed" expert (Compl. ¶230) that the DPC ordered to "investigate" Esaun Pinto. Compl. ¶219. However, Ms. Kerr's letter makes

clear that she was a "forensic accountant that was retained by [a] Guardian ad Litem." Exhibit C, p.1.

Further, as is clear from a plain reading of the DPC's April 2, 2015 order[9], the only allegations the DPC was investigating were allegations that Plaintiff's husband mismanaged and/or misappropriated funds. As conservator of Joanne's funds, Mr. Black was in charge of disbursing payment to Mr. Pinto and thus the DPC ordered a review of the disbursements to Mr. Pinto (*id.* at pp.1, 3); however, the DPC never subsequently requested review of Ms. Kerr's accounting related to Mr. Pinto. Thus, Plaintiff made false statements to the RSC rendering Ms. Wrigley's publications substantially true. *Wynne,* 741 N.E.2d at **676.

**(ii) Publications 1, 5, 6 and 10 Constitute Privileged Non-Actionable Opinion**

In determining whether a statement implies the existence of verifiable facts, three considerations are relevant: (1) whether the language has a precise and readily understood meaning, (2) whether the general tenor of the context negates the impression that the statement is factual, and (3) whether the statement is susceptible of being objectively verified as true or false. *Hopewell v. Vitullo*, 299 Ill.App.3d 513, 518-19 (1998).

Publications 1 and 10 indicating, "Plaintiff was acting unethically" are too vague to constitute an actionable publication. *Manjarres v. Nalco Co.* No. 9 C 4689, 2010 U.S. Dist. LEXIS 21970, *11-12 (ND Ill. March 9, 2010)(Coar, DJ) and cases cited therein; *see also Hopewell,* Ill.App.3d at 519.

Publication 5 is also insufficient because it constitutes pure opinion. Ms. Wrigley allegedly stated her opinion that Plaintiff is "unfit to do her job" while providing the facts

---

[9] *See* the DPC's April 2, 2015 order attached hereto as Exhibit D.

forming the basis for such opinion. Compl. ¶343 ("[…] and Plaintiff is *therefore* unfit to do her job.")(emphasis added). Further, as explained below, the facts forming the basis of Ms. Wrigley's opinion do not assert that Plaintiff did anything improper in relation to performing her duties as a law professor. This type of publication constitutes pure, nonactionable opinion. *Brenner v. Greenberg,* No. 8 C 826, 2009 U.S. Dist. LEXIS 51865, *6-8 (ND Ill June 18, 2009)(Hibbler, DJ) (citing *Mittelman v. Witous,* 135 Ill2d 220, 241-42 (1977)[10] ("A statement of pure opinion is one where […] the speaker also states the factual basis for the opinion […]").

### (iii) None of the Alleged Publications Constitute Defamation *Per Se*

Plaintiff alleges that a number of Ms. Wrigley's publications constitute defamation *per se* because they relate to her ability to perform her job or they accuse her of criminal conduct. Compl. ¶¶345, 348. The four categories of defamatory *per se* statements are (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business. *Wynne,* 741 N.E.2d at **675.

Plaintiff's characterization of Publications 6[11] and 11 are wholly contradicted by the actual contents and language of the January 8, 2016 letter that indicates Ms. Kerr never stated Plaintiff committed perjury or was under investigation for committing a crime. Exhibit C. Thus the court should reject the veracity of such allegations. *Wright,* 29 F.3d at 1248; *see also, e.g. AM Int'l v. Graphic Management Assocs,* 836 F.Supp 487,

---

[10] *Abrog. on other grounds, Kuwik v. Starmark Star Marketing & Administration, Inc.* 156 Ill.2d. 16 (1993)
[11] Publication 6, Ms. Kerr's also constitutes non-actionable opinion, as described above.

492-93 (ND Ill. 1993)(rejecting plaintiff's allegations that were contradicted by documentary evidence incorporated by reference into the complaint).

As to Plaintiff's claim that Ms. Wrigley's publications indicated Plaintiff "lied" to the RSC (Publications 2, 3, 7, 8, 9), these allegations do not imply criminal conduct because Plaintiff fails to allege that she was sworn or under oath before the RSC. 720 ILCS 5/32-2 ("A person commits perjury when, under oath or affirmation […]."); *Barker v. Quick Test, Inc.,* 13 C 4369, 2016 U.S. Dist. LEXIS 32755, *5-6 (ND Ill. March 15, 2016)(Finerman, DJ). Plaintiff's lies were contained in a letter she submitted to the RSC, which was unsworn and not made under penalty of perjury. Thus, publications 2, 3, 7, 8, and 9 cannot constitute defamation *per se*. *Id.*

Plaintiff's claim that Ms. Wrigley's publications are defamatory *per se* because they impute a lack of ability in her profession (Compl. ¶¶345, 348) also lacks merit. Publications 1, 2, 3, 4, 5, 8, 9 and 10 do not amount to Defamation *per se* because they do not allege that Ms. Wrigley commented specifically on Plaintiff's conduct during the course of performing her job duties as a professor at Northwestern. *Cody v. Harris,* 409 F.3d 853, 857 (7th Cir. 2005)(to constitute defamation per se defendant's statements must have accused plaintiff of "lacking ability in [plaintiff's] trade or doing something bad in the course of carrying out [plaintiff's] job").

### (iv) Plaintiff Failed to Plead Special Damages to Support Claims of Defamation Per Quod

"A *per quod* defamation claim may be brought where […] the defamatory character of the statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning." *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 933 (ND Ill. 2000). Such claims must allege special damages. *Taradash*

*v. Adelet/Scott-Fetzer Co.,* 260 Ill. App.3d 313, 318 (Ill. App. Ct 1993). "Special damages are those specifically proven economic losses directly linked to the defamatory statements by competent evidence." *Kisser v. Coalition for Religious Freedom,* No. 92 C 4508, 1994 U.S. Dist. LEXIS 18818, *38-39 (ND Ill. December 23, 1993)

Plaintiff's claimed damages consist of: "harm to her career and professional advancement. Plaintiff lost opportunities for professional growth and promotions. Plaintiff lost prestigious assignments at work and lost the opportunity to influence the direction of her department." *Id.* at ¶ 292-93. Plaintiff also alleges that she: "suffered a significant harm to her work and career. Because of her persistent anxiety, Plaintiff is unable to take up new projects at work. Her job performance suffered. Plaintiff's ability to earn extra income from taking up summer jobs or consulting project is harmed."

However, "[g]eneral allegations as to one's health emotional distress, damage to reputation and economic loss are insufficient to state a cause of action for defamation *per quod.*" *Kisser,* U.S. Dist. LEXIS 18818 at *38-39; *Maag v. Ill. Coalition for Jobs,* 368 Ill App.3d 844, 853 (Ill. App. Ct. 2006). Plaintiffs alleged loss of "extra money" due to "persistent anxiety" are insufficient because the pecuniary loss stems from an emotional harm, not the defamation itself (Compl. ¶293), and Plaintiff fails to identify one individual or instance where she actually lost a business opportunity due to a third party's knowledge of Ms. Wrigley's allegedly defamatory publications. *Taradash,* 260 Ill. App.3d at 318; *see also, cf. Maag,* 368 Ill. App.3d at 853.

B. **As to Count 8, Ms. Wrigley's Alleged Threats Do Not Constitute Assault**

Plaintiff's eighth cause of action alleges that Ms. Wrigley assaulted her in Denver, Colorado. Compl. ¶¶ 415-22. Specifically, Plaintiff alleges that Ms. Wrigley approached

11 of 15

Plaintiff in a courthouse following a hearing, and threatened: "if Plaintiff continued to provide evidence or testify, Wrigley would arrange for Plaintiff to be sexually and physically assaulted."[12] Compl. ¶117.

"Assault under Illinois tort law involves intentional conduct that places the plaintiff in a reasonable apprehension of an imminent battery." *Mnyofu v. Bd. Of Educ. of Matteson Elem. Sch. Dist. 162*, No. 11 C 3756, 2012 U.S. Dist. LEXIS 113607, *30-31 (N.D. Ill. August 13, 2012) (*citing McNeil v. Carter,* 318 Ill.App.3d. 939, 944 (2001)). Here, Plaintiff's allegation that Ms. Wrigley threatened Plaintiff with harm if Plaintiff continued to provide information to the court is patently insufficient to establish apprehension of an *imminent* battery. *Truesdale v. Kilch,* No. 03 C 8209, 2006 U.S. Dist. LEXIS 37139, *14-15 (N.D. Ill. May 23, 2006) ("Consistent with the common law tradition, apprehension must be of an *imminent* threat […] threatening words must be accompanied by some gesture, action, or condition.") (emphasis in original).

### C. As to Count 1, Ms. Wrigley's Alleged Conduct was Not Extreme and Outrageous and Thus Cannot form the Basis of Plaintiff's Claim for Intentional Infliction of Emotional Distress

Plaintiff alleges that Ms. Wrigley made various threats to Plaintiff, and conveyed allegedly false statements to her employer, causing her severe emotional distress. *See, e.g.*, Compl. ¶¶ 301-310. However, these purported threats do not constitute "extreme and outrageous" conduct. *Layne v. Builders Plumbing Supply Co.* 210 Ill.App.3d. 966, 973 (1991)("Recovery under this theory does not extend to conduct involving mere

---

[12] Plaintiff claims Ms. Wrigley's threats came after Plaintiff supplied documents to Denver Probate "[C]ourt personnel," demonstrating that "Wrigley [] repeatedly lied to the court and court personnel" and "that Wrigley [] engaged in other illegal conduct, including fraud and extortion, and victimized several members of Plaintiff's family." Compl. ¶¶108-109. However, after a three day trial, the DPC ruled: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court." Exhibit A, p.13, order #6.

insults, indignities, threats, annoyances, petty oppressions, or other trivialities […] Rather, the distress inflicted must be so severe that no reasonable man could be expected to endure it.")

    D.  **As to Count 2, Plaintiff's Conspiracy Claim is Duplicative of other Causes of Action and Alleges Conduct that is not Tortious Under Illinois Law**

Plaintiff's second count alleges Conspiracy. However, the majority of Plaintiff's Conspiracy claim merely re-alleges the same tortious conduct included in counts 1, 3, and 8 of her Complaint without alleging the participation of any additional defendants or adding any new facts. Compl. ¶320-32. Thus, Plaintiff's allegations do not suffice to establish a claim for Conspiracy. *Davis Cos. v. Emerald Casino, Inc.*, 2003 U.S. Dist. LEXIS 16039, *31 (N.D. Ill. Sept. 10, 2003).

Plaintiff also alleges that Ms. Wrigley engaged in conspiracy to commit witness tampering and extortion. Witness tampering and extortion are not recognized torts in the state of Illinois and therefore those Conspiracy claims are meritless. *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 63 (1993).

    E.  **As to Count 4, Plaintiff Insufficiently Pled Interference with Contractual Relations and Economic Advantage because she Fails to Plead an Actual Breach of Contract and Ms. Wrigley's Knowledge of the Expectancy**

Plaintiff's fourth count alleges two torts—interference with contractual relations and interference with prospective economic advantage. Compl. ¶ 360-369. However, these torts require Plaintiff to allege that an actual breach of contract occurred and/or that a defendant interfered with a prospective economic advantage. *George A. Fuller Co., Division of Northrop Corp., v. Chicago College of Osteopathic Medicine,* 719 F.2d. 1326, 1331 (7th Cir. 1983); *International Starr Registry of Illinois v. ABC Radio Network Inc.,* 451 F.Supp.2d 982, 991-92 (N.D. Ill. 2006).

Here, Plaintiff's Complaint fails to allege an actual breach of contract, and/or that Ms. Wrigley interfered with a prospective economic advantage that would have resulted in a new business relationship.

**F. As to Count 5, Ms. Wrigley's Publication of Facts Cannot Constitute an Intrusion Upon Seclusion**

Plaintiff's fifth cause of action for Intrusion Upon Seclusion is grounded in Ms. Wrigley's publication of allegedly private facts concerning Plaintiff. Compl. ¶¶ 370-79. The tort of intrusion upon seclusion cannot be based solely upon the publication of information, but rather must include an intrusive act by a defendant. *Lovegren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417 (1989). Plaintiff fails to plead any intrusive conduct by Ms. Wrigley.

**G. As to Count 6, Plaintiff Fails to State a Claim for Publication of Private Acts Because the Information Ms. Wrigley Published was Neither Private or Shocking**

Count 6 alleges Ms. Wrigley committed the tort of Public Disclosure of Private facts when she transmitted a letter to Plaintiff's employer that shocked Plaintiff. Compl. ¶384. However, Plaintiff does allege a necessary element of this tort: that the information published would shock the average person subject to such exposure. *Chisholm v. Foothill Capitol Corp.*, 3 F.Supp.2d 925, 940-41 (N.D. Ill. 1998) ("The [tort] is meant to protect against the disclosure of 'intimate […] details the publicizing of which would be not merely embarrassing and painful but deeply shocking to the average person subject to such exposure.'")

Plaintiff's claim must also fail because the information Ms. Wrigley published was not private. Plaintiff's allegation that her letter was sealed in connection with court procedure is insufficient to establish that the information was private. *See cf. Best v.*

*Malec,* 2010 U.S. Dist. LEXIS 58996, *12-13 (N.D. Ill. June 11, 2010) (recognizing private facts as "'intimate personal facts,' such as health issues and sexual relationships.").[13] Thus, the information Ms. Wrigley published was not private. *Id.*

### H. As to Count 7, Stalking and Cyber Stalking Are Not Recognized Torts in the State of Illinois

Plaintiff's seventh cause attempts to allege Stalking and Cyber Stalking. However, such actions are not recognized torts in the State of Illinois. *Tamique v. Richardson*, No. 15 C 6495, 2015 U.S. Dist. LEXIS 104834, *3-5 (N.D. Ill. August 7, 2015); *Huon v. Breaking Media, LLC,* 75 F.Supp.3d 747, 775-77 (N.D. Ill. 2014), *aff'd in part, rev'd in part on other grounds* at 841 F.3d 733 (7th Cir. 2016).

### CONCLUSION

For these reasons, Ms. Wrigley respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, and for any other and further relief the Court deems just and proper.

Dated: New York, New York
June 12, 2017

                            Respectfully submitted,

                            **Murray Mancilla & Fantone, LLP**

                         By: /s/ Robert M. Fantone
                            Admitted *Pro Hac Vice*
                            260 Madison Avenue, 22nd Floor
                            New York, New York 10016
                            P (646) 225 – 6686
                            F (646) 655 – 0269
                            robert@mmf-law.com
                            *Attorneys for Defendant Cherie Wrigle*

---

[13] With respect to Plaintiff's allegations that the RSC proceedings are sealed and the facts private, Plaintiff's husband (represented by the same counsel as Plaintiff) filed unredacted and unsealed documents from the RSC proceedings in cases currently pending in the Eastern District of New York. *See e.g., Black et al. v. Wrigley et al.,* 1:16-cv-00430, D.E. Nos. 55-10 & 55-11; *Black et. al. v. Dain et al.,* 1:16-cv-01238, D.E. Nos. 84-16, 84-18, 84-19 (30 pg. transcript of the proceedings), 84-23.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on June 12, 2017 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

      /s/  Robert M. Fantone