# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17 C 101 |
| | ) | |
| CHERIE WRIGLEY, MELISSA COHENSON, | ) | |
| BRIAN A. RAPHAN, P.C., and | ) | |
| PAMELA KERR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Katherine Black (Katherine) and her husband, Bernard Black (Bernard), are law professors at Northwestern University. After Bernard's mother died in 2012, he became involved in acrimonious litigation proceedings with his family regarding the family members' respective inheritance claims. Defendant Cherie Wrigley is Bernard's cousin; she has been involved in proceedings related to the family inheritance in both Colorado and New York. Defendant Melissa Cohenson is an attorney who represented Wrigley in a New York proceeding regarding guardianship of Bernard Black's sister, Joanne Black. At the time she represented Wrigley, Cohenson was an associate at defendant Brian A. Raphan, P.C., a law firm in New York City. Defendant Pamela Kerr is a forensic accountant who was retained by one of the parties in a probate court proceeding in Colorado concerning the inheritance.

Katherine asserts that Wrigley, Cohenson, and Kerr worked together to prevent her from testifying as a witness or providing evidence to courts in the underlying

1

proceedings.  She alleges that they did so by threatening or assisting in threatening the physical safety of her, her husband, and her children and by making defamatory statements about her to Northwestern.  Katherine has asserted a series of tort claims under Illinois law against each defendant.  She brings claims against Wrigley and Kerr for intentional infliction of emotional distress and against Cohenson for aiding and abetting intentional infliction of emotional distress.  Against Wrigley, Kerr, and Cohenson, Katherine brings claims for defamation, aiding and abetting defamation, false light, aiding and abetting false light, publication of private facts, aiding and abetting publication of private facts, interference with contractual relations, and interference with prospective economic advantage.  In addition, Katherine asserts claims against Kerr for intrusion upon seclusion and against Wrigley and Cohenson for aiding and abetting intrusion upon seclusion.  For every claim brought against Cohenson, Katherine also asserts a claim against Cohenson's employer, Raphan, because she engaged in the allegedly tortious conduct while working under Raphan's supervision and control.  Finally, Katherine asserts a claim against all defendants for civil conspiracy to engage in the substantive torts alleged.

Defendants have moved to dismiss Katherine's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing among other things that the alleged defamatory statements are privileged or otherwise non-actionable and that defendants' alleged conduct is not sufficiently extreme or outrageous to hold defendants liable for Katherine's emotional distress.  The Court rules on defendants' motions in this decision.

**Background**

Except where otherwise noted, the Court takes the following facts from Katherine's amended complaint, documents attached to the motions to dismiss that she refers to in the complaint and that are central to her claim, and judicial proceedings of which the Court appropriately may take judicial notice on a motion to dismiss for failure to state a claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts ruling on Rule 12(b)(6) motions to dismiss "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").[1]

Though the complaint contains references to multiple litigation proceedings initiated after the death of Bernard's mother, Renata, Katherine provides few details about the specific nature of each proceeding. From court records, it appears that Bernard filed suit in Colorado state court seeking to be appointed as conservator of his mentally-ill sister, Joanne. *See* Order of Feb. 25, 2016, *In re the Interest of: Joanne Black*, Case No. 12 PR 1772 (Denver Probate Court) ("DPC Order of Feb. 2016"), Ex. A to Def. Wrigley's Mem. of Law, at 2; *Black v. Black*, Case No. 16 C 1763, Dkt. no. 27 at 2–3 (N.D. Ill. July 13, 2016) (Kendall, J.) ("*Black v. Black* Order"). In addition to that lawsuit, it appears that Bernard has filed suit in New York state court to be appointed as guardian of Joanne and her property. *See* Order to Show Cause with Temp.

---

[1]     Though a court may take judicial notice of a filing in another proceeding or of the fact that another court ruled the way it did, this does not mean that a court ruling on motion to dismiss may assume the truth of the matters asserted in filings or rulings from other proceedings. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) ("[C]ourts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed.").

Restraining Order of Jan. 13, 2016, *In the Matter of the Application of Cherie Wrigley for the appointment of a Guardian of the Person and Property of Joanne Black* (N.Y. Sup. Ct., Richmond Cty.), Ex. 4 to Def. Kerr's Mem. in Supp. of Mot. to Dismiss, at 1; *Black v. Black* Order at 2. Bernard has also sued Wrigley and others in at least two federal courts in New York on matters relating to the distribution of his mother's assets. *See Black v. Wrigley*, Case No. 16 C 430, at *1 (E.D.N.Y. Sept. 30, 2017), Ex. 3 to Pl.'s Opp'n to Wrigley's Mot. to Dismiss; *Black v. Dain*, Case No. 16 C 1238 (E.D.N.Y.).[2]

Katherine alleges that defendants' tortious conduct began when they became aware of her intention to testify or otherwise provide evidence against them in one or more of the court proceedings. Kerr first became involved in this dispute, according to Katherine, by working as an accountant "for one of the parties in litigation involving [Katherine's] extended family." Am. Compl. ¶ 49. (According to Kerr, she was retained in the Colorado probate proceeding as a forensic accountant for the Guardian *ad Litem* appointed for Joanne.) Katherine alleges that Wrigley's involvement in this dispute began as part of a scheme that she and her brother Anthony Dain developed to gain control over the Black family's assets following Renata's death. Cohenson became involved as an attorney representing Wrigley in New York state court.

Katherine alleges that she informed court-appointed personnel in two different courts that she was willing to provide evidence that Wrigley, Dain, and Wrigley's agent, Esaun Pinto, had engaged in criminal and civil misconduct. At that point, Katherine says, defendants initiated their tortious efforts to prevent her from testifying, providing

---

[2]     Bernard also filed a separate suit in this district seeking a declaratory judgment against Joanne; Judge Kendall dismissed the case for lack of personal jurisdiction. *Black v. Black* Order at 5.

4

evidence, or otherwise participating in any of the ongoing litigation. She alleges that Wrigley made express threats to her in person and through telephone calls and text messages. Specifically, she alleges that Wrigley repeatedly threatened to arrange for Katherine to be physically and sexually assaulted; hire her associate Pinto to burglarize Katherine's home; report damaging information to Northwestern to cause her to be fired; and file false police reports against her stating that she was abusing her young children. Katherine alleges that Wrigley bolstered her threat to file a false police report by explaining that she had experience advocating for abused children and knew how to write a strong police report so that Katherine "w[ould] not get [her] kids back for a year." Am Compl. ¶ 127.

Katherine alleges that defendants' scheme to prevent her from testifying in court went beyond Wrigley's alleged threats. She avers that Wrigley, Kerr, and Cohenson each made defamatory statements about her to Northwestern in order to damage her career as a law professor. In January 2016, Katherine sent a letter, the heading of which included a Northwestern Law logo, to the judge in the New York state court proceeding. In the letter, Katherine requested a hearing to present evidence of Wrigley's and Dain's misconduct, and she expressed her willingness to testify against them. One day after Katherine submitted her letter to the court, Wrigley filed an "ethics complaint" with Northwestern against Katherine.[3] According to Katherine, the ethics complaint Wrigley submitted included a number of sealed court documents, including the letter Katherine sent to the judge in the New York state court case. She also alleges

---

[3] None of the parties explains precisely what an ethics complaint is or the process by which one is submitted, but Katherine alleges that there is a "centralized 'ethics complaint' system" and that documents submitted as part of such complaints are read by numerous Northwestern employees. *Id.* ¶¶ 603–05.

that the complaint included a number of defamatory statements about her, including that she (1) "lied to the court in the course of litigation," *id.* ¶ 478; (2) "acted unethically in court proceedings," *id.* ¶ 482; (3) falsely represented to the court that her employer was supporting her actions in litigation," *id.* ¶ 484; and (4) was using Northwestern's official letterhead when communicating with the court, thereby enabling her to lie to the court more effectively.  Katherine also alleges that Wrigley failed to specify whether Katherine's purportedly false statements to the court had been made under oath, thereby "creat[ing] a false impression that they were sworn . . . [and] that [Katherine] committed a criminal violation (perjury)." *Id.* ¶ 480.[4]

On the same day that Wrigley submitted her ethics complaint, Kerr drafted a letter of her own, addressed to the dean of Northwestern Law School.  Though Kerr drafted and signed the letter, Wrigley submitted it to Northwestern, attaching a copy of Katherine's letter to the judge in the New York proceeding.  According to Katherine, Wrigley and Cohenson supplied Kerr with the letter Katherine had sent to the judge, as well as other sealed and confidential court documents.  Katherine alleges that Kerr's letter to Northwestern defamed her by asserting that she:  (1) lied under oath during testimony in Colorado state court, thereby committing perjury; (2) committed perjury in her letter to the judge by lying about Kerr's duties in the Colorado proceeding and making other false representations; (3) committed financial misconduct for which Kerr was investigating her; (4) "committed other [unspecified] criminal violations, vaguely related to financial misconduct," *id.* ¶ 524; (5) lied to the court by claiming that Northwestern supported her in the litigation about her family inheritance; (6) used her

---

[4]    None of the parties has attached a copy of the ethics complaint to any filing.

employer's official letterhead; and (7) acted unethically in litigation. Katherine also emphasizes that Kerr contended that she had first-hand knowledge to substantiate her claims but decided to withhold the information from the letter.

Kerr has attached the letter to her motion to dismiss. Because Katherine references the letter in her complaint and it is central to her claims, it is considered part of the pleadings for purposes of the present inquiry. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Defendants maintain that Katherine's description of the letter's contents is inconsistent with its actual text. In the letter, for example, Kerr does not say in so many words that Katherine committed perjury in the Colorado proceeding. Rather, Kerr expresses her belief that she has "never, in [her] entire professional career, listened to a less credible testimony than [Katherine's]." Kerr Letter, Ex. 2 to Def. Kerr's Am. Mem. of Law, at 2. Nor does Kerr state in her letter that Katherine lied under oath in the New York proceeding. Kerr's letter says that Katherine's letter to the judge in the New York case contained false statements, but it does not say, for example, whether the letter was submitted under oath. There is also no assertion in Kerr's letter that she was investigating Katherine or that Katherine committed crimes related to financial misconduct. Rather, Kerr says in her letter that the "Colorado court authorized [Kerr] to conduct an investigation into the actions of [Katherine's] husband." *Id.* at 1.

In addition to the statements contained in Wrigley's complaint and Kerr's letter, Katherine alleges in her complaint that Kerr, Wrigley, and Cohenson made other, yet similar, defamatory statements in telephone calls and voicemail messages to individuals at Northwestern. According to Katherine, Cohenson reported to Northwestern that

7

Katherine had represented to the New York state court that she was acting with Northwestern's imprimatur and that she had used official Northwestern letterhead in her communications to the court, which allowed her to lie and mislead the court with greater effectiveness. Katherine also alleges generally that Cohenson stated that she acted unethically during court proceedings and engaged in criminal conduct.

Katherine alleges that Kerr's oral defamatory statements were similar. She avers that Kerr orally made false representations that Katherine lied to the court, committed perjury and other crimes, was under investigation for financial misconduct, used Northwestern letterhead in communications to the court, acted unethically in litigation, and otherwise engaged in conduct that was unfit for a law professor. Katherine alleges that Kerr also stated that she was privately aware of facts about Katherine that would be damaging to her reputation and career.

Katherine makes similar allegations about Wrigley's oral representations. According to Katherine, Wrigley informed a Northwestern employee that she had personally observed Katherine acting unethically during legal proceedings, that Katherine had lied to the court, and that Katherine was unfit to work as a law professor. Wrigley allegedly explained that she was privately aware of facts that provided a basis for her claims that Katherine had lied to the court, acted illegally or unethically, and was unfit to be a law professor.

Katherine alleges that Cohenson, Wrigley, and Kerr assisted each other in their attempts to defame her, including by exchanging documents with each other and coordinating the timing and content of their communications with Northwestern. According to Katherine, Cohenson also assisted Kerr and Wrigley by providing them

with information about Northwestern's policies that she collected during a telephone call, information that Kerr and Wrigley allegedly used to make their defamatory statements more effective and harmful. Wrigley assisted Cohenson's alleged defamation, according to Katherine, by providing Cohenson with factual background and documents that made the allegedly defamatory statements more powerful. Katherine alleges that Kerr also provided helpful factual background information for Cohenson and provided her purported expertise in drafting defamatory statements.

Katherine alleges that defendants' conduct has caused her significant emotional, physical, and economic harm. She says she developed severe anxiety, fear, and depression as a result of their alleged threats and defamatory statements. The anxiety and fear, she says, has led to insomnia and nightmares, a racing heartbeat, extreme fatigue, sweating, and panic attacks, and has cause her to lose nearly sixty pounds. She alleges that the extreme weight loss has also resulted in significant back and shoulder pain. Katherine also asserts that defendants' conduct caused her to incur significant expenses related to monitoring her children's safety, protecting her home, and obtaining legal assistance. In addition, Katherine alleges that her anxiety hindered her job performance and that defendants' defamation resulted in a loss of opportunities for professional growth and promotions, as well a loss of prestigious work assignments and opportunity for influence at work.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether a plaintiff has plausibly

stated a claim to relief, a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

## A.    Defamation and false light

Katherine asserts claims against all defendants for defamation, false light, and aiding and abetting defamation and false light. Defamation and false light are similar torts. To a state a claim for defamation under Illinois law, a plaintiff must allege "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). A defamatory statement is one that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* If a statement's harm is obvious and apparent on its face, it is defamatory *per se*. *Id.* In Illinois, only five categories of statements are considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* at 491–92, 917 N.E.2d at 459. A statement that falls into one of those categories is not actionable *per se*, however, if the statement is "reasonably capable of an innocent construction." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (interpreting Illinois law). Whether or not a statement falls into one of the five defamation *per se* categories, a false statement that casts a person in a negative light before the public may provide the

basis for a false light invasion of privacy claim. To state a claim for false light, a plaintiff must allege that (1) she was placed in a false light before the public as a result of the defendants' actions, (2) the false light she was placed in would be highly offensive to a reasonable person, and (3) the defendants acted with actual malice, "that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17–18, 607 N.E.2d 201, 209–10 (1992).

### 1. Litigation privilege

Defamation and false light claims are subject to similar defenses, and defendants maintain that certain of those defenses preclude Katherine's claims in this case. Defendants argue, as a threshold matter, that all of Katherine's defamation and false light claims are barred by the absolute litigation privilege. *See Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶¶ 15–16, 7 N.E.3d 52, 56 (litigation privilege provides complete bar to claims for defamation and invasion of privacy). The Court disagrees; the litigation privilege does not apply to any of defendants' alleged statements and therefore does not bar Katherine's claims. The privilege protects the communications of attorneys, and private litigants, pertaining to proposed or pending litigation. *Libco Corp. v. Adams*, 100 Ill. App. 3d 314, 317, 426 N.E.2d 1130, 1132 (1981). Its purpose is "to secure to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients," and the privileged is based on "the tenet that conduct which would otherwise be actionable should escape liability because the defendant is furthering an interest of social importance." *Id.*

The privilege's scope is not limited to statements made in court; it can apply, for

example, to communications between opposing counsel or between an attorney and a client related to pending litigation. *See Golden v. Mullen*, 295 Ill. App. 3d 865, 870, 693 N.E.2d 385, 389 (1997) (collecting cases). The alleged communications at issue in this case, however, are all out-of-court communications between participants in litigation and an unrelated third party. Defendants cite to no case in which a court has applied the privilege in similar circumstances. Indeed, "Illinois courts have expressly declined to extend the attorney-litigation privilege to third parties not connected with the litigation." *August. v. Hanlon*, 2012 IL App (2d) 111252, ¶ 37, 975 N.E.2d 1234, 1248 (privilege does not cover attorney's statements about litigation to a newspaper reporter); *see also Thompson v. Frank*, 313 Ill. App. 3d 661, 664, 730 N.E.2d 143, 146 (2000) (privilege does not cover communications between one party's attorney and the spouse of the opposing party to pending litigation).

Though Northwestern employed Katherine, it had no involvement in the underlying litigation proceedings concerning the Black family inheritance. This is not a case, for example, where Northwestern would be potentially liable for Katherine's conduct. *Cf. Atkinson v. Affronti*, 369 Ill. App. 3d 828, 834, 861 N.E.2d 251, 256–57 (2006) (privilege applied to pre-litigation letter from attorney to plaintiff's employer informing employer that attorney's client intended to hold it financially responsible for plaintiff's conduct). Northwestern did not become a participant in the litigation, and communications with the school are not swept under the privilege's umbrella, simply because Katherine submitted a letter to one of the courts on paper bearing a Northwestern logo. "Since the privilege affords complete immunity, classification of absolutely privileged communications is necessarily narrow." *Golden*, 295 Ill. App. 3d at

872, 693 N.E.2d at 390. In addition, the communications at issue were part of an alleged schemed to *discourage* court testimony, and defendants have failed to "explain how [applying the privilege in this case] would further the privilege's public policy goal." *August*, 2012 IL App (2d) 111252, ¶ 37, 975 N.E.2d at 1248.

### 2. Fair report privilege

Defendants contend that statements they allegedly made concerning Katherine's conduct in litigation—that she lied in court, for example—are protected under the so-called fair report privilege. *See Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 587, 852 N.E.2d 825, 843 (2006) ("The fair report privilege . . . permits a defendant to publish a report of an official proceeding even though the defendant knows the report contains a false and defamatory statement."). That privilege, however, is not applicable to cases like this. The fair report privilege is "an exception to the general common law rule that the *republisher* of defamatory material bears the same degree of liability for defamation as the original publisher." *Missner v. Clifford*, 393 Ill. App. 3d 751, 760, 914 N.E.2d 540, 550 (2009) (emphasis added). The purpose of the privilege is to "serve[] the public interest by permitting access to all public proceedings . . . regardless of whether defamatory statements are made in those proceedings." *Id.* at 761, 914 N.E.2d at 550.

In this case, however, Katherine has not alleged that defendants republished defamatory material from the underlying litigation proceedings. That is, the "the sting of the [alleged] defamatory statement[s]," *Solaia*, 221 Ill. 2d at 590, 852 N.E.2d at 845, does not come from any statement made in the course of the proceedings but from defendants' own reports and characterizations of the proceedings. In any event, even if

the privilege were applicable, it would not cover the alleged statements. Katherine alleges that the statements falsely represent her actions in the litigation, and the privilege only covers "accurate and complete" reports or "fair abridgement[s]." *Id.* at 588.

### 3. Truth and opinion

Defendants maintain that a number of their statements are nonactionable because they are substantially true or because they are mere statements of opinion. A statement cannot serve as the predicate for a defamation or false light claim if it is substantially true—that is, if the "gist or sting of the allegedly defamatory material is true." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 42, 984 N.E.2d 132, 146 (internal quotation marks omitted). Although whether a statement is substantially true is usually a question for the jury, "the question is one of law where no reasonable jury could find that substantial truth had not been established." *Id.* (internal quotation marks omitted). A statement is also nonactionable if it is merely the expression of an opinion, as opposed to an assertion of fact, because "there is no such thing as a false idea" under the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). "A defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact." *Solaia*, 221 Ill. 2d at 581, 852 N.E.2d at 840. In determining whether a statement contains an assertion of fact, a court considers "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.*

Before examining defendants' alleged statements to determine whether they are

14

they are substantially true or are expressions of opinion, the Court must first address certain disputes between the two sides about the significance of Kerr's letter to Northwestern.  Katherine alleges that Kerr made a number of defamatory statements in her January 2016 letter to Northwestern.  When Katherine's allegations concerning the letter are compared to the letter itself, which Kerr has attached to her motion to dismiss, it is apparent that Katherine's allegations loosely paraphrase or interpret the contents of the letter rather than represent the statements directly.  The Court agrees with defendants that where the allegations about what the letter says conflict with the letter itself, the contents of the letter should control.  *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls.").  The Court will therefore consider whether the statements contained in the letter itself, as opposed to Katherine's characterizations of those statements, are substantially true or are nonactionable opinion.  *See id.* ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

Kerr also emphasizes Katherine's allegation that Kerr "restated the contents of her phone conversation" and that the "contents of Kerr's phone call were substantially similar to the contents of her letter."  Am. Compl. ¶¶ 350, 5552.  According to Kerr, those allegations constitute an admission that the oral statements and the statements in the letter were the same, such that allegations about Kerr's oral statements should be disregarded to the extent they are inconsistent with the statements found in the letter.  The Court disagrees.  Katherine's allegations that the letter's statements were a restatement of or were substantially similar to the contents of the phone call are not an

admission that the content, or the substance of the message conveyed, was identical. It is possible, for example, that two communications concerning "substantially similar" content would convey different information based on the context of the expression and the precise wording used. Because the letter is not a documentation of Kerr's oral conversations, the content of Kerr's alleged oral statements is not conclusively rebutted, at the pleading stage, by inconsistent statements contained within her letter.

There is also a dispute between the parties about whether Kerr can be held liable for the statements contained in the letter even though Wrigley is the one who sent it. "Publication is an essential element of a claim for defamation." *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 975, 569 N.E.2d 1104, 1110 (1991). Kerr maintains that the allegations in the complaint conclusively establish that she did not publish the letter. In the complaint, Katherine alleges that Kerr wrote the letter and that Wrigley sent it to Northwestern. She also alleges that Kerr informed Northwestern that she had written the letter but "did not send it on the advice of her counsel." Am. Compl. ¶ 214. But the next sentence in the complaint supports an inference that Kerr provided the letter to Wrigley with the knowledge that she would send it to Northwestern. *See id.* ("Kerr did not explain how her signed, formal letter, addressed to the employer and demanding employer's actions, happened to land in Plaintiff's employer's hands if Kerr never sent it."). That allegation is sufficient to satisfy the publication element for defamation claims against Kerr based on statements contained in the letter. *See Layne*, 210 Ill. App. 3d at 975, 569 N.E.2d at 1110 ("In order to establish publication, there must be a communication of the allegedly defamatory statement to someone other than plaintiff.").

Having determined which alleged statements to consider, the Court next examines whether any of those statements are nonactionable because they are substantially true or merely express an opinion. The Court finds that defendants' alleged statements regarding Katherine's use of Northwestern letterhead are either substantially true or mere expressions of opinion. Katherine acknowledges in her complaint that the letterhead she used included her employer's name and a logo. The name and a Northwestern logo are also clearly visible on the copy of the letter Kerr attached to her motion to dismiss. Katherine maintains that she did not use Northwestern's *official* letterhead; rather, she used a self-designed letterhead that used an unofficial name for the law school, as well as a color, font, and logo that were different from the official letterhead. She argues that defendants' statements that she used her employer's official letterhead are therefore not substantially true. The gist or sting of defendant's statements, however, is that Katherine wrote her letter to the court on paper that included her employer's name and a school logo for the school and that therefore *appeared* to be official letterhead. The gist or sting is not substantially lessened by the fact that certain details of the letterhead Katherine used are different from the school's official letterhead, and these alleged statements are thus substantially true. *See Coghlan*, 2013 IL App (1st) 120891, ¶ 42, 984 N.E.2d at 146 ("[A]llegedly defamatory detail is not actionable even where it is not technically accurate in every detail.")

In addition to defendants' true statements of fact that Katherine used Northwestern letterhead, defendants allegedly made statements opining about the effect or significance of Katherine's use of the letterhead. The Court concludes that

those statements are nonactionable expressions of opinion.  "[W]hen the facts underlying a statement of opinion are disclosed, readers will understand that they are getting the author's interpretation of those facts and are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts."  *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 48, 12 N.E.3d 75, 91.  In this case, defendants disclosed the fact that Katherine wrote to the court using Northwestern letterhead and then offered interpretations of that fact.  The Court concludes that the following statements are nonactionable opinions:  Kerr's statement that she was shocked to receive the letter on Northwestern letterhead and truly believed Northwestern Law School was supporting Katherine's positions, Kerr's alleged statement that Northwestern had become a party to the litigation because of the appearance of the letterhead, and Cohenson's alleged statement that Katherine was representing to the court that she was acting with her employer's imprimatur.  Each statement expresses the speaker's subjective belief about the effect of Katherine's use of the letterhead.

Defendants maintain that their alleged statements accusing Katherine of lying to the court are also substantially true.  Kerr contends that Katherine inaccurately told the judge in the New York state court that the Colorado court had authorized investigation of Pinto's conduct.  According to Kerr, no such authorization exists.  Katherine, however, points to the Colorado court's order that "Pinto shall provide a complete accounting with documentation of all funds that were held under his control to Ms. Kerr . . . ."  Order of Apr. 2, 2015, *In re the Interest of: Joanne Black*, Case No. 12 PR 1772 (Denver Probate Court), Ex. 7 to Def. Kerr's Mem. in Supp. of Mot. to Dismiss at 3, ¶ 8.  Katherine maintains that that order authorized Kerr to investigate Pinto.  Because,

at this stage, a reasonable jury could find that the substantial truth of Kerr's statement that Katherine lied has not been established, the alleged statement is actionable. *See Coghlan*, 2013 IL App (1st) 120891, ¶ 42, 984 N.E.2d at 146 (internal quotation marks omitted). Wrigley similarly argues that it is substantially true that Katherine lied to the judge in the New York court by stating that Dain made misrepresentations to that court and by mischaracterizing the Colorado court's understanding of her husband's submissions in that proceeding. To support her contention that Katherine actually lied, Wrigley relies upon findings from the Colorado court. As discussed above, however, the Court cannot assume the truth of those findings when ruling on a Rule 12(b)(6) motion. Indeed, Katherine disputes that court's findings and alleges that they are based on misrepresentations from defendants and others. Thus defendants have not conclusively established the substantial truth of their statements that Katherine lied to the New York court.

The Court concludes that certain other alleged statements are nonactionable as expressions of opinion—namely, defendants' assertions that Katherine's testimony in the Colorado proceeding lacked credibility, that she acted unethically in litigation, and that she is unfit for employment as a law professor. In her letter, Kerr stated that "in [her] entire professional career, [she has never] listened to a less credible testimony than [Katherine's testimony in the Colorado proceeding]." Kerr Letter at 2. Katherine maintains that this statement implies a statement of fact: that she lied during her sworn testimony and committed perjury. But as Illinois courts have recognized, "all opinions imply facts" in some sense. *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 443, 452, 741 N.E.2d 669, 676 (2000). "[T]he question of whether a statement of opinion is

actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law." *Id.* Kerr's vague and general opinion about Katherine's credibility is nonactionable. In the statement, Kerr does not specify the subject of the testimony to which she refers or explain what made the testimony less credible. Her statement therefore does not contain "an objectively verifiable assertion." *Id.*; *see also Huon v. Mudge*, 597 F. App'x 868, 877 (7th Cir. 2015) (assessment of accuser's credibility that could imply her allegations against plaintiff were true was nonactionable opinion).

Defendant's alleged statements that Katherine acted unethically during litigation and is unfit to be a law professor are also nonactionable expressions of opinion. Like the statements interpreting the effect of Katherine's use of Northwestern letterhead, these alleged statements are interpretations or characterizations of other facts defendants disclosed. Namely, defendants opined that Katherine's misrepresentations about the Colorado proceeding and use of Northwestern letterhead in a letter to a judge was unethical conduct that made her unfit to be a professor of law. Readers would be "unlikely to construe the statement[s] as insinuating the existence of additional, undisclosed facts." *Hadley*, 2014 IL App (2d) 130489, ¶ 48, 12 N.E.3d at 91; *see also Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1213 (N.D. Ill. 2013) ("Whether a person's actions are ethical or deceptive is not objectively verifiable."); *Patlovich v. Rudd*, 949 F. Supp. 585, 594 (N.D. Ill. 1996) (putting "subjective labels" like "reprehensible" and "self-serving" on previously described factual assertions does not add any new facts and is "pure opinion"). Katherine maintains that those statements are not mere expressions of opinion because defendants indicated that they based their opinions on undisclosed

private facts. But Katherine's assertions that defendants implied the existence of private facts on which they based their opinions are wholly conclusory. She does not allege any facts indicating how defendants intimated that their opinions were based on private facts or what allegedly defamatory facts defendants might be implying. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting elements of [a] claim are not entitled to [the usual] presumption of truth" in deciding a motion to dismiss). It is true that Kerr, in her letter, alluded to undisclosed facts she had found as part of her forensic investigation. That investigation, however, was of Bernard, not Katherine, and Kerr provides no indication in her letter that those facts formed the basis for opinion about the purportedly unethical nature of Katherine's conduct during the litigation.

### 5. Defamation *per se*

If a statement is considered defamatory *per se*, it is presumed that the plaintiff suffered damages as a result of the statement. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006). If a statement is not considered defamatory *per se*, because, for example, it does not fall into one of the five recognized categories of *per se* defamatory statements, the plaintiff may still assert a claim under Illinois law for defamation *per quod*. *Id.* To state a claim for defamation *per quod*, however, a plaintiff must plead special damages. *Id.* That is, a plaintiff asserting a defamation *per quod* claim must "itemize [her] losses or plead specific damages of actual financial injury." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) (citing Fed. R. Civ. P. 9(g) and *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416, 667 N.E.2d 1296, 1303–04 (1996)). A plaintiff must also plead special damages with particularity to state

a claim for false light based on statements that are not defamatory *per se*. *Id.* (citing *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 736, 554 N.E.2d 988, 994 (1990)).

Katherine contends that she has sufficiently pleaded special damages so that her claims can survive as defamation *per quod* actions even if they fail as claims for defamation *per se*. The Court disagrees. Katherine has not provided an itemization of losses stemming from the alleged defamation or otherwise pointed to any concrete loss resulting from the allegedly defamatory statements. She alleges generally that she suffered harm to her career and professional advancement, lost opportunities for professional growth and promotions, lost prestigious assignments and influence within her department, and that her "ability to earn extra income from taking up summer jobs or consulting projects [was] harmed." Am. Compl. ¶ 292. Because she does not explain with the required specificity "what pecuniary losses [she] suffered as a result" of the alleged harm to her reputation, Katherine can state a claim for defamation and false light only for alleged statements that are defamatory *per se*. *Lott*, 556 F.3d at 570.

A statement is not actionable as defamatory *per se* "if it is reasonably capable of an innocent construction." *Tuite*, 224 Ill. 2d at 502, 866 N.E.2d at 121. Similarly, a statement is not defamatory *per se* if it may "reasonably be interpreted as referring to someone other than the plaintiff." *Id.* at 503, 866 N.E.2d at 122. In addition, to allow a court to determine whether a statement is defamatory, the plaintiff must plead the substance of an allegedly defamatory *per se* statement with "sufficient precision and particularity." *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459. Although federal pleading standards apply in diversity cases such as this one, a federal court's "reliance on federal procedural rules does not allow [it] to ignore Illinois substantive law," which puts a

"thumb on the scale for defendants" in defamation *per se* actions, where damages are presumed. *Lott*, 556 F.3d at 569. Other courts in this district have recognized that requiring a plaintiff to alleged defamatory statements with particularity does not hold the plaintiff "to a higher, fact pleading standard, but rather [requires that] [s]he plead the substantive element" of defamation that entitles her to the presumption of damages. *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836–37 (N.D. Ill. 2015) (citing *Keen v. Bluestar Energy Servs., Inc.*, No. 11 C 7754, 2012 WL 1118215, at *5 (N.D. Ill. Mar. 30, 2012)).

The Court concludes that a number of the remaining alleged defamatory statements cannot be considered defamatory *per se*, because they lack the requisite particularity or are otherwise reasonably capable of being interpreted innocently or as referring to someone other than Katherine. Defendants' alleged statements accusing Katherine of criminal conduct are either too vague and general to be actionable *per se* or are otherwise reasonably capable of an innocent construction. "Illinois courts have repeatedly observed that, to be actionable as defamation *per se* (in the commission-of-a-crime category), a statement must directly or expressly accuse the plaintiff of committing a specific crime." *Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345, at *8 (N.D. Ill. June 29, 2015) (collecting cases). Under that rule, Katherine's allegations that defendants "told or intimated to Plaintiff's employer that Plaintiff engaged in criminal conduct" are insufficient to support a claim for defamation *per se*. Am Compl. ¶ 461. In a similar vein, defendants' alleged statements that "communicated that [Katherine] committed perjury" are likely not actionable *per se* under the commission-of-a-crime category. *Id.* ¶ 193. Katherine alleges that defendants communicated that she

committed perjury by stating that she lied in her letter to the judge in the New York state court but "le[aving] it deliberately ambiguous whether [Katherine's] alleged lies were made in a sworn document." *Id.*; *see also id.* ¶¶ 461, 480. Because those statements contain no "direct or express" accusation of perjury, they appear to be reasonably capable of a non-defamatory construction.[5]

In addition to her allegation that Kerr accused her of committing perjury, Katherine alleges that Kerr falsely accused her of "other criminal violations." *Id.* ¶¶ 195, 524. Those alleged statements are plainly too vague and conclusory to be defamatory *per se*. Katherine also alleges generally that Kerr "repeatedly and strongly intimated that there were facts about [Katherine] that Kerr was unable to disclose to [Katherine's] employer, and that those facts were extremely damaging to [Katherine's] reputation and career." *Id.* ¶ 204. This alleged statement, too, is insufficiently precise to allow the Court to review it for defamatory content and thus cannot be actionable *per se*.

Certain of the alleged statements can be reasonably interpreted as referring to someone other than Katherine and are therefore nonactionable. Katherine's allegation that Kerr threatened Northwestern with litigation is plainly not an assertion of fact "identifiably about the plaintiff" and is therefore nonactionable. *Shivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 765, 776 N.E.2d 693, 701 (2002). And although Katherine alleges

---

[5] Though a charge that Katherine lied to a court, by itself, can reasonably be construed as something other than an accusation of "perjury," the alleged statement may impute the commission of another crime. Specifically, attempting to influence litigation by making a false statement, even if not made under oath, may constitute obstruction of justice or a similar crime under applicable state law. Katherine has not alleged that defendants accused her of any specific crime other than perjury, however, and in any event, as discussed below, the Court concludes that defendant's alleged accusations that Katherine lied to the court are actionable under a separate *per se* category.

that Kerr intimated in her letter that she was investigating Katherine for financial misconduct, the actual text of the letter shows that Kerr clearly stated that the court "authorized [her] to conduct an investigation into the actions of [Katherine's] husband." Kerr Letter at 1. Katherine contends that in the context of a letter attacking her, a reader would interpret Kerr's statement as a suggestion that Katherine was being investigated. A more reasonable interpretation, however, is the straightforward reading of the text's plain language, which "refer[s] to someone other than [Katherine]," namely, Bernard. *Tuite*, 224 Ill. 2d at 502, 866 N.E.2d at 121.

Katherine does allege that, apart from her statement in the letter, Kerr falsely informed Northwestern employees that she had been appointed to investigate Katherine for financial misconduct. That alleged statement, however, is nonactionable as defamation *per se*, because it does not fall into one of the five recognized categories of *per se* statements. To the extent Katherine contends that the statement imputes the commission of crime, the statement is insufficiently specific in that it does not include a contention that Katherine committed a crime at all (as opposed to being under investigation) or what specific crime Kerr alleged her to have committed. Katherine also cannot successfully argue that committing financial misconduct imputes that she is "unable to perform or lacks integrity in performing her or his employment duties." *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459. That category "seems to imply some sort of on-the-job malfeasance," and Katherine does not allege that Kerr accused her of engaging in financial misconduct in the course of her work as a law professor. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013). Katherine has also not argued that financial propriety is a trait of such importance to the job of a law professor

that an accusation of financial misconduct would impute a lack of ability to do her job or otherwise prejudice her in her profession. *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459; *cf. Pippen*, 734 F.3d at 613 ("When the subject of false statements is employed in an occupation (schoolteacher for example) that requires certain personal traits, such as trustworthiness, accusations of being a scam artist or an inveterate liar could lead to unemployment.").

After accounting for the nonactionable alleged statements, it appears that the only remaining statements are defendants' respective alleged accusations that Katherine lied in her letter to the judge in the New York case by making certain misrepresentations about the Colorado proceedings. As discussed above, those alleged statements are not mere expressions of opinion, and they cannot be conclusively labeled as substantially true. They also contain sufficient detail (at least in the context of the parties' dispute) to allow the Court to assess their defamatory content. And although the alleged accusations of perjury are inadequate to place the alleged statements in the commission-of-a-crime category, lying to a court does fall into the category of "prejudice to one's profession" in Katherine's case. Unlike allegations of financial misconduct, allegations that a law professor lied to a court "could lead to unemployment" in a profession whose role includes training future attorneys on proper conduct in court proceedings. Those statements thus support actionable claims for defamation *per se* and false light.

### 5. Aiding and abetting

Defendants do not provide arguments for dismissing the claims of aiding and abetting defamation apart from their arguments against the substantive defamation

claims. Katherine has adequately alleged that each defendant knowingly assisted each other in their defamation efforts. Thus because at least one defamation claim against each defendant survives, Katherine has also stated a claim for defamation against each defendant.

**B.      Intentional infliction of emotional distress**

Katherine asserts claims against Wrigley and Kerr for intentional infliction of emotional distress and asserts claims against each defendant for aiding and abetting intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) an actor engaged in "truly extreme and outrageous" conduct, (2) the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress, and (3) the conduct did in fact cause "*severe* emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988) (emphasis in original). Defendants argue that Katherine has failed to allege that they engaged in sufficiently extreme and outrageous conduct or that she suffered sufficiently severe emotional distress. The Court concludes that Wrigley's alleged conduct is sufficiently extreme and outrageous and that the alleged emotional distress that resulted from that conduct is sufficiently severe. Kerr's alleged conduct, however, does not rise to the level of "truly extreme and outrageous," and Katherine has therefore not stated a claim for intentional infliction of emotional distress against her.

To be "truly extreme and outrageous," the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 51, 77 N.E.3d 50, 63. Though there are factors to consider when determining whether conduct may be deemed outrageous, such as the defendant's power to affect the plaintiff's interests, the reasonableness of a defendant's belief that his objective is legitimate, or the defendant's awareness that the plaintiff is particularly susceptible to emotional distress, the "outrageousness of a defendant's conduct must [ultimately] be determined in view of all the facts and circumstances pled . . . in a particular case." *Id.* at ¶ 52, 77 N.E.3d at 63. A reasonable jury in this case could find that Wrigley's alleged conduct went beyond the bounds of decency, was atrocious, and is utterly intolerable.

Among other things, Wrigley allegedly (1) threatened that she would direct someone to physically and sexually assault Katherine if she testified in the underlying court proceedings, (2) threatened to submit a false police report and a false report to an Illinois child welfare agency in order to have Katherine's small children removed from their home, and (3) threatened to send Pinto to burglarize Katherine's home unless she transferred assets to Wrigley. Katherine alleges that Wrigley engaged in this pattern of threats persistently from 2012 through 2016. She also alleges that Wrigley indicated that she had the power to follow through on her threats, emphasizing that Pinto was a convicted criminal who had previously stalked a member of Katherine's family and that Wrigley had years of experience as an advocate for abused children and knew how to write effective police reports to have Katherine's children removed from their home. The duration of Wrigley's alleged conduct and her attempts to add credibility to her objectively deplorable threats would allow a reasonable jury to find her conduct extreme and outrageous.

A reasonable jury could also find that Katherine suffered severe emotional distress as a result of Wrigley's threats. Katherine alleges that Wrigley's threats have caused her to develop severe anxiety, fear, and depression. More specifically, she alleges that she now has a persistent fear that her children will be taken from her and that someone will break into her house. She says she suffers from insomnia, nightmares, racing heartbeat, extreme fatigue, sweating, and panic attacks. In addition, she says her anxiety has become so severe that she has lost 60 pounds and has developed significant shoulder and back pain. A reasonable jury could find that such distress, endured over the course of years, is "so severe that no reasonable [person] could be expected to endure it." *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809; *see also Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994) (even though plaintiff did not seek psychiatric help, evidence that she had stomach pains and vomiting, stopped talking, stopped eating, lost weight, was not a happy person, cried all the time, was distraught and too thin, and appeared frightened was enough to establish severe emotional distress).

Unlike the claim asserted against Wrigley, the intentional infliction of emotional distress claim asserted against Kerr is based solely on her alleged defamatory statements to Northwestern. Making false statements to a party's employer to hurt the party's reputation and prevent her from testifying is certainly unseemly conduct, but it is not so extreme in degree to be utterly intolerable in a civilized community. Courts in similar circumstances have dismissed intentional infliction of emotional distress claims based on allegedly defamatory statements, and the Court sees no reason to treat the claim against Kerr differently. *See, e.g.*, *Socorro v. IMI Data Search, Inc.*, No. 02 C

8120, 2003 WL 1964269, at *5 (N.D. Ill. Apr. 28, 2003) (Kennelly, J.) (firing plaintiff based on an erroneous report that he had been in jail and portraying him falsely to others, thereby damaging his reputation and harming his employment prospects, was "deplorable if proven" but did not rise to required level of "outrageousness"); *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 973, 569 N.E.2d 1104, 1109 (1991) (making allegedly defamatory statements to the police accusing plaintiff of harassing, assaulting, and verbally threatening a co-worker likely created "some distress and embarrassment" but was not sufficiently outrageous or extreme).

The only non-conclusory allegations concerning defendants' conduct concerning their aiding and abetting intentional infliction of emotional distress involve conduct related to the alleged defamatory statements, not Wrigley's threats. The Court therefore grants defendants' motions to dismiss with respect to the claims for aiding and abetting intentional infliction of emotional distress.

**C.     Private facts and intrusion upon seclusion**

Katherine asserts claims for intrusion upon seclusion against Kerr and for publication of private facts against each defendant, as well as claims against each defendant for aiding and abetting those substantive torts. The tort of invasion of privacy based on intrusion upon seclusion does not fit the facts alleged against Kerr in this case. Katherine alleges that Kerr invaded her privacy through intrusion upon seclusion when she illegally obtained the sealed letter that Katherine had written to the court. The tort of intrusion upon seclusion addresses "highly offensive prying into the physical boundaries or affairs of another person." *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417, 534 N.E.2d 987, 989 (1989). Examples of offensive

prying include: "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls." *Id.* Katherine has not alleged that Kerr engaged in prying of that sort. Nor has she adequately alleged why Kerr's obtaining of the letter submitted to the court, concerning prior litigation proceedings in which Kerr had been participating, would be "highly offensive to a reasonable person." *Id.* at 416, 534 N.E.2d at 988. Any "subsequent harm resulted from [Kerr's] act of publication [to Northwestern], not from any act of prying analogous to the examples" listed above, and Katherine has therefore failed to state a claim for intrusion upon seclusion. *Id.* at 417, 534 N.E.2d at 989.

Katherine has also failed to adequately allege publication of private facts. To state a claim for invasion of privacy based on public disclosure of private facts, a plaintiff must allege that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private, and not public, facts; and (3) the matter made public was such as to be highly offensive to a reasonable person." *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 978, 560 N.E.2d 900, 902 (1990). "Private facts" are facts that a "plaintiff 'does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close friends.'" *Ameristar Casino E. Chicago, LLC v. UNITE HERE Local 1*, No. 16 C 5379, 2016 WL 7339199, at *6 (N.D. Ill. Dec. 19, 2016) (quoting Restatement (Second) of Torts § 652D cmt. b). "Examples of private facts include sexual relations, embarrassing illnesses, intimate personal letters, matters related to domestic or familial relations, and mental health conditions." *Id.* (collecting Illinois cases); *see also Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *5 (N.D. Ill. June 11, 2010) ("Illinois cases

addressing the question of publication of private facts have held that private facts are 'intimate personal facts,' such as health issues and sexual relationships.").

It is not apparent that any of the facts regarding the litigation that were allegedly published concern the type of intimate details considered "private facts" under the doctrine. But in any event, to the extent the alleged disclosed facts do relate to intimate personal matters, they do not appear to be the type that one would refrain from "exposing to the public eye" and "keep entirely to himself." Indeed, Bernard filed a lawsuit in this district, in an open proceeding, mere weeks after the Katherine sent her letter containing the allegedly private facts, knowing that facts about the Blacks' acrimonious family litigation, Joanne's mental health, and other allegedly private facts would be made public as a result of that litigation. *See Black v. Black* Order (discussing family litigation proceedings, Joanne's mental illness and capacity, and family financial matters). Because Katherine has not alleged the disclosure of the type of private facts recognized in Illinois, she has failed to state a claim for publication of private facts.

Finally, because Katherine has failed to state a claim for either invasion of privacy tort, the claims for aiding and abetting those torts must also be dismissed.

**D.     Interference with contract and prospective economic advantage**

Katherine also asserts claims for interference with contractual relations and interference with prospective economic advantage, but she fails to allege necessary elements of both claims. To state a claim for tortious interference with a contract, a plaintiff must plead: "the existence of a valid and enforceable contract between the plaintiff and another; the defendant's awareness of this contractual relation; the defendant's intentional and unjustified inducement of a breach of the contract; a

subsequent breach by the other, caused by the defendant's wrongful conduct; and damages." *Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 288 Ill. App. 3d 880, 883, 681 N.E.2d 564, 567 (1997). Katherine has not adequately alleged that Northwestern breached its contract with her. She asserts that her contract with Northwestern "implicitly but unambiguously provided that Plaintiff's career would be reasonably advanced in the absence of improper conduct on her part" and that Northwestern breached that contract when she "suffered the loss of compensation [and] loss of professional advancement." Am. Compl. ¶¶ 627–28. These conclusory assertions, however, do not constitute plausible allegations that she had an implied contract with Northwestern for reasonable career advancement that Northwestern breached. Among other things, Katherine does not explain "what communications formed the basis . . . of the supposed implied contract[] . . . ." *Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013); *cf. id.* (breach of contract claim based on allegation that plaintiffs "entered into implied, oral and/or written contracts with [defendants] to provide . . . professionally competent tax advice" would have failed to state a claim even before *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

To state a claim for the similar tort of intentional interference with prospective economic advantage, a plaintiff must allege: a reasonable expectation of entering into a valid business relationship, that the defendant had knowledge of that expectation, purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening into a valid business relationship, and damages resulting from the interference. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878 (1991). The alleged purposeful interference must be directed toward the third

party.  "It is not enough for the defendant's action to impact a third party; rather, the defendant's action must be directed toward [that] party."  *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 2015 IL App (1st) 142984, ¶ 28, 47 N.E.3d 569, 577. Though Katherine alleges that defendants' conduct resulted in a loss of outside business opportunities, such as consulting and lecturing opportunities, she does not allege that any of the defendants directed their actions at any of the parties who have or would have provided her those opportunities.  Katherine maintains that it is sufficient for her to allege that defendants directed her actions toward her employer and her colleagues, who participate in the network through which Katherine would obtain business opportunities.  But it is not sufficient to allege that defendants' actions would impact those third parties; the alleged actions must be directed toward those parties.  *Id.*

## E.    Civil conspiracy

Defendants argue that Katherine's civil conspiracy claim should be dismissed because it is duplicative of her other underlying tort claims.  The Court declines to dismiss the claim on this basis at this time.  "Illinois recognizes civil conspiracy as a distinct cause of action," and "dismissal of a conspiracy count as duplicative of other theories of recovery alleged in the complaint [would be] premature."  *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486, 693 N.E.2d 358, 371 (1998).  If the case proceeds to trial, "at the very least the jury must be instructed . . . that there cannot be double recovery for the same injury."  *Cameron v. City of Chicago*, No. 16 C 08347, 2017 WL 3421474, at *5 (N.D. Ill. Aug. 9, 2017).

## Conclusion

The Court denies defendants' motions [dkt. nos. 83, 84, 86, 90, 92] with respect

to (1) the defamation and false light claims and aiding and abetting defamation and false light claims against Wrigley, Kerr, Cohenson, and Raphan based on defendants' alleged statements that Katherine lied to the New York state court, and (2) the claim against Wrigley for intentional infliction of emotional distress, and otherwise grants the motions.  Defendants are directed to answer the remainder of plaintiff's complaint by no later than January 5, 2018.  Both sides' Rule 26(a)(1) disclosure are to be made by that same date.  The case is set for a status hearing on January 9, 2018 at 8:45 a.m. for the purpose of setting a discovery and pretrial schedule.  Counsel are directed to meet and confer prior to that date to attempt to agree on a schedule to propose to the Court.

Date:  December 8, 2017

_____
MATTHEW F. KENNELLY
United States District Judge