IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERINE BLACK, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CHERIE WRIGLEY, MELISSA COHENSON, : <br> BRIAN A. RAPHAN, P.C., and PAMELA KERR, : <br> : <br> Defendants. : | Case No. 1:17-cv-00101 <br><br> Honorable Matthew F. Kennelly |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DOCUMENT PRODUCTION AND TESTIMONY OF DEFENDANT PAMELA KERR**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    ATTORNEY-CLIENT PRIVILEGE AND COMMON INTEREST DOCTRINE ...... 2

        A. Attorney-Client Privilege Is the Exception; Admission Is Preferred ................ 3

        B. Common Interest Exception to Waiver of Attorney-Client Privilege ............... 3

        C. Work-Product and the Common Interest Doctrine ........................................... 4

        D. The Crime-Fraud Exception to Attorney-Client Privilege ................................ 4

    II.    DEFENDANT KERR'S INSUFFICIENT DOCUMENT PRODUCTION ................. 4

        A. Kerr's Unsubstantiated Privilege Claims ........................................................... 5

        B. Kerr Claims Privilege in Obviously Unprivileged Documents ......................... 7

        C. Documents with Undisclosed or Unknown Recipients ..................................... 8

        D. Defendants Production and Privilege Logs Reveal Their Co-Defendants Are Withholding Documents from Discovery .......................................................... 9

        E. Unproduced and Undisclosed Known Documents .......................................... 10

        F. Kerr's Common Interest Claims Require an *In Camera* Review Pursuant to the Crime-Fraud Exception to Privilege .............................................................. 10

    III.    DEFENDANTS REFUSAL TO TESTIFY AT DEPOSITIONS ............................... 12

        A. Improper Invocations of Privilege During Kerr's Deposition ........................ 12

        B. Kerr Must Be Ordered to Answer Questions That Were Obstructed by Improper Coaching ......................................................................................................... 14

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Alpha Therapeutic Corp.*,
    200 F.R.D. 401 (N.D. Ill. 2001) ...................................................................................2

*Acosta v. Target Corp.*,
    281 F.R.D. 314, 320 (N.D. Ill. 2012) ............................................................................5

*Allen v. Chicago Transit Auth.*,
    198 F.R.D. 495 (N.D. Ill. 2001) ...................................................................................4

*Beneficial Franchise Co. v. Bank One, N.A.*,
    205 F.R.D. 212 (N.D. Ill. 2001) ...............................................................................4, 6

*Center Partners, Ltd. v. Growth Head GP, LLC*,
    981 N.E.2d 345 (Ill. 2012) ........................................................................................3, 6

*Dawson v. New York Life Ins. Co.*,
    901 F. Supp. 1362 (N.D. Ill. 1995) ...............................................................................4

*McCullough v. Fraternal Order of Police, Chicago Lodge 7*,
    304 F.R.D. 232 (N.D. Ill. 2014) ...................................................................................5

*People v. Radojcic*,
    2013 IL 114197, 998 N.E.2d 1212 (Ill. 2013) ....................................................3, 4, 12

*RBS Citizens, N.A. v. Husain*,
    291 F.R.D. 209 (N.D. Ill. 2013) .................................................................................14

*Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*,
    2018 IL App (2d) 170939, ¶ 17 (2d Dist. 2018) ...........................................................4

*Selby v. O'Dea*,
    2017 IL App (1st) 151572, ¶ 112, 90 N.E.3d 1144, 1168 (1st Dist. 2017) ...................4

*Shields v. Burlington N. & Santa Fe Ry. Co.*,
    353 Ill. App. 3d 506, 818 N.E.2d 851 (1st Dist. 2004) .................................................3

*Specht v. Google, Inc.*,
    268 F.R.D. 596 (N.D. Ill. 2010) ...................................................................................4

**Other Authorities**

Restatement (Second) of Conflict of Laws § 139 (1971) .....................................................2

**Rules**

Fed. R. Civ. P. 26 ...........................................................................................................4, 5

**INTRODUCTION**

Plaintiff, Katherine Black ("Katherine"), submits this Memorandum of Law in Support of Plaintiffs' Motion to Compel Document Production and Testimony of Defendant Pamela Kerr. Katherine moves for an order compelling (a) documents from Pamela Kerr's privilege log, which are not in fact privileged or (b) alternatively, *in camera* review of Kerr's privilege claims, (c) the production of additional documents that were wrongfully withheld, and (d) testimony that was improperly withheld on the basis of claims of privilege.

**FACTUAL BACKGROUND**

Katherine brought this action against Defendants for defamation, intentional infliction of emotional distress, and civil conspiracy to prevent her from testifying in several related cases. In January, 2016, Katherine submitted a letter, identifying herself as a witness, to the court in one of those cases, a guardianship proceeding in the New York Supreme Court. Docket Entry No. 71 ("Am. Compl"). Immediately after that, Defendants began an organized campaign to attack Katherine at her place of employment, Northwestern University. Additionally, Defendant Wrigley continuously harassed Katherine, including threatening to use her experience in child-protection fields to manipulate the legal system and take Katherine's children from her. *Id*. ¶¶ 126-29. Defendant Cohenson, working for Brian A. Raphan, P.C., represented Wrigley in the New York proceeding. Kerr's only involvement was as a witness, not a litigant, at a March 2016 hearing.

Cohenson and Raphan produced a 2-page privilege log on August 25, 2018 and were both deposed on August 28, 2018. Ex. 1, 2. Kerr first produced a 38-page privilege log on August 29, 2018, just before her August 31 deposition. Ex. 3, 4. Wrigley produced a 3-page privilege log and was deposed on September 7, 2018. Ex. 5. Defendants' privilege logs all list numerous documents as covered by attorney-client, work-product, and common interest privileges, but contain no support for these privilege claims. Ex. 2, 4, 5. On September 18, 2018, Kerr sent an amended privilege log with a new column for "Basis for Privilege." Ex. 6, 7. The privilege logs include many communications

1

between co-Defendants; Defendants produced no such communications in their document productions. Many entries include third parties, often without any counsel copied. *Id*. Kerr's amended privilege log includes entries with no dates, no authors, unidentified recipients, and asserts privilege by citing other communications that are neither disclosed nor on the log. Ex. 7. Most undated documents are identified as attachments, but with no information on which attachment links to which email. Ex. 7, p. 36-38. Wrigley's privilege log does not even indicate emails that have attachments. Ex. 5. Still other known responsive documents were neither produced nor listed in the privilege log of any Defendant.

In their depositions, when asked about specific privilege log entries Defendants either could not answer or were instructed not to answer. Ex. Ex. 8, 47:5-50:16, 10, 57:6-23, Ex. 11, 93:12-94:3. Neither Wrigley nor Kerr are attorneys, and Kerr was not was not retained by counsel in the New York proceeding nor was she represented by counsel in any litigation. Ex. 10, 59:13-17, 60:4-10. Pursuant to Local Rule 37.2, Plaintiff requested on September 11, 2018 that Defendants correct their discovery deficiencies and produce any common interest agreements.[1] Ex. 13.

## ARGUMENT

### I. ATTORNEY-CLIENT PRIVILEGE AND COMMON INTEREST DOCTRINE

This is a diversity action, involving Illinois state claims, am. compl. ¶ 87, therefore Illinois choice-of-law applies. *See Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 404 (N.D. Ill. 2001). Illinois courts apply Restatement (Second) of Conflict of Laws (Restatement) § 139 to determine the law governing privilege claims. Under Section 139, cited in *People v. Allen*, 336 Ill. App. 3d 457, 459, 784 N.E.2d 393, 394 (2003), with limited exceptions, evidence is admitted if either (i) it is not privileged under the law of the state with the most significant relationship with it, or (ii) it is not privileged in the forum state, here Illinois. Below, we apply Illinois law.[2]

---

[1] On September 25, 2018 Plaintiff again requested any common interest agreements. Ex. 15.
[2] The Complaint alleges that Defendants sought to influence a New York guardianship proceeding, thus, some communications may have a significant relationship to New York. Because of the sparse information in Defendants'

### A. Attorney-Client Privilege Is the Exception; Admission Is Preferred

Under Illinois law, "privilege is to be strictly confined within its narrowest limits and limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such." *Center Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 355–56 (Ill. 2012) (quoting *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 190, 579 N.E.2d 322 (1991)). Attorney-client privilege is waived by disclosure to third parties, *id.* at 357, and is available only "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, . . ." *People v. Radojcic*, 2013 IL 114197, ¶ 40, 998 N.E.2d 1212, 1221 (Ill. 2013) (citation omitted). The party asserting privilege has the burden of proof. *Shields v. Burlington N. & Santa Fe Ry. Co.*, 353 Ill. App. 3d 506, 508, 818 N.E.2d 851, 852–53 (1st Dist. 2004).

### B. Common Interest Exception to Waiver of Attorney-Client Privilege

The Common Interest Doctrine is not "a privilege in and of itself—the privilege is either the attorney-client or work-product privilege—but [is] an exception to the rule of waiver . . . based on the parties' common interest in defeating a litigation adversary." *Selby v. O'Dea*, 2017 IL App (1st) 151572, ¶ 40, 90 N.E.3d 1144, 1153 (1st Dist. 2017). Thus, the Common Interest Doctrine requires (1) an underlying privileged communication, (2) that has not already been waived, and (3) a common interest in defeating a litigation adversary. It protects only communications made to further that common interest, "pursuant to a common-interest agreement, (1) by the attorney for one party to the other party's attorney, (2) by one party to the other party's attorney, (3) by one party to its own attorney, if in the presence of the other party's lawyer, and (4) from one party to another, with counsel present." *Selby*, 90 N.E.3d at 1166. Moreover, "the common interest must relate to a litigation

---

privilege logs, Plaintiff cannot determine which, if any, communications have a closer connection to New York than to Illinois. If any do *and* Defendants establish that they would be privileged under New York law, Defendants would still need to establish a "special reason" to overrule Illinois policy favoring admission. *Allen*, 336 Ill. App. 3d at 459.

interest," *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004), and "applies only to those matters on which the parties might share liability." *Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 2018 IL App (2d) 170939, ¶ 17 (2d Dist. 2018) (citation omitted). Here, Kerr has the burden of establishing that the doctrine applies. *See Selby*. 90 N.E.3d at 1168.

### C. Work-Product and the Common Interest Doctrine

A work-product claim is governed by the federal rules even in diversity cases. *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995). "The work-product doctrine protects evidence or testimony that contains the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Fed. R. Civ. P. 26(b)(3)(B)." *Specht v. Google, Inc.*, 268 F.R.D. 596, 599 (N.D. Ill. 2010) (citing Fed. R. Civ. P. 26(b)(3)). Kerr has the burden of proof and "merely factual" information may not be withheld. *See Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001). Disclosure to a third party waives the privilege. *Selby*, 90 N.E.3d at 1151.

The common interest exception to waiver can apply to work-product, "only if (1) one party is seeking confidential information from the other *on behalf of an attorney*; (2) one party is relaying confidential information to the other o*n behalf of an attorney*; and (3) the parties are communicating work-product that is related to the litigation." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 220 (N.D. Ill. 2001) (emphasis added).

### D. The Crime-Fraud Exception to Attorney-Client Privilege

The crime-fraud exception to attorney-client privilege "is triggered when a client seeks or obtains the services of an attorney in furtherance of criminal or fraudulent activity." *Radojcic*, 998 N.E.2d at 1222. The trial court should assess whether the exception applies through *in camera* review of documents upon a "showing of [a] factual basis adequate to support a good faith belief by a reasonable person" that this may reveal evidence to support applying the exception. *Id*.

## II. DEFENDANT KERR'S INSUFFICIENT DOCUMENT PRODUCTION

4

### A. Kerr's Unsubstantiated Privilege Claims

Under Fed. R. Civ. P. 26(b)(5), Kerr's privilege log must "describe the nature of the withheld material in a manner that, without revealing information itself privilege[d] or protected, will enable other parties—and the court—to assess the claim." *Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012). "Traditionally, in this district . . . a privilege log list[s] each separate document being withheld and identifying for each the date, author, all recipients along with their capacities, the document's subject matter, purpose for production, and *specific explanation* of why the document is immune from discovery." *Id*. (emphasis added). Kerr's amended privilege log lacks information sufficient to establish any element of the asserted privileges or any element of the common interest doctrine. Ex. 7. Kerr claims "common interest" in all but two of the nearly 200 documents in her log,³ and asserts common interest with a wide array of people, yet she does not state the underlying case for which they were all co-litigants, as there is none, or the common interest. The "basis for privilege" column contains unhelpful boilerplate language for nearly all entries: "email chain/communication discussing legal strategy . . ." Ex. 7. Kerr was not a party to the New York guardianship case and had no "litigation adversary" there, and thus cannot claim a common interest exception to waiver. *See McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill. 2014) ("A shared rooting interest in the successful outcome of a case is not a common *legal* interest." (emphasis in original)). The amended log lists 23 undated documents with no authors, recipients, purpose, or basis for privilege. Ex. 7, p. 36-38. At deposition, Kerr was unable to identify her own documents or their purpose based on the descriptions in her privilege log. For example:

> Q     And do you recall what Ms. Wrigley was writing to you about the package from Ms. Litvak?
> A     I do not.
> Q     Do you know who the other recipients of Document 4849 are?

---

³ The exceptions are KERR5029, KERR5031, which claim privilege solely on the basis of "Attorney Client and Work-Product." These emails include multiple recipients, thus any privilege has been waived.

5

    A    I do not.

Ex. 10, 74:25-75:5; *see also* 52:10-17, 57:6-23, 59:5-12. Kerr's attorney, Steven Mandell, even took the position that asking Kerr whether she produced to counsel the documents in her privilege log was an improper "call[] for speculation." Ex. 10, 70:13-18.

### *i. Kerr Claims Privilege for Communications That Involve No Attorneys*

Defendant Kerr identifies in her privilege log communications that manifestly lack any basis for privilege, with no support for the asserted privilege. Many include no attorney:[4]

- **Communications between Kerr and Wrigley:** KERR5274, KERR5416, KERR7432, KERR5414, KERR6362, KERR4811, KERR4849, KERR4850, KERR5174, KERR5222, KERR4877, KERR4793, KERR5089. Ex. 7.

Kerr's privilege log asserts that her communications with Wrigley are subject to work-product privilege. But neither Kerr nor Wrigley are attorneys. Kerr claims that she was retained as a forensic accountant by guardian-ad-litem Gayle Young in a Colorado proceeding. Ex. 10, 61:15-20. There, Ms. Young was found to have no privilege.[5] Ex. 15. Therefore, (a) Kerr has no privilege that stems from her relationship with Young, and (b) any communication shared with Young, by any Defendant, waives privilege. Any possible work-product privilege was further waived for communications shared with Wrigley,[6] since the common interest exception to waiver of work-product applies only when a party seeks or relays "confidential information . . . on behalf of an attorney." *See Beneficial Franchise Co.*, 205 F.R.D. at 220. None of the entries in Kerr's privilege log asserting "common interest" establishes either the elements of the asserted privilege or the elements of the common interest

---

[4] Kerr's amended privilege log lists the "basis for privilege" for some of these entries as seeking legal advice from attorneys, none of whom represent Kerr. However, no attorneys are listed as senders or recipients of these emails.

[5] Ms. Young is an attorney, but served solely as guardian ad litem, not as counsel, and had no role in the New York case. Kerr also testified that keeping her communications with Young confidential "was never discussed." Ex. 10, 86:16-87:5. This testimony also precludes privilege, which requires the communications be "expressly made confidential" or that one would "reasonably believe" they were so. *See Center Partners*, 981 N.E.2d at 355–56.

[6] Kerr's amended privilege log states that the basis for privilege was discussion of legal strategy. This is not one of the bases for the common interest exception to waiver of work-product.

exception to waiver.[7]

### ii. Kerr Claims Privilege in Communications Before Alleged Common Interest Began

Kerr wrote a letter to Northwestern that Wrigley then sent to Northwestern. Kerr did not send the letter on the advice of counsel and told Wrigley about this advice. Ex. 10, 191:1-9; Ex. 11, 246:3-15. Kerr's communication with Wrigley occurred "before this whole thing ever started." Ex. 11, 247:8-13, 248:9-14. This early disclosure to Wrigley, before there was even an alleged common interest, waived privilege as to what advice Kerr received. However, both Kerr and Wrigley refused to answer questions on this topic, claiming attorney-client privilege. *Id.*; Ex. 10, 195:6-18. Kerr and Wrigley must both answer questions about (a) what Kerr's attorney told Kerr, and (b) what Kerr told Wrigley about her letter and the advice of her counsel.[8]

### B. Kerr Claims Privilege in Obviously Unprivileged Documents

Communications that Defendant Kerr claims are privileged include:

- **A letter written by Plaintiff, Katherine Black**, to Justice Aliotta of the New York Supreme Court. The same letter that Defendants sent to Ms. Black's employer.
    - Ex. 7, p. 37 KERR687.

- **Court documents from the New York guardianship proceeding**, a case that Kerr was not a party to and testified she "had nothing to do with." Ex. 10, 152:16-19.
    - Ex. 7, pp. 36-38, KERR202, KERR204, KERR208, KERR210, KERR212, KERR214, KERR216, KERR688, KERR689, KERR690, KERR5464.

- **Email exchanges that involved no attorneys, no legal advice and do not seek confidential information on behalf of an attorney**.[9]
    - Ex. 7, KERR5274, KERR5416, KERR7432, KERR5414, KERR6362, KERR4811, KERR4849, KERR4850, KERR5174, KERR5222, KERR4877, KERR4793, KERR5089.

- **Emails amongst co-Defendants, and also Anthony Dain, and Ira Salzman about contacting Northwestern, with no possible legal interest advanced.**

---

[7] Kerr was named as a co-defendant with Wrigley and Cohenson in a separate case filed on March 11, 2016 in the Eastern District of New York. However, only a few of the documents in Kerr's privilege log post-date March 11th, and fewer still appear to relate to that case.

[8] Kerr also testified about this in the New York Court, which also waived any alleged privilege. Ex. 10, 188:14-199:23.

[9] Many of these emails include unidentified recipients, including KERR5274, KERR5416, KERR7432, KERR5414, KERR4811, KERR4849, KERR5174, KERR4793, KERR5089. Ex. 7.

7

- o Ex. 7, KERR6230 (with the description "Re: Info for letter to dean");
- o KERR7432 (with the description "Re: Info for letter to dean & Investigational opening to ETHICS DEPT");
- o KERR4825, KERR5052, KERR5065, KERR5138, KERR5203, KERR5324, KERR5400 ( "Re: WHO sent my letter to Northwestern," with over 6 recipients, including an unidentifiable email address, indicating that the letter was widely distributed prior to being sent to Northwestern);
- o KERR220 (an undated attachment described as "Draft letter", with no indication of who sent or received the letter).

Kerr's deficient privilege log fails to establish attorney-client or work-product privilege. To assert the common interest exception to waiver, Kerr would have to establish an underlying privilege and then establish that a common legal interest was furthered by the disclosure. Here, Kerr fails on all counts and does not even allege a common interest advanced by the disclosures.

### C. Documents with Undisclosed or Unknown Recipients

Kerr's privilege log, as well as her co-Defendants' logs, contain multiple emails where the party claiming privilege is neither the sender nor a recipient. The logical conclusion is that they were blind copied, or "bcc'd."[10] Kerr cannot know who else received these emails, which prevents her from establishing confidentiality, a fundamental element of both privilege and common interest.

- **Kerr Emails for Which She Is Neither Sender Nor Recipient:** KERR6273, KERR5017, KERR5295, KERR4724, KERR5197, KERR5198, KERR4730, KERR4999, KERR5190, KERR5220. Ex. 7.[11]

- **Kerr Emails for Which Her "Basis of Privilege" Suggests Non-Disclosed Recipients:** KERR5274, KERR5416, KERR5174, KERR5222. Ex. 7.
    - o These emails' basis of privilege state that they are seeking legal advice from various named attorneys, none of whom are listed as senders or recipients.

- **Wrigley Emails for Which She Is Neither Sender nor Recipient:** WRIGLEY24, WRIGLEY25, WRIGLEY26, WRIGLEY27, WRIGLEY28, WRIGLEY30, WRIGLEY31, WRIGLEY33, WRIGLEY34, WRIGLEY45. Ex. 5.

- **Cohenson Emails for Which Neither She nor Anyone from Brian A. Raphan, P.C. is

---

[10] This is the same conclusion that Wrigley came to during her deposition, when asked about this, she said "Maybe somebody -- I never learned until a couple years ago what -- what's that "BC"? I never even knew what that meant until maybe a year or two ago. So maybe that's what happened. Somebody "BC'd" me." Ex. 11,109:10-18.

[11] Kerr's Amended Privilege log adds Kerr as a recipient of these emails without explaining the change. The lack of explanation makes it is impossible to determine if Kerr's original privilege log was in error or if counsel mechanically added Kerr as a recipient if she received the email, regardless of whether she was listed as one in the email.

8

> **Either a Sender Nor Recipient:** MCBR110-112, MCBR113-123, MCBR124-129, MCBR130-133. Ex. 2.

Kerr's amended privilege log also includes over two-pages of email attachments with no information about who created the document, for what purpose it was created, the email it was attached to, or who received it. This lack of detail makes it impossible to assess the claimed privilege, which Kerr bears the burden to establish. Kerr, therefore, fails to establish any privilege.

- **Kerr Documents that Include No Information About Who Created the Document or Was Involved in the Communications:** KERR84, KERR202, KERR204, KERR206, KERR208, KERR210, KERR212, KERR214, KERR216, KERR220, KERR687, KERR688, KERR689, KERR690, KERR1845, KERR4791, KERR4865, KERR4866, KERR4867, KERR4868, KERR4869, KERR5464, KERR7236. Ex. 7.

Defendants have shown that they were prone to blind copying parties in their communications and that their privilege logs cannot be trusted to offer full lists of parties to those communications. Because Defendants cannot say with any certainty who these communications have been shared with, they cannot establish that any potential privilege has not been waived. Defendants must be ordered to produce all documents responsive to Plaintiff's document requests.

### D. Defendants Production and Privilege Logs Reveal Their Co-Defendants Are Withholding Documents from Discovery

Defendants' production and privilege logs each contain multiple communications with each other. However, despite the fact that Katherine made very similar document requests to each Defendant, there is only little overlap in the production or privilege logs. Kerr produced a 38-page amended privilege log that consists almost entirely of emails that included Wrigley and Cohenson. Wrigley and Cohenson produced two and three page privilege logs that contain communications with Kerr that are absent from both Kerr's privilege log and production.[12]

**Cohenson's privilege log includes entries described:**
- "Accounting Filed by Bernard Black, as Executor of the Estate of Renata Black Surrogate's Court of the State of New York County of Westchester File No. 2012-1209" and "Draft with handwritten notes - Accounting Filed by Bernard Black, as Executor of

---

[12] The converse is also true, most of the communications that Kerr lists as privileged, which include Wrigley or Cohenson, are missing from their respective productions and privilege logs.

9

the Estate of Renata Black Surrogate's Court of the State of New York County of Westchester File No. 2012-1209" both *sent by Kerr*, but not included in Kerr's log or production. Ex. 2, MCRB113-123, MCRB124-129.

**Wrigley's privilege log includes communications with Kerr described:**

- "Re: Joanne Black - Great Decision.", "Re: J. Black", "Re: 2013 Trust & SNT Trust & Savings Bonds", "RE: Joanne Black", "RE: Bernard Black Information", "Re: Bernard Black", "Re: Fwd: Bernard Black", "Carl's Motion with comment re: 2013 Trust", "Olga Dal Loan", "Report to be filed with the New York Surrogates Court and Attacments", "One very simple question". Ex. 5, WRIGLEY2, WRIGLEY12, WRIGLEY13, WRIGLEY14, WRIGLEY16, WRIGLEY18, WRIGLEY19, WRIGLEY20, WRIGLEY21, WRIGLEY22, WRIGLEY23, WRIGLEY24, WRIGLEY25, **WRIGLEY26**, WRIGLEY27, WRIGLEY28, WRIGLEY29, **WRIGLEY35**, **WRIGLEY36**, **WRIGLEY37**, **WRIGLEY39**.[13]

This inconsistency is further evidence of Kerr's carelessness in document production. Kerr must be compelled to fully produce documents responsive to Plaintiff's document requests.

### E. Unproduced and Undisclosed Known Documents

Kerr failed to produce responsive documents that are known to exist. Kerr neither produced, nor disclosed in her privilege log, any communication in which she informed Cohenson of her letter to Northwestern, which was communicated in order for Cohenson to include it in a court filing. Kerr also failed to produce a communication in which she learned Dain was writing a letter to Northwestern, which Kerr mentioned in an email to Northwestern. Ex. 16.

Defendant Kerr also failed to produce any documents related to a complaint, by her and Wrigley, against Carl Glatstein, a former attorney of Katherine's husband, even though it is clear that numerous communications between Wrigley, Kerr, and likely others existed related to this. Kerr had one entry in her original privilege log, which might be related to that complaint, but there is not enough detail to discern that.[14] Kerr claimed that this communication with Wrigley is covered by attorney-client privilege, even though neither of them is an attorney. Kerr must produce these missing documents and conduct a more thorough search for responsive documents.

### F. Kerr's Common Interest Claims Require an *In Camera* Review Pursuant

---

[13] Bold indicates emails sent by Kerr, but not omitted from her privilege log and document production.

[14] This entry was removed from Kerr's amended privilege log, but without producing this document. Ex. 4, 7, KERR846.

10

**to the Crime-Fraud Exception to Privilege**

Kerr asserts that communications related to contacting Northwestern are subject to the common interest exception to waiver,[15] and asserts in her amended privilege log that they were related to "legal strategy." Descriptions of these communications include:

- **Re: Info for Letter to dean**, dated 1/8/16 – the day Kerr wrote a letter Northwestern Law School dean. Ex. 7, KERR6230.
    - Defendants Wrigley and Cohenson, and Anthony Dain were part of this email, and yet they neither produced this email nor included it in their privilege logs.

- **Re: Info for Letter to dean & investigational opening to ETHICS DEPT**, also dated 1/8/16. Ex. 7, KERR7432.
    - This email was sent by Defendant Wrigley, however Wrigley neither produced this email nor included it in her privilege log.

- **RE: WHO sent my letter to Northwestern**, dated 3/16/16 – with five recipients, indicating that Kerr had widely shared her letter, and did not know why submitted the letter to Northwestern. Ex. 7, KERR5138, KERR5203, KERR5324, KERR5400, KERR4825, KERR5052, KERR5065.

- **Draft letter** – undated email attachment, with no recipient or sender information. Ex. 7, KERR7236.

She maintained this assertion of privilege at deposition. For example:

[Q] How did you know Mr. Dain would be sending a copy of the letter and his communication to Northwestern?
MR. MANDELL: Don't disclose any conversations you had with Mr. Dain under common interest doctrine and work product.
Q (BY MR. SCHAALMAN) Did you speak to Mr. Dain about the fact that you had sent a letter to Northwestern?
MR. MANDELL: Objection, common interest doctrine and work product. I instruct you not to answer.

Ex. 10, 168:18-169:4.

Q (BY MR. SCHAALMAN) Did you ever tell Ms. Wrigley that you were concerned that she had sent your letter to Northwestern without your authorization?
MR. MANDELL: Objection. I instruct you not to answer. Common interest privilege and work product doctrine.

---

[15] Co-Defendants also claim privilege and common interest exception to waiver for communications related to contacting Northwestern, including a draft of a letter to Northwestern from Dain. Ex. 2, MCBR130-133; Ex. 11, 115:10-23.

Ex. 10, 174:7-13. An apparent statement by Kerr to Wrigley, regarding Wrigley submitting Kerr's letter to Northwestern does not have even an arguable basis for work-product. To satisfy a common interest exception to waiver, the communication must further a common legal interest in current or potential litigation. *See Dexia*, 231 F.R.D. at 273. However, Kerr's claim of "common interest" concerning her letters to Northwestern is an admission by Defendants that their contacts with Northwestern were for the purpose of affecting a legal proceeding -- the New York guardianship proceeding in which Katherine intended to testify, which Kerr and her co-Defendants, sought to stop through intimidation. This irrefutable admission of both the civil conspiracy at issue in this action and Defendants' attempts to intimidate Katherine not to testify[16] establishes the necessary "good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Radojcic*, 998 N.E.2d at 1223. Accordingly, Katherine requests an *in camera* review of these documents.

### III. DEFENDANTS REFUSAL TO TESTIFY AT DEPOSITIONS

#### A. Improper Invocations of Privilege During Kerr's Deposition

Kerr, at her deposition, invoked privilege and refused to answer questions under the guise of attorney-client privilege, for clearly unprotected communications. Neither Kerr nor Wrigley are attorneys. Ex. 10, 59:13-17. Kerr also testified that none of the people she exchanged documents with that were withheld due to privilege represented her in any legal capacity. *Id*. 60:4-23. Yet Mr. Mandell, repeatedly invoked privilege and instructed Kerr not to answer questions, or even potential questions, about her clearly unprotected communications with Wrigley. For example:

> Q    Let's talk about your conversation with Ms. Wrigley. What do you --
> MR. MANDELL: Let's not, because --
> Q    (BY MR. SCHAALMAN) What do you --

---

[16] A person is guilty of tampering with a witness when, knowing that a person is or is about to be called as a witness in an action or proceeding, (a) he wrongfully induces or attempts to induce such person to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at, such action or proceeding, or (b) he knowingly makes any false statement or practices any fraud or deceit with intent to affect the testimony of such person. N.Y. Penal Law § 215.10.

12

> MR. MANDELL: -- I'm going to instruct her not to answer.
> MR. SCHAALMAN: Well, I can ask the question. You can't –
> MR. MANDELL: Okay.
> MR. SCHAALMAN: -- instruct until you hear the question. Even you, Mr. Mandell, wouldn't know what the question is going to be, as smart as you are about these things.
> MR. MANDELL: Well, actually, you started by saying, Let's talk about your conversation with Ms. Wrigley.
> MR. SCHAALMAN: So it's your position that no conversation about this letter could -- would this witness be able to testify to with Ms. Wrigley?
> MR. MANDELL: Correct, without violating the attorney/client privilege, work product doctrine and common interest doctrine.

*Id*. 132:18-133:14. Even Mr. Mandell seemed to recognize the impropriety of this instruction.

> MR. SCHAALMAN: So let's -- maybe we can shorten this up a little bit, Mr. Mandell. So Number 1, it's your contention that Ms. Kerr does not have to disclose any communications she had with Ms. Wrigley while Ms. Kerr was performing her investigations as a forensic accountant in the matter of Joanne Black?
> MR. MANDELL: I don't know that that's my position, but that's my objection.

*Id*. 90:9-17; *see also* 145:25-146:8, 172:13-18, 174:7-19, 187:19-188:5, 195:6-18.

Mr. Mandell also repeatedly instructed Kerr not to answer questions about communications with others with whom she had no privileged relationship. For example:

> [Q]   Do you recall on or about May 7, 2015, learning from anyone that Ms. Wrigley had filed complaint at Northwestern University about Bernard Black?
> MR. MANDELL: Exclude from your answer any communications with Ms. Wrigley, Mr. Dain, Ms. Young, Ms. DiPonio.

*Id*. 90:2-8; 66:20-67:6, 84:14-85:3, 148:9-14, 168:14-169:4, 170:17-23, 172:23-173:1, 183:17-22.

Mr. Mandell repeatedly invoked privilege, but did not permit Kerr to answer questions to clarify the legitimacy of the claims.[17] Mr. Mandell even asserted privilege as to whether Kerr had read her own 2006 letter to Northwestern, saying that was *his* work-product. *Id*. 144:10-145:10.

---

[17] For example:

> Q   (BY MR. SCHAALMAN) Based on the description on the privilege log, were there any attorneys sending Document 5416 to you?
> MR. MANDELL: Objection, no foundation, calls for speculation. She testified she didn't put this together. She didn't -- she doesn't remember the documents. You're asking her to speculate.
> A   I'd have to speculate.

Ex. 10, 59:5-12.

13

### B. Kerr Must Be Ordered to Answer Questions That Were Obstructed by Improper Coaching

During her deposition, Kerr was asked about alleged privileged communications and testified that she had independent knowledge, apart from what she learned from counsel, about why a document was privileged. Mr. Mandell objected that her knowledge was learned from her lawyer, Kerr then changed her answer to match Mr. Mandell's objection, stating that she had no knowledge other than what her lawyers told her. Ex. 10, 52:23-54:18. This behavior was repeated throughout Kerr's deposition.[18] At another point, when Mr. Mandell didn't like Kerr's answer, he corrected her, stating that she was "confused." *Id*. 73:14-74:4. Mr. Mandell also answered questions before Kerr could answer them herself. *Id*. 169:5-8; 179:16-21.

Speaking objections, which Kerr then repeated as her answer, were a common theme in Kerr's deposition. For a question about a post Kerr made on a public listserv:

> Q     When you wrote this email to a public ListServ, you didn't think the fact that you were involved in a particular investigation which had to do with a brother attorney who stole one and a half million dollars from his mentally ill sister was a confidential matter, right?
> MR. MANDELL: Well -- I object, because there's no identifying information in here.
> MR. SCHAALMAN: I didn't say there was, Mr. Mandell. I asked --
> MR. MANDELL: Well, you're --
> MR. SCHAALMAN: -- a very simple question using the very language of her email.
> MR. MANDELL: I know, but --
> Q     (BY MR. SCHAALMAN) Can you answer the question?
> MR. MANDELL: Well, I object to the form of the question.

*Id*. 32:22-33:14. When Kerr finally answered the question, she parroted the answer Mr. Mandell had provided at the start of his objections.

> Q     And you didn't believe that fact, that you made this description, was a confidential matter?
> A     There is no name disclosed.

---

  Speculative uncertainty about whether a communication was to obtain legal advice does not meet the burden of establishing privilege. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 219 (N.D. Ill. 2013).

[18] In fact, early in the day, when Kerr needed a question read back to her after Mr. Mandell's long interruption, Mr. Mandell insisted his objection also be read back, so Kerr could parrot his objection as her answer, which she did. Ex. 10, 31:24-32:16.

14

*Id*. 10, 34:2-4.

> When questioned about an entry in her privilege log.
>
> Q    (BY MR. SCHAALMAN) Based on the description on the privilege log, were there any attorneys sending Document 5416 to you?
> MR. MANDELL: Objection, no foundation, calls for speculation. She testified she didn't put this together. She didn't -- she doesn't remember the documents. You're asking her to speculate.
> A    I'd have to speculate.

*Id*. 59:5-12.

> Q    (BY MR. SCHAALMAN) And you understood it was part of your duties as ordered by the court to provide information, as you did in Exhibit 9, to the people you sent it to?
> MR. MANDELL: Again, now we're on the sixth the time asking the same question. Asked and answered.
> A    Asked and answered.

*Id*. 114:1-8; *see also* 46:2-6, 62:16-18, 67:15-17, 68:5-7, 70:10-12, 70:16-18, 80:17-19, 88:17-20, 109:10-12, 112:20-24, 116:12-14, 127:25-128:3, 153:10-13, 167:22-25. At one point, when Kerr was challenged after repeating Mr. Mandell's objection that she'd have to speculate, she admitted that she did not, in fact, have to speculate. Ex. 10, 67:8-68:14.

Mr. Mandell planned to disrupt Plaintiff's deposition of Defendant Kerr, he started early, objecting to the basic and general instructions to the witness, and continued to execute his plan, with frequent speaking objections and instructions to Kerr not to answer questions that have no recognized privilege. Katherine must be permitted to continue Kerr's deposition, without Mr. Mandell's speaking objections and improper assertions of privilege.

## **CONCLUSION**

Defendant Kerr has failed to establish any elements to her assertions of privilege or of the common interest exception to waiver. Kerr has even failed to state sufficient grounds to identify the documents as privileged. Nor has Kerr fully testified to matters that were neither privileged nor properly withheld by an appropriate objection.

Dated: Milwaukee, WI

15

October 1, 2018

                Respectfully submitted,

                HALLING & CAYO, S.C.

                By: s/Michael H. Schaalman
                Attorney for Plaintiff Katherine Black

Michael H. Schaalman (01045424)
HALLING & CAYO, S.C.
320 E. Buffalo Street, Suite 700
Milwaukee, WI 53202
T: 414-271-3400

Sharan R. Abraham
Sharan R. Abraham, Esq., PLLC
37 South Street
Roslyn Heights, NY 11577
T: 516-672-1039

16

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on October 1, 2018 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

                                              By: s/Michael H. Schaalman
                                              Attorney for Plaintiff Katherine Black

Michael H. Schaalman (01015424)
HALLING & CAYO, S.C.
320 E. Buffalo Street, Suite 700
Milwaukee, WI 53202
T: 414-271-3400