IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE BLACK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00101 |
| | ) | Judge Matthew F. Kennelly |
| CHERIE WRIGLEY, MELISSA | ) | |
| COHENSON, BRAIN A. RAPHAN, P.C. | ) | |
| and PAMELA KERR, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHERIE WRIGLEY'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DOCUMENT PRODUCTION AND TESTIMONY**

**Mancilla & Fantone, LLP
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225 – 6686
F (646) 655 – 0269
October 23, 2018**

**PRELIMINARY STATEMENT**

Plaintiff never attempted to meet and confer with respect to most of the issues in the motion to compel. With respect to document production, Plaintiff's blatant violation of Local Rule 37.2 and Your Honor's individual rules warrants denial of Plaintiff's requests for relief.

The parties were able to resolve several of the issues during the pendency of briefing the instant submission; however, a few issues still remain. Plaintiff moves to compel documents protected under the work product and attorney client privileges. Pursuant to a stipulation reached between the parties, Ms. Wrigley agreed to produce 37 of the 47 pages listed on her privilege log, without redactions.

Ms. Wrigley redacted portions of the remaining ten (10) documents. While the redacted portions are entirely irrelevant to the instant cause of action, they constitute work product and relate to other actions and collection efforts that are currently ongoing. The information in the documents consists of legal research, analysis, and strategy, as well as attorney and consultant mental impressions. Moreover at not time was the privilege waived. Disclosure of such materials would be highly prejudicial to the individuals that are currently attempting to enforce the multi-million dollar judgment entered against Plaintiff's husband, Bernard Black, which stemmed from probate proceedings in Colorado. Therefore, Plaintiff's requests for disclosure of such documents must be denied.

Plaintiff also moves to compel testimony; however it does not indicate which Rule Plaintiff is moving pursuant to. Rule 37 permits a party to move to compel a response to a question that a witness failed to answer during a deposition. Here, the record reflects that counsel for the parties disagreed about the privileged nature of information Plaintiff's counsel

*intended* on inquiring into, however, Plaintiff does not identify any questions that the witness failed to answer. Thus the Plaintiff's motion is baseless. In any case, the information Plaintiff's counsel wanted to inquire into is protected by the attorney-client and/or work product privileges. For these reasons, the Court should deny the Plaintiff's motion.

Ms. Wrigley also joins in the arguments contained in the submissions of Defendant Pamela Kerr and Defendants Melissa Cohenson and Brian A. Raphan, P.C. to the extent applicable to Ms. Wrigley.

## **ARGUMENT**

**I. PLAINTIFF MADE NO EFFORT TO MEET AND CONFER IN VIOLATION OF LOCAL RULE 37.2**

Plaintiff's counsel made no effort to meet and confer on any of the issues related to document production raised in the motion to compel. On June 19, 2018 counsel for Ms. Wrigley emailed counsel for Plaintiff Ms. Wrigley's privilege log. Ex. A. The first time Plaintiff raised any issue with Ms. Wrigley's privilege log was nearly three (3) months later on September 11, 2018 after Ms. Wrigley was deposed. Ex. B. In response to Plaintiff's letter raising the issue (Doc. 199-13), on September 11, 2018 counsel for Ms. Wrigley wrote:

> Mr. Schaalman,
>
> We have reviewed your letter dated today, September 11, 2018. Can you please identify by control number which documents from Ms. Wrigley's privilege log you are asserting are not privileged, and we will be happy to review the documents and produce them if it is appropriate. In the same fashion, can you please identify which entries in Wrigley's privilege log do not comply with Federal Rule of Civil Procedure 26(b)(5).

Ex. B.

Counsel for Plaintiff never responded. Instead, Plaintiff filed the instant motion to compel on October 1, 2018. Local Rule 37.2 states that the Court shall refuse to hear any and all

motions for discovery and production of documents under Rules 26 through 37 if the movant does not certify that it attempted to meet and confer in good faith (as described in the rule). Here, Plaintiff did not include such certification because counsel for Plaintiff never made a good faith attempt to resolve the issue. Accordingly, Plaintiff's motion must be denied and Plaintiff's should be ordered to pay Ms. Wrigley's costs in responding pursuant to Rule 37.

II. **PLAINTIFF SEEKS TO COMPEL DOCUMENTS THAT ARE PRIVILEGED, IRRELEVANT, AND DO NOT EXIST.**

  A. **Documents Wrigley0026 – Wrigley0036 Are Irrelevant and Privileged Under The Work Product Doctrine**

The ten (10) redacted documents contain information related to enforcing the multi-million dollar judgment against Plaintiff's husband, Bernard Black, stemming from probate proceedings in Colorado. The information is entirely irrelevant to the instant proceeding. Further, Mr. Black has not paid any of the stolen monies back, and thus efforts to enforce the judgment against him are ongoing. Disclosure of the attorneys' ideas and strategies related to enforcing the judgment will prejudice and frustrate their efforts to recover the stolen funds.

The work product doctrine "is distinct from and broader than the attorney-client privilege." *Appleton Papers, Inc. v. EPA*, 702 F3d 1018, 1024-1025 (7th Cir 2012).[1] Attorney work product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(A)(ii). The doctrine's underlying rationale is to prevent the opposing party from obtaining the other party's "research, or get the inside dope on that party's strategy..." *Menasha Corp. v. United States DOJ*, 707 F3d 846, 847 (7th Cir 2013) (*citing Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006)).

---

[1] "Unlike the attorney-client privilege, the work product doctrine is governed by a uniform federal standard even in diversity cases." *Trustmark Ins. Co. v Gen. & Cologne Life*, 2000 US Dist LEXIS 18917, at *6, n 7 (ND Ill Dec. 19,

Unlike the attorney-client privilege, "[d]isclosure of materials protected by the work product doctrine to a third party does not automatically waive the protection." *WSOL v Fiduciary Mgt. Assoc.*, 1999 US Dist LEXIS 19002, at *16-17 (ND Ill Dec. 6, 1999, No. 99 C 1719). The work product privilege is only waived if disclosure to a third party is "inconsistent with the maintenance of secrecy for the disclosing party's adversary." *Trustmark Ins. Co.*, 2000 US Dist LEXIS at *12-16 (*citing Minnesota Sch. Bds. Assn. Ins. Trust v. Empls. Ins. Co.*, 183 FRD 627, 631 (ND Ill 1999); *see also Bramlette v. Hyundai Motor Co.*, 1993 U.S. Dist. LEXIS 12112, at *10, No. 91 C 3635, 1993 WL 338980, at *3 (N.D. Ill. Sept. 1, 1993) ("While any voluntary disclosure by the holder of the attorney client privilege is inconsistent with the confidential relationship and thus waives the privilege, it is not inconsistent with work product protection to disclose information in the pursuit of trial preparation, so long as the information is maintained in secrecy against the opponent."). Thus, only disclosure of the work product to the adversary constitutes a waiver of the privilege. *WSOL*, 1999 US Dist LEXIS at *16-17 (*citing In re Steinhardt Partners*, 9 F.3d 230, 235 (2nd Cir. 1993) ("once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.")

Pursuant to a stipulation signed by all parties, Ms. Wrigley will produce 47 pages of documents, 10 of which contain redactions based on the work product privilege. The redactions protect work product because the underlying materials contain the results of research directed by an attorney as well as mental impressions and legal analysis and strategy of those attorneys or other representatives concerning litigations. Fed. R. Civ. P. 26(b)(3)(A)(ii). These documents contain strategy related to the enforcement of a multimillion-dollar judgment against Plaintiff's husband, Bernard Black. The parties to these emails are all attorneys that participated in the

Colorado proceeding that resulted in the judgment against Mr. Black, with the exception of Defendant Pamela Kerr, who participated as a retained expert, and Ms. Wrigley, who participated as a witness and official "interested party" in the Colorado proceedings.

The work product privilege was never waived because it was never shared with an adversary and was only shared with parties that intended to maintain the work product in secrecy. *WSOL*, 1999 US Dist LEXIS at *16-17. Accordingly, Plaintiff is not entitled to the redacted material.

### B. Wrigley Does Not Have Additional Documents Responsive to Plaintiff's Request

Plaintiff boldly claims that Ms. Wrigley is in possession of discoverable material, but is refusing to produce such materials. This conclusion is based upon the fact that Defendant Pamela Kerr's privilege log contains communications with Ms. Wrigley that were not produced nor identified in Ms. Wrigley's privilege log. (Doc. 195 at 14) However, this is consistent with Ms. Wrigley's deposition testimony, which noted that when emails had large threads and many participants, she would get "overwhelmed" and never "tended to save all of those, because I assume everybody else has them." Ex. C at 80. Ms. Wrigley also explained that most of her files were lost after she produced them to counsel for Bernard Black during discovery in collateral proceedings. Ex. C at 80-81.

### C. Plaintiff Requests A Document That Is Not Responsive to Any of Plaintiff's Requests for Production

Plaintiff claims Ms. Wrigley is withholding certain drafts of what she described as "paragraphs, summaries – related to Northwestern – or related to me," which Ms. Wrigley personally drafted, but did not send to anyone. As Ms. Wrigley explained at her deposition, she discussed the issues related to Plaintiff and her husband Bernard Black's with some friends and

family, but never shared what she subsequently drafted to anyone or had anyone edit the text. Ex. C at 235-236. Thus, the document is not responsive to any of Plaintiff's requests for production, which requested solely: "5. All documents that any Defendant shared with a third-party concerning Plaintiff […]"

Plaintiff argues that, in response to her interrogatories, Ms. Wrigley failed to identify the individuals "she discussed contacting Katherine's employer with." (Doc. 195 at 15) However, Ms. Wrigley specifically included in her Rule 26(a)(1) disclosures the identity of all the individuals Plaintiff complains of, noting that these individuals had "[k]nowledge of the veracity of Ms. Wrigley's allegedly defamatory statements." Unfortunately, because Plaintiff made no attempt to discuss these issues with counsel for Ms. Wrigley prior to filing the motion to compel, these issues are now being litigated before the Court.

## II. PLAINTIFF IS NOT ENTITLED TO DEPOSE MS. WRIGLEY A SECOND TIME

### A. Ms. Wrigley Provided Answers to the Inquiries Plaintiff Identified in her Motion to Compel

Plaintiff appears to move pursuant to Rule 37(a)(3)(B)(i) to compel Ms. Wrigley to answer questions that Ms. Wrigley's attorney instructed her not to answer based upon attorney-client privilege (Doc. 195 at 16). However, upon review of the transcript, Ms. Wrigley provided answers to the inquiries Plaintiff has identified, despite her counsel's caution not to reveal privileged information.

For example, on page 13 of her motion to compel Plaintiff asserts that Ms. Wrigley did not answer an inquiry related to communications with Esaun Pinto, Ms. Wrigley's co-Defendant in a collateral action pending in the Eastern District of New York (Doc. 195 at 16). However, the transcript indicates Ms. Wrigley did answer such inquiry:

> Q              Okay. And did any of those communications that you had with Mr. Pinto relate to Katherine Black?
>
> Mr. Fantone:   I'm just going to object and just caution the witness not to answer – not to describe the details of any conversations with Mr. Pinto.
>
> The Witness:  Yeah. I – to the best of my knowledge, no. We've never talked about Katherine Black.

Ex. C at 88-89.

Ms. Wrigley answered the question without divulging privileged information, rendering Plaintiff's motion to compel meritless. *See e.g. Anderson v. Shelter Mut. Ins. Co*, 13-cv-00087, 2015 U.S. Dist. LEXIS 179220 *2 (E.D. Ark Feb. 3, 2015)(Holmes, DJ) ("[Counsel] instructed the witness to answer the question as to what subjects were discussed but not to explain what was said regarding those subjects, and the witness complied with that instruction. There was no question asked that the witness failed to answer. Therefore, the motion is denied.")

This is also true of Plaintiff's inquiries related to privileged conversations Ms. Wrigley had with Anthony Dain. Ms. Wrigley never refused to answer any question that counsel for Plaintiff actually put on the record. As evident from the transcript, counsel for Ms. Wrigley objected after the question was answered, only to the extent the question called for privileged information. Despite counsel's instruction, Ms. Wrigley answered the question anyway:

> Q              Now, when you – when you learned from your brother that, in fact, the Kerr letter – the letter Ms. Kerr signed to Dean Rodriguez had been sent to Northwestern by you; correct? That's what he told you – Mr. Dain – when you spoke to him later.
>
> A              He didn't tell me that.

8 of 14

>  Mr. Fantone: I'm going to object to any […] privileged conversations coming into evidence. You don't have to answer to -- [2]

Ex. C at 172; 14.

While there was subsequent conversation on the record concerning the privileged nature of the information Plaintiff's counsel was seeking, Plaintiff's counsel never actually asked any additional questions related to Ms. Wrigley's conversation with Mr. Dain. Despite the counsels' clear disagreement regarding the privileged nature of the information, it is impossible to know precisely which questions Ms. Wrigley's counsel would have instructed her not to answer.

Counsel for Plaintiff's failure to actually put questions to the witness due to his mere expectation that Ms. Wrigley would not answer them renders Plaintiff's motion to compel baseless. To put it another way, Plaintiff's motion to compel is improperly requesting responses to questions that were never asked. *See cf. Ravenwood-Alexander v. Beahm,* 17-cv-7, 2017 U.S. Dist. LEXIS 98789 *4 (E.D. Wis. June 27, 2017)(Pepper, DJ) ("Rule 37 assumes that the party seeking the motion to compel has asked the other side to disclose or produce certain documents, and that the other side has not complied with that request."); *see also cf. Florer v. Cheryl Johnson-Bales*, C06-5561, 2010 U.S. Dist LEXIS 20939 *7 (W.D. Wash February 16, 2010)(Strombom, MJ) ("Defendants answered the interrogatory as written and cannot be compelled to answer a question that was never asked.")

---

[2] Because counsel for Plaintiff interrupted counsel for Ms. Wrigley's objection, the full instruction to the witness is not contained in the transcript. However, it was merely an instruction not to answer to the extent the answer contained privileged information. This was consistent with several other instances during the deposition where Ms. Wrigley responded to inquiries with non-privileged information after her counsel instructed her not to divulge any privileged information. *See e.g.* Ex. C at 80-81, 115-116, 184, 186.

### B. Ms. Wrigley's Communications With Mr. Dain Are Protected By The Attorney-Client and Work Product Privileges

Plaintiff fails to recognize the privileged nature of the information that was discussed on the record with counsel for Ms. Wrigley — i.e. communications between Ms. Wrigley and Mr. Dain containing legal advice related to the uploading of Defendant Pamela Kerr's January 7, 2016 letter to Dean Daniel Rodriguez. Such communications are privileged.

"Where legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer." *Ctr. Partners, Ltd., v. Growth Head GP, LLC*, 2012 IL 113107 ¶ 30; *see also* Restatement (3d) of the Law Governing Lawyers, §68. "Although this statement regarding the privilege suggests that only communications by the client are protected from disclosure, the modern view is that the privilege is a two-way street, protecting both the client's communications to the attorney and the attorney's advice to the client." *Daily v. Greensfelder, Kemker & Gale, PC*, 2018 IL App (5th) 150384 ¶ 22 (*quoting People v. Radoicic*, 2013 IL 114197 ¶ 40) (internal quotations omitted).

"The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Waste Management*, 144 Ill. 2d 178, 190 *(quoting Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18 (1982)). "Moreover, the attorney-client privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Fischel & Kahn*, 189 Ill. 2d at 585 (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Anthon Dain is an attorney and the brother of Ms. Wrigley. Dain Dec. at ¶¶ 3-4. Plaintiff argues that Mr. Dain never gave legal advice to Ms. Wrigley related to the March 16, 2016 email string (Doc. 195 at 17). However, Mr. Dain submitted a declaration in support of the instant response that squarely contradicts Plaintiff's argument. As noted in Mr. Dain's declaration, he communicated with Ms. Wrigley about Defendant Pamela Kerr's letter being uploaded to Northwestern University in March of 2016. *Id* at ¶6. Mr. Dain explains that such communications were made for the purpose of soliciting and conveying legal advice related to the circumstances of Pamela Kerr's letter being uploaded. *Id*. Mr. Dain's declaration also states that Mr. Dain and Ms. Wrigley were the only participants to the call, thus preserving the confidentiality of the communications.

Deposition testimony also contradicts Plaintiff's assertion that "Dain testified that he did not give Wrigley legal advice about filing her complaints with Northwestern" (Doc. 195 at 17). During Mr. Dain's deposition he answered questions related to an email from Defendant Pamela Kerr dated March 16, 2016 containing the subject line: "Who sent my letter to Northwestern." When counsel for Plaintiff asked Mr. Dain if he was "representing any parties to this matter when this e-mail string was sent " Mr. Dain responded affirmatively and identified Ms. Wrigley as the party he was representing at that time. Ex. D at 17-18. Other relevant exchanges occurred throughout the questioning:

> Q At the time you were representing your sister in 2016, was she represented by any other attorneys?
>
> A She may have been. I don't know. I don't – I don't recall exactly when she would have hired the first attorney that represented her. But even today I still consider that I'm her attorney for the purposes of advice, even if she has other counsel.
>
> […]

11 of 14

> Q   Are you representing a party in this case? And by "this case," I'm talking about Black versus Wrigley, Case Number 17-CV-101?
>
> A   No, I'm not representing a party in a formal appearance before the court, but I still advise Ms. Wrigley.
>
> Q   And when you say "advise," you give her legal advice with regard to the matters involved in the case I just mentioned?
>
> A   I do.

*Id*. at 19-20, 25.

During Ms. Wrigley's deposition, counsel for the parties discussed (on the record) the privileged nature of the conversation between Mr. Dain and Ms. Wrigley, which occurred at roughly the same time as the March 16, 2016 email chain discussed during Mr. Dain's deposition. With respect to the issue of attorney-client and work product privileges, counsel for Ms. Wrigley agreed to consult briefly with Mr. Dain, who was present at the deposition, to learn of exactly what he discussed with Ms. Wrigley during the conversation at issue. After doing so, counsel for Ms. Wrigley concluded that Ms. Wrigley and Mr. Dain exchanged privileged communications during the conversation and advised Plaintiff's counsel accordingly.

The only other question Plaintiff's counsel asked related to the conversation was:

> Q   Ms. Wrigley, when you spoke to your brother and the subject matter of: How did the Kerr letter get to Northwestern came up? – was anyone else on the phone besides you and Mr. Dain?
>
> A   No.

Ex. C at 173-74.

Ms. Wrigley testified consistently, stating: "My brother always acts as my legal counsel on many matters […] I would ask his opinion on everything. And that would be in a legal sense." Ex. C at 95. Ms. Wrigley also noted that on February 1, 2016 (around the time of the

conversation at issue) Mr. Dain was serving as her legal counsel in addition to her counsel of record, Melissa Cohenson. Ex. C at 97-98.

C. **Counsel's Cautionary Statements to Wrigley Regarding Speculation Do Not Warrant a Second Deposition**

Ms. Wrigley's deposition last over five (5) hours. Plaintiff argues that Ms. Wrigley must be deposed again because counsel for Ms. Wrigley allegedly obstructed a mere four (4) responses during her deposition. First, Plaintiff fails to explain how Ms. Wrigley's testimony reflects that she would be capable of answering the first three (3) questions in light of her testimony stating she did not know the answer. Ex. C at 104; 8-18 (A: Okay. I have no idea what the e-mail is. So the fact that most of these people on here are attorneys, that's all I can speculate.); *id*. at 128; 5-12 (A: Yeah. I have no clue. That's pretty recently. I have no idea.); *id*. at 228; 7-12 (A: Yeah. I have no idea.);

Second, Plaintiff's fourth question appears to request Ms. Wrigley's knowledge as to when she learned that her brother, Anthony Dain, had drafted a letter to Northwestern.[3] The answer to this question is completely irrelevant to Plaintiff's instant action because Ms. Wrigley's knowledge of when her brother drafted a letter is not probative of whether Ms. Wrigley purportedly defamed Plaintiff or intentionally inflicted Plaintiff with emotional distress.

Moreover, contrary to Plaintiff's claim of coaching, it was only after Ms. Wrigley asked counsel whether she could "speculate" in answering a question that counsel advised against it. Unlike the case cited by Plaintiff, the concept of speculation was only brought up because Ms. Wrigley asked whether she could speculate.

---

[3] Ex. C at 255; 13-22 ("Q: Does that refresh your recollection of when you may have learned your brother was drafting a letter on or about January 13, 2016, since Ms. Kerr has identified that to Rita Winters?)

13 of 14

| | |
|---|---|
| Q | The e-mail we're talking about as Wrigley 9, was this e-mail sent -- as far as you know – for the purpose of either giving or receiving legal advice? |
| A | Can I speculate? |
| MR. MANCILLA | No. |
| MR. FANTONE | Please don't. |
| A | Okay. I have no idea what the e-mail is. So the fact that most of these people on here are attorneys, that's all I can speculate. |

Ex. C at 104; 8-18.

Finally, Ms. Wrigley's attorneys cautioned her only three additional times to avoid speculation. Ms. Wrigley's attorneys did not instruct her not to answer a question. Thus, Plaintiff's motion should be denied.

## CONCLUSION

To the extent Ms. Wrigley has not already produced the requested materials, Ms. Wrigley respectfully requests that the Court deny Plaintiff's motion to compel, and award Ms. Wrigley costs pursuant to Rule 37.

Dated: New York, New York
October 23, 2018

Respectfully submitted,

**Mancilla & Fantone, LLP**

By: /s/ Robert M. Fantone
Admitted *Pro Hac Vice*
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225 – 6686
F (646) 655 – 0269
Robert@law-mf.com
*Attorneys for Defendant Cherie Wrigley*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on October 23, 2018 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

    /s/ Robert M. Fantone