# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHERINE BLACK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 17-cv-00101 |
| CHERIE WRIGLEY, ) | |
| MELISSA COHENSON, ) | Honorable Matthew F. Kennelly |
| BRIAN A. RAPHAN, P.C., and ) | |
| PAMELA KERR, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT KERR'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION AND TESTIMONY

Plaintiff Katherine Black ("Plaintiff") moves to compel defendant forensic accountant Pamela Kerr ("Kerr") to produce nearly all documents identified on her Amended Privilege Log and sit for a second deposition. Her motion is procedurally and substantively flawed. As to procedure, Plaintiff filed her motion without meeting and conferring on the issues in violation of Local Rule 37.2. She knew that Kerr had withheld documents based on privilege as early as February 2018. She received Kerr's privilege log two days before Kerr's deposition in August 2018. Yet her counsel made no effort to consult with Kerr's counsel to understand or resolve issues of privilege ahead of the deposition. Instead, Plaintiff forged ahead with Kerr's deposition, and her counsel questioned the witness extensively about the log in an attempt to manufacture bases for a motion to compel. Over a month after the deposition, again without conferring with Kerr's counsel, Plaintiff filed her motion to compel.

On the merits, Plaintiff claims that because Kerr was not a party to various litigations, the common interest/joint defense doctrine does not apply to communications (i.e. emails) in which she was included. This argument is fundamentally flawed because Kerr was involved in the privileged communications as a consulting expert, respondent to a temporary restraining order and a party to one of the cases in New York. The common interest doctrine protects communications – like the ones identified on Kerr's privilege log – to allow multiple parties and their counsel, agents and representatives to freely discuss legal matters in which they have a common goal. Kerr properly withheld and logged privileged communications to protect the legal advice and work product of attorneys in cases where she consulted as an expert with parties whose interests are adverse to Plaintiff and/or Plaintiff's immediate family.

Defendants have been conferring with Plaintiff to reach an agreement that would allow for production of documents confidentially and without waiver of any privilege. Kerr intends to

1

produce approximately two thirds of the documents previously logged and serve a Second Amended Log identifying the remaining emails and document (or parts thereof) Kerr continues to withhold based on privilege. The remaining issues before this Court on Plaintiff's motion to compel should narrow considerably.

## RELEVANT BACKGROUND INFORMATION

Plaintiff's argument that the privileges have been waived rests primarily on Plaintiff's misstatement that Kerr was only a witness. (Plaintiff's Memorandum of Law in Support of Motion to Compel Document Production and Testimony of Defendant Pamela Kerr ("Memo"), Dkt. No. 192, at 1.) To understand why these emails are covered by the attorney-client and/or work product privileges and not waived by including Kerr as a recipient it is necessary to review the relationship among the individuals identified on the emails.

This acrimonious family dispute arises from events after the death of Renata Black, who was the mother of Bernard Black (Plaintiff's husband) and Joanne Black. After Renata died, Bernard Black learned that his mother had left almost her entire estate to his sister, Joanne Black. Bernard Black filed a Conservatorship Proceeding in the Denver Probate Court (hereinafter "DPC") seeking to be the Conservator over Joanne's estate (including the assets Renata left to Joanne). Ultimately, the DPC found Bernard Black guilty of civil theft for invading the assets of his sister Joanne's estate. Bernard, his wife (the Plaintiff here) and children began filing lawsuits across the country including state and federal actions in Illinois, guardianship proceeding in New York, probate proceeding in New York and two federal litigations in New York. These litigations involved family members, Anthony Dain and Cherie Wrigley, who aligned against Bernard Black and Plaintiff in attempting to assist Joanne (the Protected Person) and her lawyers. These individuals include:

- **Anthony Dain**: Mr. Dain is a California practicing attorney and is Bernard and Joanne Black's first cousin. Mr. Dain appeared as counsel in the DPC and conducted examinations in the evidentiary hearing where the Court found by clear and convincing evidence that Bernard Black committed civil theft. Mr. Dain also provided legal advice to his sister, Cherie Wrigley in various matters.

- **Cherie Wrigley**: Cherie Wrigley is Anthony Dain's sister and also first cousins with Bernard and Joanne Black. Ms. Wrigley opposed Bernard Black's appointment as Conservator in the DPC proceeding, cross moved to become Joanne's guardian in New York and is a defendant in pending litigation in New York against Bernard Black and his children.

- **Gayle Young**: was appointed as Joanne Black's Guardian *Ad Litem* in the DPC. Ms. Young retained Kerr for her forensic accounting services in the DPC.

- **Lisa Diponio**: Ms. Diponio was Joanne Black's Court Appointed Counsel in the DPC.

- **Pamela Kerr**: Ms. Kerr is a CPA, CFE and FCPA licensed in Colorado and was retained by Ms. Young to conduct a forensic review of Joanne Black's Conservatorship estate. The DPC relied in part on Ms. Kerr's report in finding that Bernard Black committed civil theft.[1] After the DPC proceeding, Ms. Kerr was retained as a consulting expert assisting Joanne Black's team in the New York Guardianship Proceeding and in the Surrogate Court action in Westchester County, New York.

- **Ira Salzman**: Mr. Salzman was Joanne Black's Court Appointed Counsel in the New York Guardianship Proceeding.

- **Melissa Cohenson**: Ms. Cohenson is an attorney in New York and she represented Ms. Wrigley in the New York Guardianship Proceeding. At the time of the various litigations, Ms. Cohenson worked at Brian Raphan, P.C.

As Anthony Dain testified at his deposition on September 6, 2018 (before Plaintiff filed her motions to compel in this lawsuit), these individuals entered into an oral joint defense agreement long before Plaintiff filed this lawsuit. The joint defense agreement was later reduced to writing. The individuals then communicated frequently regarding legal strategy about the cases and with the common interest in protecting Joanne and her assets. The communications among the Defendants (in addition to Anthony Dain, Ira Salzman, Gayle Young and Lisa

---

[1] None of the documents Kerr withheld as privileged in this case have anything to do with the report she filed as a retained expert in the DPC proceeding 2015.

Diponio) generally do not relate to any claims or defenses in this lawsuit. However, Plaintiff issued overly broad interrogatories and requests seeking essentially all communications among the Defendants related to Plaintiff. (Kerr's Responses to Interrogatories and Requests for Production are attached here as Exhibits A and B, respectively.) Although Kerr objected on the basis of relevancy and overbreadth, Kerr logged several hundred email communications among the Defendants – these are the emails at issue in this motion to compel.

## RELEVANT PROCEDURAL HISTORY

Defendants asserted the common interest/joint defense privilege in responding to written discovery over ten months ago, in February of 2018. At that time, Kerr stated she would not produce communications protected by the attorney-client privilege, work product doctrine and/or common interest/joint defense privilege. Although Plaintiff never asked for a privilege log, Kerr voluntarily provided a privilege log on August 29, 2018, two days before her deposition. Plaintiff's counsel made no attempt to discuss the log with Kerr's counsel. In fact, never once from the time Kerr raised the privileges in February 2018 to the time of Kerr's deposition on August 31, 2018 did Plaintiff's counsel challenge Kerr's assertion of privileges, seek to consult with Kerr's counsel to discuss the contours of the privileges or request that the deposition be postponed until the parties could address privilege issues. Instead, Plaintiff's counsel chose to question Kerr at her deposition about the basis of her assertion of privilege even though Kerr testified she had no role in asserting privileges or preparing the log.

Two weeks after Kerr's deposition, on September 11, 2018, Plaintiff's counsel sent a letter collectively to all Defendants asserting categorical objections to the assertion of privileges, and requesting that they produce the documents and sit for additional depositions. (Memo at 2 and Ex. 13.) On September 13, counsel for Kerr and counsel for Plaintiff spoke by telephone

4

and agreed that Kerr would produce an amended privilege log and Plaintiff would produce her first privilege log on September 18. Kerr complied. Plaintiff did not. Then, once again without first attempting to meet and confer or even discuss with counsel the basis of Kerr's privilege assertion, on October 1, 2018, Plaintiff filed motions to compel against the Defendants. Since receiving the motions to compel, the Defendants have been diligently working toward reaching a stipulation with Plaintiff to allow for production of many of the subject documents.[2]

## ARGUMENT

**I.      KERR PROPERLY WITHHELD PRIVILEGED DOCUMENTS**

The attorney-client privilege belongs to the client and therefore the client must consent to waiver. *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 35. Kerr, a consulting expert, has no control over the decision to maintain the privilege and therefore cannot waive any of the privileges. The clients – Ms. Black, Ms. Wrigley, and Mr. Dain – are the ones that may waive any privileges. Accordingly, as part of her obligations under the common interest agreement, Kerr has properly withheld the email communications and documents that are protected by the attorney-client privilege and/or work product doctrine. Plaintiff, however, claims that the parties' inclusion of Kerr on the email communications waived such privileges. Plaintiff's assumption of waiver is based on the false premise that Kerr was simply a "witness." (Memo at 1.) Contrary to Plaintiff's assertion, the common interest/joint defense doctrine defeats any argument of waiver.

    **A.      The Email Communications Are Covered by Attorney-Client and/or Work-Product Doctrine**

---

[2] While the parties have yet to execute the stipulation, it appears imminent. Kerr's agreement to produce certain documents under the stipulation is not meant to undermine her claim that such documents are subject to attorney-client, work product and/or common interest privileges.

The protections of the attorney-client privilege and work-product doctrine extend to third parties involved in litigations and such disclosure does not constitute waiver.[3] (*See Lawrence E. Jaffe Pension Plan v. Household Intern., Inc*., 244 F.R.D. 412, 420 (N.D. Ill. 2006) ("the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others, [and] the attorney-client privilege must include all persons who act as the attorney's agents." (citing *Cavallaro v. United States*, 284 F.3d 236 (1st Cir. 2002)); *see also* Fed. R. Civ. P. 26(b)(3) (the work product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, **consultant**, surety, indemnitor, insurer, or **agent**)" (emphasis added).)[4] And, a document can be created by a party or the party's agent and still be protected under the work-product doctrine. *See Trepanier v. Chamness*, Case No. 00 C 2393, 2005 U.S. Dist. LEXIS 23293, *22 (N.D. Ill. Oct. 12, 2005) ("under *Caremark* parties to an action . . . can author documents in anticipation of litigation and be covered by the work product doctrine.") Courts have specifically held that the protections of attorney-client privilege and work product doctrine extend to accountants working on behalf of a client or the client's attorney and their work product. (*Heriot v. Byrne*, 257 F.R.D. 645, 664 (N.D. Ill. 2009) ("Courts have found that accountants can qualify as 'agents' or 'representatives' under Rule 26(b) when they act as the agent of the party or the party's attorney.)

---

[3] Plaintiff argues that Illinois law applies to the attorney-client privilege and common interest doctrine. In conducting the choice-of-law analysis, New York law should apply because New York has the most substantial relationship to the parties and communications in this action. *See Equity Residential v. Kendall Risk Mgmt*., 245 F.R.D. 557, 564 (N.D. Ill. 2007) (applying Rest. (Second) Conflict of Laws § 139 (2)). However, because the result would be the same under Illinois and New York law, this is a non-issue.

[4] Without legal support, Plaintiff argues email communications involving Kerr and rest of Joanne's legal team concerning legal strategy are not protected by work-product/common interest doctrines. (Memo. at 6, Fn. 6.) Opinion work-product includes documents revealing mental impressions, conclusions, opinions, or legal theories, Fed. R. Civ. P. 26(b)(3), and naturally included within those categories is an attorney's legal strategy. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Here, Kerr is a consulting expert working with the lawyers and their clients to assist their efforts in the legal proceedings (mostly in New York). The majority of the privileged emails involved attorneys Dain, Cohenson and Salzman providing legal advice and/or sharing their work product regarding the litigations. The lawyers, clients and Kerr would exchange legal advice and work product concerning the legal issues at play around the country. Kerr – as a consulting expert – would provide input at the request of counsel. Undeniably, these emails are privileged.

### B. Including Kerr on the Privileged Communications Did Not Waive the Privilege

Despite Plaintiff's contention, disclosure of a party's or attorney's work product to a third party "does not automatically waive work-product protection." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 735-736 (N.D. Ill. 2014). Rather, a waiver occurs "when the protected communications are disclosed in a manner that 'substantially increase[s] the opportunity for potential adversaries to obtain the information.'" *Id.* Here, the parties took precautions in protecting the work product created by the parties and attorneys by keeping the information confidential (and out of the hands of Plaintiff and her husband) and by entering into a joint defense agreement.

Additionally, the common interest or joint defense doctrine protects against waiver in this case even with respect to the emails that Kerr was included as a recipient on the emails. Kerr was part of the legal strategy team working on behalf of Joanne Black and therefore shared a common interest with the team. The purpose of the common interest doctrine is to "'foster communication' between parties that share a common interest and to 'protect the confidentiality of communications . . . where a joint . . . effort or strategy has been decided upon or undertaken by the parties and their respective counsel.'" *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272

(N.D. Ill. 2004). "The determination of whether a privileged document falls within a common interest depends upon the reason for disclosure and not when the document was created." *Id.* "While often arising in the context of a joint defense, the common interest doctrine more generally applies to any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *Id.* (citing *Beneficial*, 205 F.R.D. at 216.) "In some cases, this common goal includes pursuit of litigation against a common adversary." *Id.*

Plaintiff misstates the law as to the limitations of the common interest exception with work-product. In *Beneficial*, the Court was reciting the rule that "the common interest rule covers communications **between non-lawyers of multiple parties with a common interest, but only if** (1) one party is seeking confidential information from the other on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work-product that is related to the litigation." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 220 (N.D. Ill. 2001). Plaintiff left out the "between non-lawyers" in her analysis. (Memo at 4.) This is important because a majority of the emails withheld on the work-product/common interest basis involved lawyers (Mr. Dain, Mr. Salzman and Ms. Cohenson). Generally, the emails between Kerr and Wrigley (not discussing work product or attorney-client communications) will be produced to Plaintiff.

Kerr is withholding the remaining emails involving work product. Kerr was a consulting expert in New York, a respondent to a motion for temporary restraining order sought by Plaintiff in New York and also a party, along with Anthony Dain, Cherie Wrigley, Ira Salzman, Lisa Diponio, Gayle Young, Melissa Cohenson, Brian A. Raphan, P.C., Esaun G. Pinto, and CPI Investigations, to litigation in the United States District Court for the Eastern District of New York (*Black et al v. Anthony Dain et al*, Case No. 16-cv-01238). As a consulting expert,

Joanne's team engaged Kerr to appear in an action pending in probate court in Richmond County, New York to testify if the Court had any questions concerning the accounting Kerr conducted in the DPC. Kerr also reviewed the Final Accounting filed by Bernard Black as Executor of the Estate of Renata Black in connection with a Westchester County Surrogate Court action. In fact, in the DPC, Judge Leith recognized the benefit of Kerr's continued involvement and ordered for Kerr's invoices to be paid related to her assistance in the New York actions. Throughout these proceedings, Kerr has assisted Joanne Black's team of family members and lawyers. These individuals all share a common interest in these proceedings – protecting Joanne, her rights and the assets she is entitled under the law while pursing litigation against Plaintiff and her husband Bernard. The law favors extending the privileged communications to third parties including accountants. (*See Jaffe Pension Plan*, 244 F.R.D. at 420; Rule 26(b)(3).) Because of Kerr's important role in these matters, it would be unjust to find waiver of privileges.

        **C.**       **This Court Does Not Need to Conduct *In Camera* Review**

Kerr is producing emails and documents to Plaintiff, approximately two-thirds of the emails and documents on her log. Included within this production are emails and documents related to communications among the Defendants regarding contacting Northwestern University. The only documents that remain on the log are both privileged and generally unrelated to the claims and defenses in this lawsuit. If Plaintiff continues to challenge Kerr's claim of privilege on the remaining emails and documents on Kerr's Second Amended Log, an *in camera* review is unnecessary.[5] The Court may discern from the entries on the Second Amended Log that the documents are either privileged and/or not relevant.

---

[5] Plaintiff has not (and cannot) meet her burden to show that the crime-fraud exception applies. "Disclosure of otherwise privileged attorney-client communications under the crime-fraud exception ***cannot based solely on a charge of illegality unsupported by any evidence***." *People v. Radojcic*, 2013 IL 114197, ¶ 44, 998 N.E.2d 1212, 1222-1223. (Emphasis added). Here, Plaintiff states that the torts were

For example, below are general categories and examples of emails and documents that Kerr continues to maintain are privileged:

- **Emails between Kerr and her New York attorneys**: e.g., KERR0000173, KERR0000174, KERR0000228, KERR0000686

- **Emails with joint defense team regarding Bernard Black's offer to globally settlement all matters pending**: e.g., KERR0004724, KERR0004768, KERR0004874, KERR0004974

- **Emails regarding Kerr's potential testimony in New York on behalf of Joanne Black**: e.g., KERR0004864, KERR0004968, KERR0005013,

- **Emails regarding litigation strategy in collecting judgments against Bernard Black**: e.g., KERR0004888, KERR0004975

Plaintiff requests the Joint Defense Agreement. Although Plaintiff is not entitled to the agreement, Plaintiff is permitted to discover information concerning the agreement including (1) whether the agreement is written or oral; (2) the date(s) the agreement was executed; (3) the individuals involved; and (4) generally the scope of the agreement. *Swanson v. Griebel*, Case No. 11 C 7768, 2012 U.S. Dist. LEXIS 50254, *3-4 (N.D. Ill. Apr. 10, 2012). Plaintiff, however, is already in possession of this information, which was obtained during Mr. Dain's deposition in this matter. (*See* A. Dain Dep. 20:9-25:1 (Sept. 6, 2018), attached here as Exhibit C)

## II. KERR PRODUCED OR LOGGED RELEVANT AND RESPONSIVE DOCUMENTS

In addition to the privilege issues, Plaintiff claims other deficiencies with Kerr's production and log. Several of these issues are now moot due to Kerr's voluntary production, including (1) sufficiency of the descriptions in Kerr's privilege log; (2) communications

---

committed in furtherance of preventing Plaintiff from testifying. There is no evidence Defendants committed any crimes and the communications were in furtherance of Defendants attempting to commit a crime.

10

involving non-lawyers; (3) the date of when the common interest began; and (4) documents with undisclosed or unknown recipients.

Based on Plaintiff's review of the other Defendants' privilege logs, she also claims – with no support – that Kerr is withholding documents. (Memo. at 9-10.) For example, Plaintiff argues that Kerr did not log or produce email communications with Anthony Dain and Melissa Cohenson that Plaintiff believes exist. Plaintiff overlooked these communications on Kerr's privilege log, for example: KERR0000219, KERR0000220, KERR0006273, KERR0007236

Plaintiff's other complaints include a letter regarding an accounting review conducted by Kerr related to the probate matter in Westchester County, New York (which was on Melissa Cohenson's log) and communications regarding Carl Glatstein (Bernard Black's former lawyer), both of which have no relevancy to the claims or defenses in this litigation under Rule 26(b)(1) and therefore were not produced or logged. (Memo. at 9-10.) Plaintiff alleges that Defendants committed several torts including "defamation, intentional infliction of emotional distress and civil conspiracy to prevent her from testifying in several related cases."[6] (Memo. at 1.) These email communications and documents have nothing to do with Defendants conduct to prevent Plaintiff from testifying. And, the emails concerning Carl Glatstein were sent after Plaintiff filed this action. Therefore, these email communications are not relevant to the claims at issue in this lawsuit.

### III. COUNSEL FOR KERR PROPERLY OBJECTED DURING KERR'S DEPOSITION

Plaintiff was put on notice over ten months ago that Kerr was asserting privileges. Kerr served her privilege log on Plaintiff two days before Kerr's deposition. Plaintiff's counsel made no effort to meet and confer before the deposition (or at any time since) to discuss concerns

---

[6] Civil conspiracy is not a separate tort; rather, Plaintiff must prove first the underlying tort (e.g. civil conspiracy to commit defamation).

11

about the log. Had Plaintiff's counsel raised these issues with Kerr's counsel before Kerr's deposition, Plaintiff would not be in this position – claiming she needs to re-depose Kerr. By failing to raise the issue with Kerr's counsel and attempting to elicit the basis and the contours of the privilege from the non-lawyer Kerr who had no role in deciding what ought to be logged as privileged, Plaintiff's counsel put himself in this position. The following testimony demonstrates this point.

> Q (BY MR. SCHAALMAN Let's move to Exhibit 3.
> (Exhibit Number 3 was marked.)
> Q (BY MR. SCHAALMAN) Ms. Kerr, are you familiar with Exhibit 3?
> A I am.
> Q Did you assist in its preparation?
> A No.
> Q Do you -- this is a privilege log. Are you aware of that?
> A Correct.
> Q Okay. And it indicates privilege -- it lists privilege status for a number of documents. Did you have a role in locating the documents that are listed on this privilege log?
> MR. MANDELL: Object to form.
> A I -- did I have -- did I prepare -- prepare this?
> Q (BY MR. SCHAALMAN) No. I'll ask it again.
> A Okay.
> Q Did you have a role in locating the documents that are described on the privilege log?
> A No.
> Q Do you know how the documents described on the privilege log were assembled?
> A No. That's a legal matter.
> Q The question of whether you know is not a legal matter. It may be that lawyers participated in it. Do you know how the documents were assembled?
> A No.
> Q Did you provide any information or sources for the documents that are on the privilege log to be assembled?
> MR. MANDELL: Object to form.

12

> A   I gave my -- all of my files to my attorney.
> Q   (BY MR. SCHAALMAN) Okay. Were these files that you gave electronic or hard copy files?
> A   Electronic.
> Q   And did you provide your hard drive to your attorney?
> A   I gave him access to my hard drive.
> Q   Okay. And did you participate in the search on your hard drive?
> A   No.
> Q   Did you participate in assisting your attorneys with providing search terms for the search of your hard drive?
> A   No.

(Ex. D, at 48:17-50:15)

Despite Kerr testifying that her lawyers retrieved the documents and created the privilege log, Plaintiff's counsel repeatedly asked Kerr specific questions about emails withheld on the privilege log. For example,

> Q   (BY MR. SCHAALMAN) Do you know whether there are any attorneys who are senders of that document or authors?
> MR. MANDELL: Objection, foundation. She testified she doesn't remember what the document is.
> A   No.
> Q   (BY MR. SCHAALMAN) Based on --
> MR. MANDELL: And she testified that she doesn't -- she didn't prepare this document.
> Q   (BY MR. SCHAALMAN) Based on the description on the privilege log, were there any attorneys sending Document 5416 to you?
> MR. MANDELL: Objection, no foundation, calls for speculation. She testified she didn't put this together. She didn't -- she doesn't remember the documents. You're asking her to speculate.
> A   I'd have to speculate.

(Ex. D, at 58:21-59:12.)

In this context, Kerr's counsel's objections were entirely proper. Plaintiff's counsel knew that Kerr did not have any personal knowledge concerning the privilege. Plaintiff fails to explain

13

why this objection was improper and what she will gain by re-deposing Kerr regarding a topic in which she has no personal knowledge. *See, e.g., GSI Group, Inc. v. Sukup Mfg. Co.,* Case No. 05-3011, 2007 U.S. Dist. LEXIS 93741, *25-26, 2007 WL 4556703 (N.D. Ill. Dec. 21, 2007) (acknowledging that "in appropriate circumstances, it acceptable for a deponent to answer that he or she would be speculating.")

    Kerr's counsel also properly asserted the privileges for those questions in which Plaintiff's counsel sought to uncover information that is protected by the attorney-client privilege and/or work product doctrine. For example, Kerr was a consulting expert for Joanne's team. Plaintiff's counsel, however, continued to press Kerr on recommendations she may have made to the team regarding seeking civil theft charges against Plaintiff's husband, Bernard Black, as stated here:

> Q. (BY MR. SCHAALMAN) In your investigation on behalf of Joanne Black, did you have a role in recommending that civil theft be considered regarding the activities of Bernard Black?
> MR. MANDELL: Objection, attorney/client privilege, common interest doctrine, work product. Instruct the witness not to answer.
> Q (BY MR. SCHAALMAN) Mr. Mandell made the objection, and I have the right to at least test the limits of that objection. Did you speak to other people about the possibility of a claim for civil theft in your investigation on behalf of Joanne Black?
> MR. MANDELL: Objection. Same objection, attorney/client privilege, work product, common interest doctrine. You have stated a subject matter and asked if she spoke to people in that particular group about that subject matter. That violates the privilege. I instruct you not to answer.

(Kerr's Dep. 29:6-24 (August 31, 2018), attached as Exhibit D.)

Mr. Mandell's objection to privilege and instruction to Kerr not to answer was proper. *See Coates v. Johnson & Johnson*, 85 F.R.D. 731, 733 (N.D. Ill. 1980) (the general rule in this district is that, ***absent a claim of privilege***, it is improper for counsel at a deposition to instruct a client not to answer (emphasis added)). Other than instructing Kerr not to answer on the basis of privilege, counsel for Kerr did not instruct his client not to answer Plaintiff's counsel's questions.[7]

Plaintiff cannot show a need for further deposition testimony. Kerr testified to the non-privileged information relevant to the claims and/or defenses in this matter. And, Kerr's counsel's objection did not impair Plaintiff's counsel's ability to ask and obtain information from Kerr. Rather, Plaintiff's counsel chose to continue to ask Kerr questions to which he knew she did not have the answers and would result in objections from Kerr's counsel. The emails and documents that Kerr will now produce have nothing to do with the narrow issues remaining in this case *i.e.* the truth of whether Kerr was court appointed and whether she was ordered to investigate Esaun Pinto. This Court should deny Plaintiff's motion to compel deposition testimony from Kerr. Finally, Plaintiff's request should also be denied because Plaintiff has failed to specify which questions she is seeking to compel answers from Kerr, this Court should deny Plaintiff's request to re-depose Kerr. *See Reed v. Advocate Health Care*, Case No. 06 C 3337, 2008 U.S. Dist. LEXIS 3561, *10 (N.D. Ill. Jan. 17, 2008).

## CONCLUSION

For the reasons set forth herein, Pamela Kerr respectfully requests that this Court deny the motion to compel and for such further and other relief this Court deems just and proper.

---

[7] Contrary to Plaintiff's implication (Memo. at 13.), counsel for Kerr did not "recognize the impropriety" of his instruction to Kerr not to reveal communications among parties with a common interest in answering a certain question. Nor did counsel for Kerr instruct Kerr that she does not have to disclose communications she had with Ms. Wrigley while performing her investigations as a forensic accountant in the matter of Joanne Black.

Dated: October 23, 2018

Respectfully submitted,

PAMELA KERR

By: /s/ Danielle N. Twait
   One of her attorneys

Steven P. Mandell (ARDC #6183729)
Steven L. Baron (ARDC #6200868)
Natalie A. Harris (ARDC #6272361)
Danielle N. Twait (ARDC #6298748)
MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, IL 60606
(312) 251-1000
smandell@mandellmenkes.com
sbaron@mandellmenkes.com
nharris@mandellmenkes.com
dtwait@mandellmenkes.com

*Counsel for Defendant, Pamela Kerr*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on October 23, 2018, she filed the motion with the Clerk of the Court via the ECF system, which automatically serves all registered parties.

    /s/ Danielle N. Twait