**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE BLACK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00101 |
| | ) | Judge Matthew F. Kennelly |
| CHERIE WRIGLEY, MELISSA COHENSON, BRIAN A. RAPHAN, P.C., and PAMELA KERR, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT WRIGLEY'S RULE 56.1**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant, Cherie Wrigley, by and through her attorneys, Mancilla & Fantone LLP, respectfully submits the following statements of undisputed material facts pursuant to F.R.C.P. Rule 56, in support of Defendant Wrigley's Motion for Summary Judgment.

**EXHIBITS ATTACHED:**

A. Deposition of Katherine Black ("Litvak") dated August 23, 2018
B. Deposition of Bernard Black dated November 19, 2018
C. Deposition of Daniel Rodriguez dated August 8 and 10, 2018
D. Deposition of Rita Winters dated July 24, 2018
E. Deposition of Melissa Cohenson dated August 28, 2018
F. Deposition of Cherie Wrigley dated September 7, 2018
G. Deposition of Pamela Kerr dated August 31, 2018
H. Wrigley's Ethicspoint Complaint Regarding Plaintiff's Improper Use Of Northwestern Letterhead, Dated January 8, 2016
I. Pamela Kerr's Draft Letter to Northwestern, dated January 8, 2016
J. Email From Wrigley To Bernard Black re. Joanne Black's Property, dated October 23, 2015

K.  Bernard Black's Transcript of Voicemail From Cherie Wrigley On April 2, 2015
L.  Plaintiff's Medical Records From Trifactive
M.  Plaintiff's Medical Records From Northwestern
N.  Plaintiff's Letter to Judge Aliotta dated January 7, 2016 ("Litvak Letter")
O.  Email from Bernard Black to Wrigley re. Jewelry dated September 2, 2014
P.  Email from Bernard Black to Wrigley re. Jewelry dated June 13, 2012
Q.  Wrigley's EthicsPoint Complaint re. Bernard Black's improper use of Northwestern Letterhead dated May 7, 2015
R.  Email from Daniel Rodriguez to Plaintiff and Bernard Black dated January 20, 2016
S.  Email from Daniel Rodriguez to Plaintiff and Bernard Black dated February 5, 2016
T.  Email from Rita Winters to Daniel Rodriguez dated January 25, 2016.
U.  Email from Kerr to Plaintiffs husband dated March 16, 2015
V.  Plea Agreement of Esaun Pinto (Case 3:07-cr-05775-RBL, Dkt. No. 374, Filed March 31, 2009)
W.  Misdemeanor Information re. Esaun Pinto (Case 3:07-cr-05775-RBL, Dkt. No. 365, Filed March 31, 2009)
X.  Excerpt from Kerr Forensic Accounting Report – In the Interest of Joanne Black, Dated June 2, 2015.
Y.  Affidavit of David Dana dated September 13, 2018
Z.  Affidavit of Katherine F. Schulte dated August 14, 2018
AA. Affidavit of Cherie Wrigley, dated March 18, 2019
BB. Email from Pamela Kerr to Bernard Black re. Black Investigation, dated March 16, 2015.
CC. Ex. CC, Judge Aliotta Oral Decision and Order

2

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff, Katherine Black ("Plaintiff"), resides and works in Illinois. (Am. Compl. ¶¶ 29-30) [1]

2. Plaintiff and her husband, Bernard Black are law professors at Northwestern University Pritzker School of Law ("Northwestern"). (Livak Dep. 97:8-13 and B. Black Dep. 17:11-14.)

3. Defendant, Cherie Wrigley ("Wrigley"), resides in California and is a cousin of Bernard. (Wrigley Dep. 14, 18)

4. Defendant, Pamela Kerr ("Kerr"), resides in Colorado and is a forensic accountant who was retained by the Guardian ad Litem for Joanne Black in the Denver Probate Court matter. (Kerr Dep 10; 42-43.)

5. Cohenson resides in New York and is a former attorney for Cherie Wrigley. Cohenson Answer (Cohenson Answer (Dkt. No. 123), ¶ 59; Raphan PC Answer (Dkt. 124) at ¶ 59)

6. The Court has specific personal jurisdiction over all Defendants under the Illinois long-arm statute. (735 ILCS 5/2-209)

7. The Court has jurisdiction over Plaintiff's state law claims because this dispute is between citizens of different States and the amount in controversy is in excess of $75,000.00. (28 U.S.C. § 1332(a)(1))

8. Venue is proper in the U.S. District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims allegedly occurred in this District. Cohenson Answer at ¶ 92 and Raphan, P.C. Answer at ¶ 92.

---

[1] Cites to "Am. Compl." reference the Amended Complaint (Dkt. No. 71)

**IIED - WRIGLEY'S ALLEGED THREATS**

*Alleged Threats of "Physical and Sexual Assault"*

9. Wrigley's March or April 2015 alleged threat of "physical and sexual assault" actually referred to Wrigley's alleged statement to Plaintiff stating: "something like […] you need a sex change operation, I will arrange one for you, you like it or not." (Litvak Dep. 203: 6-7, 15; see also 243)

10. Plaintiff testified:

    A: You need to get -- you continue, it will be bad for you, you need a sex change operation, I will arrange one for you, you like it or not.

    Q: Okay.

    A: The usual Wrigley. That's how she speaks.

    Q: So Cherie Wrigley told you you need a sex change operation?

    A: And she will arrange one for me.

    Q: And she will arrange one for you, like it or not?

    A: Something like that.

    Q: You remember -- did you draft paragraph 117?

    A: I did.

    Q: And you remember here today specifically that she said that to you?

    A: I clearly remember the sex change operation and the arrangement thereof.

(Litvak Dep. at 243)[2]

11. Plaintiff drafted paragraph 117 of the Amended Complaint, which alleges Wrigley threatened plaintiff with a physical and sexual assault. (Litvak Dep. 243:16-18)

---

[2] Wrigley specifically refutes Plaintiff's allegations, stating that she told Plaintiff: "Nice shoes Kate," while referring to the Doc Marten brand boots Plaintiff was wearing in court (Wrigley Dep. 278-79)

4

12. Plaintiff did not include the actual substance of Wrigley's alleged threat in the Complaint because: "I didn't know how complaints were drafted. I thought a summary is better than quotes." (Litvak Dep. 244: 1-4)

*Alleged Threat To File A False Police Report*

13. On one occasion in March or April of 2015, Wrigley encountered Plaintiff in an airport where Plaintiff claims Wrigley threatened to file a false police report against her. (Litvak Dep. 258-59)

14. Wrigley subsequently reiterated what she said to Plaintiff (which Plaintiff took as a threat) on a voicemail to Bernard Black. (Litvak Dep. 276: 5-9; Am. Compl. 142, 307)

15. Plaintiff testified at a hearing in Denver on August 5, 2018. Plaintiff never reported the threat to anyone other than Bernard Black and Plaintiff excused her failure to mention Wrigley's purported threat while testifying before the on the grounds of relevance, claiming Wrigley's threats were only relevant to the proceeding in New York. However, Plaintiff also failed to convey Wrigley's alleged threats in the New York proceedings. (Litvak Dep. 247, 283, 288-290; Ex. N).

16. Plaintiff never produced the recording of the allegedly threatening voicemail Wrigley left with Bernard Black, referred to in paragraph 307 of the Amended Complaint. (B. Black Dep. 167-173)

17. Bernard Black produced his transcription of the voicemail described in paragraph 307 of the Amended Complaint, which read:

> Voicemail message to 847-491-5049 (Bernie's Kellogg office), on April 2, 2015:
>
> Well Bernie, I'm sitting here chuckling with my brother. I think your wife needs a hearing aid. Very paranoid because I understand that you're again assaulting me or whatever with your words. Whatever she heard I have no idea.
>
> But yes, Joanne is looking at civil charges being brought up against you. I'm more than happy to tell you that. As far as legal fees, that will be a whole other story. And yes this is definitely on a recorded line. I'm happy to tell you that.
>
> But as far as your wife, and bringing her to the hearing, I find that a little funny. Whatever she heard, I think you need to work on that. That's all, bye-bye.

5

(B. Black Dep. 167-173; Ex. K, Bernard Black's Transcription of Voicemal from Cherie Wrigley on April 2, 2015)

*Alleged Threat of Burglary*

18. On October 1, 2015 the New York court granted Wrigley's cross-petition for guardianship over Joanne Black's person and property. (Ex. CC, Judge Aliotta Oral Decision and Order)

19. Plaintiff alleged that Wrigley's threat of burglary was sent via email or letter and stated: "among other things, that Esaun Pinto will be stopping by to pick up Joanne's jewelry." (Litvak Dep. 253: 12-13; 254: 11-16)

20. The threat was contained in an email from Wrigley to Bernard Black, dated October 23, 2015, which stated the following:

> Bernard,
> First of all I want to acknowledge the fact that I am very uncomfortable having to write you at your professional address. Clearly because you have refused to give anyone nor have you ever used a personal email when conducting PERSONAL BUSINESS. Ethically this continues to put me in a very uncomfortable position.
> As you know I was appointed by Judge Aliotta to be Joanne's guardian of the person and property on October 1st. You are welcome to get a copy of the transcript from the court any time. on October 28th I will have the official commissioned copy from the court to serve you with in the state of Ill.
> I have all powers presently but fear that you are not going to make this easy. I would like this transition to go smoothly for all involved. Nancy Peterson, the present conservator, has told me you have not responded to her emails regarding the change in guardianship and how you would prefer the transition to occur.
> Judge Leith told you months ago that you weren't to get anywhere near Joanne's funds. You have been charged and surcharged for CIVIL THEFT! All of your fiduciary duties have been removed months ago. WHY are you still receiving Joanne's workmen's Comp. checks from Traveller's Ins.?? I would think that you would have voluntarily informed them a long time ago about your PROBLEMS!! I am requesting that you discontinue all receipt of any future checks and turn over any checks in your possession to me immediately!
> I also expect to have access to the safe deposit box and Joanne's personal belongings that were removed from your mother's house including her jewelry and the Matrix. Please let me know what day or days work best for you. if I don't hear from you

> within 48 hours I will just continue on my own timeline. I have already tried several times to reach you by phone with no return phone call from you or your wife.
>
> Joanne would like her things before a another birthday passes. I can come for a few of her things and a general discussion the weekend of Nov.6th. Better dates would be Nov. 12,13,or l4. Nov.17th,18th is when Esaun will likely come and pick up all of Joanne's boxes. I will be picking up all the paperwork, bonds, jewelry before that.
>
> In case you are thinking that some of this will still need to be resolved in surrogate's court the answer is yes and no. I suggest you read the NY transcript as far as Joanne's belongings go and my authority regarding status as CO-TRUSTEE of all of her funds including the SNT of 1997. Then reread your diminished authority in all regards after Judge Leith released her judgment in Colorado. we are still planning to litigate in Westchester but your lack of communication to all involved just continues to make things more difficult for you. To eliminate any confusion regarding my intentions this is still a GUARDIANSHIP issue and NOT a SURROGATES issue and that is why I am contacting you directly.
>
> To the best of my knowledge now that you must use your own money and NOT Joanne's funds you have not hired additional legal help in Chicago or anywhere else regarding issues of Guardianship. True?
>
> Your cousin,
> Cherie

(Ex. J, Email from Wrigley to Bernard Black re. Joanne Black's Property)[3]

**IIED - PLAINTIFF'S MEDICAL RECORDS**

21. Plaintiff claimed her severe stress manifested in shoulder and back pain. (Litvak Dep. 180-81)

22. Plaintiff never sought treatment from a mental health professional for her emotional distress. (Litvak Dep. 394; 16-20; B. Black Dep. 94, 97, 98)

23. Eleanor G. Smith, MD's "Progress Notes" at "6/9/2016" state "Litvak is a 45 y/o female who is here today for refills on her medications. I have seen her once before in 2014 for the same purpose. She has had a 40 pound weight loss since our last visit which she reports as intentional." (Ex. M, Plaintiff's Medical Records from Northwestern at NWMG000017)

---

[3] Notably, Wrigley copied Anthony Dain and Nancy Peterson, the court-appointed conservator for Joanne Black's property in Colorado) on this email, which Plaintiff considers a threat of burglary.

7

24. On July 6, 2018, when prompted to complete the Health Checklist for Trifactive Premium Sports Injury and Pain Clinic, Plaintiff represented that she exercised on a daily basis and that representation to be true and accurate. (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00007 & TRI00010)

25. On July 6, 2018, when prompted to describe the "Injury Origin" Plaintiff wrote "lower-back pain after prolonged seating for work; shoulder pain after biking, lifting" and certified that representation to be true and accurate. (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00007 & TRI00010)

26. On July 6, 2018, when prompted to complete the Health Checklist for Trifactive Premium Sports Injury and Pain Clinic, Plaintiff did not check the box indicating that she suffered from depression and certified that representation to be true and accurate. (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00010)

27. On July 6, 2018, when prompted to complete the Health Checklist for Trifactive Premium Sports Injury and Pain Clinic, Plaintiff checked the box indicating that she had "Poor Posture" and certified that representation to be true and accurate. (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00010)

28. On July 6, 2018, when prompted to report whether Plaintiff's complaints "Affected Appetite" Plaintiff indicated "Yes" and explained "hard to eat when something hurts, especially back" and certified that representation to be true and accurate. (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00008 & TRI00010)

29. On July 7, 2018, Plaintiff represented to Trifactive that "My treatment is in no way associated with any third party." (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00006)

30. Trifactive's Dr. Jared wrote the following concerning Plaintiff's initial consultation with him on July 7, 2016, "Kate Litvak is a 5 foot 8 inch 145 pound – 45 year old female born on 1/7/1971 who works as a college professor. In general, the patient considers herself to be in very good health. The patient states that she performs moderate exercise on a regular basis." (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00011)

31. Trifactive's Dr. Jared wrote the following concerning Plaintiff's initial consultation with him on July 7, 2016 "that she has had her shoulder problem for 5 years" and that she "thinks that her shoulder problem just came about insidiously." (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00011)

32. Trifactive's Dr. Jared wrote the following concerning Plaintiff's initial consultation with him on July 7, 2016 "that she has had her lower back problem for 2 years" and that she "thinks that her lower back problem just came about insidiously." (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00011)

8

33. Plaintiff continued to see Dr. Jared through July 2016. Concerning Plaintiff's July 23, 2016 consultation, Dr. Jared indicated that (on a scale from 0-10) "Kate gave her left shoulder a 0 and entire lower back a 0 since her last visit." (Ex. L, Plaintiff's Medical Records from Trifactive at TRI00021)

**IIED - COSTS STEMMING FROM PLAINTIFF'S ANXIETY AND STRESS**

34. Plaintiff testified that she spent more than fifty thousand dollars ($50,000.00) to monitor her children as a result of Wrigley's alleged threats. (Litvak Dep. at 264-65)

35. Plaintiff's purported "child monitoring" was actually piano and chess lessons for her children. (Litvak Dep. 264-75)

36. Plaintiff claims that Wrigley's threats forced her to remove her children from public school and place them in private school (Roycemore) because she "was worried something crazy would happen and I want to record every step they take." (Litvak Dep. 264-67)

37. Plaintiff's children have attended Roycemore since 2012. Prior to Wrigley's alleged threats: "Between 7/2/2012 and 12/31/2014" Bernard Black spent "a total of […] $76,204 to Roycemore School for Bernard Black's children's school (Daniel & Jacob)." (Ex. X, Excerpt from Kerr Forensic Accounting Report – In the Interest of Joanne Black at. BLACK012287 – 88)

**IIED - DAMAGES**

38. Plaintiff's noneconomic damages consist of: "Harm to my normal well-being and reputation and standing in the community and being able to do my normal work and function normally. I -- you know, I don't know." (Litvak Dep. 217)

39. Plaintiff believes she lost weight in the "first half of 2016," or the "fall of 2015 and the first half of – I don't recall the exact time." (Litvak Dep. 348-349)

40. Plaintiff's husband observed Plaintiff begin not eating and losing weight "[a]round the time of the attack on her at Northwestern, so around early 2016." (B. Black Dep. 98.)

41. Plaintiff's husband observed Plaintiff exhibit physical symptoms: "beginning in early 2016 she was basically unable to eat for a sustained period of time and lost a log of weight. I have observed that she is tired and stressed and unable to focus on her research […] Q: [...] When did she begin not eating and losing weight? A: Around the time of the attack on her at Northwestern, so around early 2016." (B. Black Dep. 93-94, 97-98; see also 90-94, 97, 98, 100-102, 130)

9

42. Plaintiff's husband did not observe in 2015 the physical symptoms Plaintiff exhibited in 2016. (B. Black Dep. 101-102)

**DEFAMATION**

43. The record indicates that Wrigley contacted Northwestern regarding Plaintiff through its EthicsPoint portal (the "Ethics Complaint"), and by leaving a voice mail with Northwestern employee David Dana. (Litvak Dep. 91: 1-5, 337: 15-22; Am. Compl. ¶ 173, 477, 498)

44. Plaintiff never listened to the recording of the voicemail that Wrigley left with David Dana. (Litvak Dep 338: 2-13)

45. David Dana has "no recollection of any call or voicemail from Cherie Wrigley in January 2016 or at any other time." (Dana Aff. at ¶ 2)

46. Wrigley never stated to anyone at Northwestern that Plaintiff "lied" to a Court in the course of litigation (Ex. H, Wrigley's EthicsPoint Complaint re. Plaintiff's Improper Use of Northwestern Letterhead)

47. Wrigley's Ethics Complaint included a comment regarding the letter that Plaintiff submitted to the New York court (the "Litvak Letter") and wrote in the description field: "Professor from your school using your letterhead to slander people and fight a personal case". (Ex. H, Wrigley's EthicsPoint Complaint re. Plaintiff's Improper Use of Northwestern Letterhead at 2)

48. The Litvak Letter repeatedly states that Esaun Pinto is a convicted felon and that Wrigley perjured herself by testifying that he was not. (Ex. N, Plaintiff's Letter to Judge Aliotta at 4, 11, 13-17)

49. Esaun Pinto pled guilty to a misdemeanor in 2009, not a felony. (Ex. V, Plea Agreement of Esaun Pinto; Ex. W, Misdemeanor Information re Esaun Pinto; Litvak Dep. 319-330; 18 U.S.C. §641; 18 U.S.C. §3559; 18 U.S.C. §2)

50. The Litvak Letter also contains several statements asserting that certain pieces of jewelry do not belong to Wrigley, and that Wrigley has wrongfully attempted to obtain the jewelry. (Ex. H, Wrigley's EthicsPoint Complaint re. Plaintiff's Improper Use of Northwestern Letterhead at 2)

51. On at least two occasions, Bernard Black stated to Wrigley that she is entitled to the jewelry. (Ex. O; Ex. P)

52. Kerr is a Forensic Accountant retained to investigate Bernard Black's accounting. Her fees were approved by the Denver Probate Court ("DPC"). (Litvak Dep. 16: 10-11; 18)

10

53. Wrigley is not a lawyer nor is she a forensic accountant. (Wrigley Dep. 263: 1-19)

54. Wrigley believed that the statements contained in the Kerr Letter were true. (Wrigley Dep. 263: 1-19).

55. According to Kerr, her role was to investigate Bernard Black and such investigation necessarily included a review of documents supplied by Esaun Pinto. (Ex. BB, Email from Pamela Kerr to Bernard Black re Black Investigation, dated March 16, 2015; Kerr Dep. 96-97)

56. Kerr personally conducted the investigation and described the scope of it in her own words. (Ex. I, Pamela Kerr's Draft Letter to Northwestern)

**DEFAMATION - QUALIFIED PRIVILEGE**

57. Wrigley had an interest in preventing the appearance that Northwestern approved Plaintiff's statements contained in the Litvak Letter. (Ex. I, Pamlea Kerr's Draft Letter to Northwestern)

58. In May 2015 Wrigley filed an ethical complaint against Bernard Black (through EthicsPoint) for his improper use of Northwestern letterhead in personal litigation (Ex. Q, Wrigley's EthicsPoint Complant re Bernard Black's Improper Use of Letterhead)[4]

59. As a result of Wrigley's ethics complaint against Bernard Black, Northwestern staff told him he was not permitted to use Northwestern letterhead in connection with personal litigation. (Winters Dep. 73)

60. Plaintiff subsequently stated she was unaware that Northwestern staff had told Bernard Black he was not permitted to use Northwestern Letterhead in personal litigation. (Ex. T, Email from Rita Winters to Daniel Rodriguez at 2)

61. Rita Winters expressed doubts over Plaintiff's alleged ignorance of Northwestern's prior admonishment to Bernard Black for his improper use of Northwestern Letterhead. (Winters Dep. at 73; Ex. T, Email from Rita Winters to Daniel Rodriguez at 2)

62. Wrigley uploaded the Litvak Letter and other supporting documentation in support of the Ethics Complaint against Plaintiff. (Litvak Dep. 121-22)

---

[4] Wrigley also stated in an October 23, 2015 email to Bernard Black: "First of all I want to acknowledge the fact that I am very uncomfortable having to write you at your professional address. Clearly [sic] because you have refused to give anyone nor have you ever used a personal email when conducting PERSONAL BUSINESS. Ethically this continues to put me in a very uncomfortable position." (Ex. J, Email from Wrigley To Bernard Black re. Joanne Black's Property)

11

63. Pamela Kerr drafted the Kerr Letter in direct response to Plaintiff's filing of the Litvak Letter in New York. (Ex. I, Pamela Kerr's Draft Letter to Northwestern; Kerr Dep. 177-178)

64. Wrigley filed the Ethics Complaint one day after Plaintiff filed the Litvak Letter in New York (Ex. H, Wrigley's EthicsPoint Complaint re. Plaintiff's Improper Use of Northwestern Letterhead)

65. Wrigley used Northwestern's EthicsPoint system to file the Ethics Complaint, which is the proper method of submitting a complaint against a professor at Northwestern. (Rodriguez Dep. 210: 8-15)

66. Wrigley's Ethics Complaint contains the following statement:

> I have filed a report before about your employee Bernard Black and nothing was done. I was not going to pursue anything more until the case was finished in Westchester County, NY and we had removed him as executor and trustee of my cousin Joanne Black's Special Needs Trust. He has continued to use school letterhead, email address, phones and other resources to fight his personal battle. Now his wife is doing the same. I cannot in all good conscience allow this to continue. Something must be done to save the integrity of your school. How can something like this go on for almost three years?

(Ex. H, Wrigley's EthicsPoint Complaint re. Plaintiff's Improper Use of Northwestern Letterhead)

67. Northwestern had an interest in knowing that one of its faculty members was using Northwestern letterhead in connection with personal litigation, and that Plaintiff included false statements in the letter. (Rodriguez Dep. 13-19; Winters Dep. 104: 15-18)

68. Northwestern had an interest because it was concerned that Plaintiff's use of the letterhead would give the appearance that Northwestern endorsed Plaintiff's statements. (Rodriguez Dep. 13-19; Winters Dep. 104: 15-18)

69. As a result of Wrigley's Ethics Complaint against Plaintiff, Northwestern staff told Plaintiff she was not permitted to use Northwestern letterhead in connection with personal litigation. (Ex. R, Email from Daniel Rodriguez to Plaintiff and Bernard Black, dated January 20, 2016; Ex. S, Email from Daniel Rodriguez to Plaintiff Bernard Black, dated February 5, 2016).

70. Daniel Rodriguez, Dean of Northwestern, sent an email to Plaintiff and Bernard Black on February 5, 2016, which stated the following:

> Bernie & Kate,
>
> This is in reference to the legal matter that you two are involved in within the probate system in Colorado and New York. As Rita has explained to one of you (Kate), persons involved with this matter have been reaching out, over the past few weeks, to share information and concerns with the University In particular, it has been brought to our attention that at least one document was submitted to a court on Northwestern letterhead. As has been discussed with one of you (Bernie) previously, and as stated in the University's Policy on Conflict of Interest, University resources are to be used only in the interest of the University. It is particularly problematic when law faculty use University letterhead in a court setting, given the likelihood of confusion between our professional and personal roles.

(Ex. S, Email from Daniel Rodriguez to Plaintiff Bernard Black, dated February 5, 2016)

**FALSE LIGHT**

71. Wrigley's written complaint was made to Northwestern's "EthicsPoint," a forum specifically designated for registering complaints about faculty members. (Rodriguez Dep. 210: 8-15) Kerr made her statement to Rita Winters, a "senior administrator at the law school." (Litvak Dep. 82: 13-15) Cohenson made one phone call on January 7, 2016 to Katherine F. Schulte, the Director of Special Projects at the Northwestern School of Law (Cohenson Dep. 45-46) (Schulte Aff. at ¶1)

72. The Kerr Letter states that the Litvak Letter contained a statement that was "100% false," and "completely false." (Ex. I, Pamela Kerr's Draft Letter to Northwestern at 1-2)

                                    Respectfully submitted,

                                    **Mancilla & Fantone, LLP**

By:   /s/  Andrew Mancilla
Admitted *Pro Hac Vice*
260 Madison Avenue, 22nd Floor
New York, New York 10016
P (646) 225 – 6686
F (646) 655 – 0269
andrew@law-mf.com
*Attorneys for Defendant Cherie Wrigley*

14

## CERTIFICATE OF SERVICE

    I, Andrew Mancilla, hereby certify that on March 18, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system to the attorneys of record.

                      Respectfully submitted,

                      s/ Andrew Mancilla
                      Andrew Mancilla