# KATHERINE BLACK vs CHERIE WRIGLEY

17-cv-00101

Transcript of the Video Deposition of:

# PAMELA KERR

August 31, 2018





1     Pursuant to Notice and the Federal Rules of
2  Civil Procedure, the video deposition of PAMELA KERR,
3  called by Plaintiff, was taken on Friday, August 31,
4  2018, commencing at 9:09 a.m., at 3900 East Mexico
5  Avenue, Suite 530, Denver, Colorado, before Barbara
6  J. Davalos, Registered Merit Reporter, Certified
7  Realtime Reporter and Notary Public within and for
8  the State of Colorado.
9
10                      I N D E X
11
12 EXAMINATION                                    PAGE
13  BY MR. SCHAALMAN                               7
    BY MR. MANDELL                                 202
14
15
16 EXHIBIT          DESCRIPTION              INITIAL
                                             REFERENCE
17
18   Exhibit 3      Untitled spreadsheet        48
19   Exhibit 4      Transcriber's Transcript,   75
                    4/2/15
20
     Exhibit 5      Status Conference Order In  80
21                  re the Interest of Joanne
                    Black
22
     Exhibit 6      Ethicspoint Issue and Event 89
23                  Manager, 5/7/15
24
25

```
 1                I N D E X  (Continued)

 2   Exhibit 7       Email string, top message    92
                     from Bernard Black to
 3                   Pamela Kerr, 5/18/15

 4   Exhibit 8       In the Interest of Joanne    95
                     Black, Denver Probate
 5                   Court, Case No. 2012PR1772,
                     Details of Invoices from
 6                   Esaun Pinto

 7   Exhibit 9       Email from Pamela Kerr to   105
                     Cherie Wrigley and Bernard
 8                   Black, 5/18/15

 9   Exhibit 10      Email string, top message   118
                     from Bernard Black to
10                   Pamela Kerr, 5/18/15

11   Exhibit 14      Email string, top message   119
                     from Pamela Kerr to Melinda
12                   Harper and Lisa DiPonio,
                     6/24/15
13
     Exhibit 17      Email string, top message   125
14                   from Pamela Kerr to Patrick
                     Thiessen, 7/8/15
15
     Exhibit 20      Transcriber's Transcript,   128
16                   9/8/15

17   Exhibit 21      Letter from Katherine       131
                     Litvak to Thomas Aliotta,
18                   1/7/16

19   Exhibit 22      Ethicspoint Issue and Event 140
                     Manager, 1/8/16
20
     Exhibit 23      Letter from Pamela Kerr to  142
21                   Daniel Rodriguez, 1/8/16

22   Exhibit 24      Attorney Affirmation in     182
                     Support of the Temporary
23                   Restraining Order

24

25
```

1                    I N D E X  (Continued)

2    Exhibit 26      Email string, top message      176
                     from Yekaterina Valerie
3                    Litvak to Bernard Black,
                     1/13/16
4
     Exhibit 27      Email string, top message      162
5                    from Rita Buckman Winters
                     to Pamela Kerr, 1/13/16
6
     Exhibit 28      Affirmation & Reply in         186
7                    Support of Ira Salzman &
                     Anthony Dain's Motion to
8                    Vacate Katherine Litvak's
                     TRO Application Seeking a
9                    Permanent Injunction

10   Exhibit 30      Transcript, 3/21/16            191

11   Exhibit 31      Email string, top message       21
                     from
12                   elderabuse@list.nih.gov to
                     elderabuse@list.nih.gov,
13                   3/3/16

14   Exhibit 32      Email string, top message      122
                     from Bernie Poskus to
15                   Bernard Black, 6/26/15

16

17

18

19

20

21

22

23

24

25

1  question, you can read as much of it as you want.
2            So I think those are the important rules
3  as far as I'm concerned.  And if you want -- there
4  will be objections.  I'm sure Mr. Mandell has told
5  you what to do if there are objections.  And you also
6  have an opportunity to consult with counsel.  Again,
7  I ask you not to do that while a question is pending.
8            Okay.  Do you understand more or less what
9  I've said?
10      A     Yes.
11      Q     Great.  Okay.  Let's start a little bit
12 with your background.  What is your address?
13      A     Which address?
14      Q     You could give me your business address if
15 that's the address you normally would give out.
16      A     650 South Cherry Street, Suite 440,
17 Denver, Colorado 80246.
18      Q     Thank you.  Let's talk a little bit about
19 your education.  Do you have a college degree?
20      A     Yes.
21      Q     Where did you attend college?
22      A     University of -- or Metro State --
23 Metropolitan -- Metro State University.
24      Q     Did you receive a degree?
25      A     I did.

1      A    I did not perform it for the Denver
2  Probate Court.
3      Q    Let's say in Denver --
4      A    That a misstatement.
5      Q    Okay.  In the Denver Probate Court.
6      A    A case that was filed in the Denver
7  Probate Court, I was -- as I spoke earlier, I
8  described the case to you.  It was a matter before
9  the Denver Probate Court, not for the Denver Probate
10 Court.  That's a -- significant.
11     Q    A significant what?  I didn't hear the end
12 of it.
13     A    That's significant.
14     Q    Okay.  Are there any other cases you
15 worked on as a financial investigator in the Denver
16 Probate Court other than the one you've just
17 identified?
18     A    Not that I recall.
19     Q    And when -- what year or years did that
20 investigation cover?
21     A    Cover?
22     Q    Involve.
23     A    2009, 2010.
24     Q    Who retained you as a financial
25 investigator in the case you've just identified?

1    A    The court appointed guardian ad litem.
2    Q    And who was that? What was the guardian's
3 name?
4    A    I don't know if I -- I think that's
5 confidential.
6    Q    And is it confidential because the Denver
7 Probate Court matters are sealed or suppressed?
8    A    It's because it's a client. I can't give
9 you my client names.
10   Q    Well, let me ask you this. Did you -- did
11 you appear as a witness in any proceedings in this
12 investigation that you just identified?
13   A    No. I was -- excuse me. I was deposed.
14   Q    Okay. Did you prepare any reports in that
15 investigation?
16   A    Yes.
17   Q    Was that report part of any proceedings in
18 the probate court? And we're now talking about the
19 one financial investigation that you can recall in
20 the Denver Probate Court.
21   A    I don't know if the report was filed with
22 the Denver Probate Court. They settled the day after
23 my deposition.
24   Q    And was the deposition a sealed
25 deposition? Or was it a public deposition, which

1              MR. SCHAALMAN:  I skipped 8.  I gave the
2     wrong number out, Mr. Mandell.
3              MR. MANDELL:  No.  That's fine.
4         Q    (BY MR. SCHAALMAN)  So here's Exhibit 8.
5              MR. MANDELL:  Could I have another copy
6     for Paul?
7              MR. SCHAALMAN:  Sure.
8              MR. RUSCHEINSKI:  Thanks.
9              MR. SCHAALMAN:  You're welcome.
10        Q    (BY MR. SCHAALMAN)  Here's Exhibit 8,
11    Ms. Kerr.  Can you tell us what this is.
12        A    It's a schedule of details of invoices
13    from Esaun Pinto.
14        Q    And this is a schedule you prepared?
15        A    That is correct.
16        Q    As part of your forensic investigation for
17    the protected person, Joanne Black?
18        A    As part of my forensic investigation of
19    Bernard Black for the protected person Joanne Black.
20        Q    And these invoices were to represent
21    payment to Mr. Pinto?
22             MR. MANDELL:  Objection to form.
23        A    Can you -- can you rephrase the question?
24        Q    (BY MR. SCHAALMAN)  Sure.  These -- the
25    spreadsheet that you prepared contains invoices --

1  information from invoices presented by Mr. Pinto,
2  correct?
3          A    The invoices were provided to me by Mr.
4  Black from Mr. Pinto.
5          Q    Okay.
6          A    So --
7          Q    But the -- go ahead.  Continue.
8          A    That's okay.
9          Q    But the services that you were listing
10 were provided by Mr. Pinto, correct?
11              MR. MANDELL:  Object to form.
12         A    Can you rephrase the question?  I'm not
13 sure that I'm really understanding it.  I'm just not
14 --
15         Q    (BY MR. SCHAALMAN)  Well, there are
16 services listed on this spreadsheet that you prepared
17 provided by Mr. Pinto, correct?
18         A    These items are information from the
19 invoices that I was provided by Mr. Black.
20         Q    And the invoices provide information about
21 services and expenses provided by Mr. Pinto, correct?
22         A    Correct.
23         Q    So you were listing on these spreadsheets,
24 which is Exhibit 8, payments for services rendered by
25 Mr. Pinto, correct?

1　attempting to have any type of ex parte
2　communications with you.  Unfortunately, the only
3　email address I have for Ms. Litvak is the one on
4　Northwestern University School of Law letterhead on
5　which letter was sent to you which is her work email
6　address.
7　　　　　　And then you quote and italicize a
8　statement from Ms. Litvak's letter.
9　　　A　　Correct.
10　　Q　　And you wrote on the next page, I believe
11　this statement is made to insinuate that my
12　investigation with regards to Mr. Pinto's actions
13　solely, which is 100 percent not true.
14　　　　　　So your concern, at least as you expressed
15　it to Justice Aliotta, was that Ms. Litvak was
16　insinuating that you were only investigating
17　Mr. Pinto?
18　　　A　　That's what this email says.
19　　　Q　　Well, that was your concern?
20　　　A　　That she was -- that the letter to the
21　judge was insinuating that I was hired to investigate
22　just Mr. Pinto.
23　　　Q　　And what in Ms. Litvak's statement that
24　you quote at the bottom of the first page of
25　Exhibit 26 suggests that your investigation was

1  related solely to Mr. Pinto?
2      A    Not this email, but the letter that she
3  wrote.
4      Q    Well, you quote from the letter in order
5  to highlight for the judge what you thought was a
6  hundred percent not true?
7           MR. MANDELL:  Well, I'm going to object to
8  foundation on that.  First of all, form, "highlight"
9  again.  And it's actually not a quote from a letter.
10     Q    (BY MR. SCHAALMAN)  Well, you wrote,
11 Page 15 of Ms. Litvak's letter states, right?
12     A    Correct.
13     Q    So you wanted the judge to think you were
14 quoting from the letter, Ms. Litvak's letter, right?
15     A    That's correct.
16     Q    And you put it in quotations, and you
17 italicized it, correct?
18     A    That is correct.
19     Q    So you thought you were quoting directly
20 from Kate Litvak's letter?
21     A    Right.
22     Q    Is this not a quote from her letter?
23     A    The word "authorize" is not correct.  She
24 wrote, Ordered to conduct an investigation, and I
25 misstated that.