**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHERINE BLACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 101** |
| | ) | |
| **CHERIE WRIGLEY, MELISSA COHENSON,** | ) | |
| **BRIAN A. RAPHAN, P.C., and PAMELA** | ) | |
| **KERR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Katherine Black has sued Cherie Wrigley, Pamela Kerr, and Melissa Cohenson for defamation, false light, and intentional infliction of emotional distress. She has also sued Cohenson's former employer, the law firm Brian A. Raphan, P.C., alleging that the firm is vicariously liable for Cohenson's conduct. The defendants have moved for summary judgment.

**Background**

The allegedly tortious conduct in this case took place during contentious and sprawling litigation involving Katherine Black and her husband, Bernard Black. (The Court will refer to them as Katherine and Bernard, though Katherine also goes by the last name Litvak.) Both Katherine and Bernard are professors at the Northwestern University Pritzker School of Law.

In 2012, Bernard's mother passed away. He had expected to inherit one-third of

her approximately $3 million estate in the form of an issue trust for himself, Katherine, and their two children.  Instead, his mother disinherited him by making virtually her entire estate payable on death to Bernard's sister, Joanne, who suffers from mental illness.  At the time, Joanne resided in Denver, Colorado.

Bernard successfully petitioned in the probate court in Denver to become Joanne's conservator.  Bernard then exercised his powers as conservator to disclaim their mother's payment to Joanne, effectively undoing her disinheritance of Bernard and Katherine.  As a result, the original terms of their mother's estate plan went into effect, such that one third of their mother's assets that had been designated as payable to Joanne instead went to Bernard and Katherine's children.

Several years later, Joanne moved to New York, and Bernard commenced a second suit in New York state court to be appointed guardian of Joanne's property. Bernard's cousin, Cherie Wrigley, filed a cross-petition to be appointed Joanne's guardian in place of Bernard.  Wrigley was represented by attorney Melissa Cohenson, at the time an associate the law firm Brian A. Raphan, P.C.  Wrigley also retained a private investigator named Esaun Pinto.  Wrigley alleges that she hired Pinto to protect Joanne and supervise her affairs.

In the Denver probate court case, Joanne's guardian ad litem, Gayle Young, obtained information that Bernard had caused a significant amount of Joanne's inheritance to be diverted to himself or his family.  Young sought a forensic accounting of Joanne's accounts.  She retained Pamela Kerr, a certified public accountant.  Young alleges she hired Kerr for the limited purpose of investigating Bernard's actions. Katherine contends that Kerr was a neutral investigator and that the Denver probate

2

court authorized her to conduct a full accounting of all of Joanne's assets, including investigating concerns that Esaun Pinto had been improperly receiving Joanne's social security payments.

In April 2015, Katherine and Wrigley attended a contentious court hearing in the Denver probate court case. Katherine testified that before the hearing Wrigley made a remark that Katherine interpreted as a threat. According to Katherine, Wrigley said something like, "[Y]ou continue"—that is, continue to provide evidence against Wrigley—"it will be bad for you, you need a sex change operation, I will arrange one for you, you like it or not."[1] Katherine Dep., Kerr's Ex. 3, dkt. no. 267–3, at 243:4–7. Katherine also testified that after the hearing, Wrigley approached her in the airport and threatened to file a false police report that would cause Katherine to lose custody of her children.

In September 2015, following an evidentiary hearing, the Denver probate court found that Bernard had "failed to adequately disclose his intent" to use his power as Joanne's conservator to disclaim the inheritance of their mother's entire estate. *Black v. Black*, 2018 COA 7, ¶ 18, 422 P.3d 592, 598 (summarizing the probate court's ruling). The probate court also concluded that Bernard had acted deceptively and in bad faith, ordered him to reimburse $1.5 million, and imposed treble damages under Colorado's civil theft statute. *Id.* The Colorado Court of Appeals affirmed the ruling of the probate court. *Id.* ¶ 131, 422 P.3d at 613.

On January 7, 2016, Katherine submitted a twenty-page letter to the judge

---

[1] Wrigley recalls this conversation somewhat differently; she testified that, rather than implying that she would arrange for Katherine to undergo an involuntary surgery, she instead complimented Katherine's boots.

presiding over the New York state court case. Among numerous other allegations, Katherine stated that Wrigley and her brother Anthony Dain had concealed the fact that Esaun Pinto was a convicted felon and had engaged in "illegal coercive tactics to prevent the Black family members" from testifying. Katherine Letter, Ex. H to Kerr Decl., dkt. no. 269–1, at 1. Katherine wrote the letter on letterhead bearing the name and logo of the Northwestern University School of Law.

The same day Katherine submitted her letter, Cohenson, Wrigley's attorney, called the office of the dean of the law school. Her call was redirected to the law school's director of special projects, Katherine Schulte. According to Cohenson, she informed Schulte that a law professor—whom she did not name—had used Northwestern's name and logo on letterhead in personal litigation, and Cohenson asked whether this violated any university policies. Although Schulte vaguely recalls that this conversation took place, she has no memory of what they discussed.

On the morning of January 8, 2016, the day after Cohenson spoke with Schulte, Kerr and Wrigley exchanged e-mails about Katherine's letter. Lisa DiPonio, Joanne's attorney, was copied on the e-mails. Kerr wrote that she had just called the office of the dean of the law school and spoke about Katherine. DiPonio responded by suggesting that someone make another call to the law school, stating, "I want them to pay professionally for this as well as monetarily." DiPonio E-mail, Ex. K to Kerr Decl., dkt. no. 269–1, at 3. Kerr then relayed that she had told someone in the dean's office that Katherine had used Northwestern's letterhead to make a false statement to a court. In a subsequent e-mail, Wrigley wrote that she had left messages with the deans of both Northwestern's law school and business school, where Bernard also teaches. She also

4

stated that she planned to submit an ethics report to the university describing Katherine's actions.

In response, Kerr sent an e-mail to which she attached a letter addressed to the dean of the law school. The letter quoted a passage from Katherine's letter to the New York state court judge in which Katherine stated that the judge in the Colorado case had authorized Kerr to investigate the conduct of Esaun Pinto. Kerr wrote in her letter to the dean that this claim was "100% false" and "completely false." Kerr Letter, Ex. K to Kerr Decl., dkt. no. 269–1, at 7. The letter was written on Kerr's professional letterhead and included her signature.

Later that day, Wrigley submitted to Northwestern the ethics report she had mentioned in her e-mail and attached Kerr's letter as supporting evidence. The platform for submitting the report allowed Wrigley to write a description of the attached documents. In describing Kerr's letter, Wrigley wrote, "Professor from your school using your letterhead to slander people and fight a personal case." Ethics Report, Kerr's Ex. H, dkt. no. 270–8, at 2.

In January 2017, Katherine filed the present lawsuit against Wrigley, Kerr, Cohenson, and the Raphan law firm, alleging a range of tortious conduct including defamation, intentional infliction of emotional distress, false light, publication of private facts, intrusion upon seclusion, interference with contractual relations, and civil conspiracy. The defendants moved to dismiss Katherine's claims, and the Court granted the motion in part. *See Black v. Wrigley*, No. 17 C 101, 2017 WL 8186996 (N.D. Ill. Dec. 8, 2017). The following claims remain against all four defendants: defamation, false light, aiding and abetting defamation, and civil conspiracy. In addition,

there remains a claim against Wrigley for intentional infliction of emotional distress and a claim against Raphan, P.C. under a theory of respondeat superior.  The defendants have moved for summary judgment.

### Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).  To withstand summary judgment, the non-moving party must "present specific facts establishing a material issue for trial."  *Id.*  Although the Court draws all reasonable inferences in favor of the non-moving party, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Coleman v. City of Peoria*, No. 18-1742, 2019 WL 2240575 (7th Cir. May 24, 2019).

### A.  False light claims

In her response brief, Katherine has agreed to voluntarily dismiss her false light claims.  The Court therefore dismisses count 6 with prejudice.

### B.  Claims against Kerr

In her remaining claims against Kerr, Katherine alleges defamation, aiding and abetting defamation, and civil conspiracy.  Because the claims for aiding and abetting defamation, as well as those for civil conspiracy, depend on the tortious conduct of another defendant, the Court will reserve discussion of those claims until the end of this opinion.

A claim for defamation under Illinois law requires the plaintiff to show "that the defendant made a false statement about the plaintiff, that the defendant made an

6

unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). Among the categories of statements that constitute defamation per se—meaning defamation whose harm is "obvious and apparent on its face"—are "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Id.* at 491–2, 917 N.E.2d at 459. Katherine has not alleged "special damages," i.e. "actual damages of a pecuniary nature." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 390, 882 N.E.2d 1011, 1018 (2008)). To withstand summary judgment, therefore, she must point to evidence from which a reasonable jury could find that Kerr's statement was per se defamatory. *See Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008).

Kerr argues that she is entitled to summary judgment because her allegedly defamatory statements are subject to an innocent construction and are substantially true. She also contends that no reasonable jury could find that Katherine was harmed by the alleged defamation and that the statements are protected by the litigation privilege. The Court considers each of these arguments in turn.

### 1. Innocent construction

Under Illinois law, "a statement that is reasonably capable of an innocent construction is not *per se* defamatory." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). This issue is appropriately decided at summary judgment because "the meaning of a statement is not a fact for the jury to find, but a question of law to be resolved by the court." *Id.* (internal quotation marks omitted). Kerr argues that her statement is capable of an innocent construction—namely, that she said only that Katherine's statement in

her letter to the New York court was false, not that it was a lie.

This distinction is immaterial. Even if it were reasonable to construe Kerr's letter as accusing Katherine of an unintentional or reckless falsehood, a reasonable jury could nonetheless find that this statement amounts to per se defamation. Recall that a statement is defamatory per se if it prejudices the plaintiff in her profession. *Green*, 234 Ill. 2d at 492, 917 N.E.2d at 459. In its ruling on the motions to dismiss, the Court noted that "allegations that a law professor lied to a court could lead to unemployment in a profession whose role includes training future attorneys on proper conduct in court proceedings." *Black*, 2017 WL 8186996, at *10 (internal quotation marks omitted). A jury could reasonably find that an allegation that a law professor made false statements to a court—whether those statements were intentional or merely reckless or negligent— caused prejudice to the professor's reputation. Indeed, a jury could conclude that Kerr and Wrigley's primary purpose in submitting the ethics complaint was to prejudice Katherine in the eyes of her employer. *See, e.g.*, Kerr E-mail to Wrigley, Katherine's Ex. 28C, dkt. no. 310-28, at 1 ("I think the letter itself will be incriminating enough."); *see also Tuite v. Corbitt*, 224 Ill. 2d 490, 510, 866 N.E.2d 114, 126 (2006) (noting that in applying the innocent construction rule, courts must interpret the terms in the allegedly defamatory statement "according to the idea that they were intended to convey to the reasonable reader."). The Court therefore concludes that Kerr's allegedly defamatory statement cannot reasonably be given an innocent construction that would entitle Kerr to summary judgment.

### 2. Substantial truth

Kerr next argues that summary judgment is appropriate because her allegation

that Katherine made a false statement in her letter to the New York court is substantially true. Under Illinois law, substantial truth is a defense to defamation. *Hardiman v. Aslam*, 2019 IL App (1st) 173196, ¶ 7, 2019 WL 938643, at *2. To be substantially true, a statement need not be accurate in every detail as long as the "gist" or "sting" of the statement is true. *Id*. Black wrote to the New York judge that the Denver probate court had authorized Kerr to investigate Pinto. Kerr argues that no reasonable jury could find that the Denver probate court had authorized her to investigate Pinto and that she is therefore entitled to summary judgment.

Katherine points to the transcript of a hearing in the Denver probate court on April 2, 2015. At the hearing, Bernard's attorney raised concerns about making Pinto the representative payee of certain trust funds. The attorney stated that when Pinto previously served as the representative payee for Joanne's Social Security payments, he had improperly withdrawn funds. The attorney also stated that "Kerr will be provided all that information so she can also from a forensic accounting perspective see where everything went, what the concerns and issues were." Tr. of Apr. 2, 2015 Status Hearing, Katherine's Ex. 20, dkt. no. 310–20, at 29:16–19. Pinto then expressly agreed to provide a full accounting to Kerr. After the hearing, the judge entered an order requiring Pinto to "provide a complete accounting with documentation of all funds that were held under his control to Ms. Kerr." Status Conference Order, Katherine's Ex. 21, dkt. no. 310-21, at 3.

A reasonable jury could infer from this evidence that the Denver probate court authorized Kerr to investigate Pinto. Although Kerr points to evidence, including her retention letter from Young, suggesting that she was originally retained for the purpose

of investigating Bernard, this evidence at most creates a factual dispute that is not appropriately decided at the summary judgment stage.

### 3. Harm caused by the alleged defamation

Kerr next argues that she is entitled to summary judgment on the defamation claim because Katherine has not introduced evidence from which a reasonable jury could find that the alleged defamation caused an injury. Kerr emphasizes that she published the letter only to the recipients of her e-mail—meaning Wrigley and Cohenson, among several others—and not to Katherine's employer. But because Katherine has pointed to evidence from which a reasonable jury could find that Kerr committed defamation per se, Katherine is relieved of her obligation to prove actual damages. *Green*, 234 Ill. 2d at 495, 917 N.E.2d at 461; *see also Bd. of Forensic Document Examiners, Inc. v. Am. Bar. Ass'n*, 922 F.3d 827, 831–32 (7th Cir. 2019). The fact that Kerr sent her letter to a third party, even though that third party was not Katherine's employer, is sufficient to preclude summary judgment on this basis. *See, e.g.*, *Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009) ("In the law of defamation, the word 'published' just means that the defamatory statement was made to someone other than the plaintiff.").

### 4. Litigation privilege

Kerr also argues that the litigation privilege shields her from liability. The Court considered and rejected a similar argument based on the litigation privilege in its ruling on the motion to dismiss. *See Black*, 2017 WL 8186996, at *5. The Court noted that the allegedly defamatory communications were made to Northwestern, which was not a participant in the litigation, and that for this reason the litigation privilege did not cover

the communications.

Kerr's argument in her current motion fares no better. Her publication of the letter differs from Wrigley's publication in that Kerr e-mailed her letter only to individuals with at least some connection to the litigation over Joanne's guardianship, rather than to an unrelated third party. But a jury could reasonably infer that Kerr intended for one of the letter's recipients to send it to the law school. The e-mail records show Kerr and Wrigley discussing their plans to communicate with the law school, and Kerr wrote in the e-mail to which she attached the letter, "Here is my letter that I plan to send to Northwestern." Kerr E-mail, Ex. K to Kerr Decl., dkt. no. 269–1, at 1. As the Court previously ruled, evidence that Kerr e-mailed the letter with the knowledge that someone would send it along to Northwestern "is sufficient to satisfy the publication element for defamation claims against Kerr based on statements contained in the letter." *Black*, 2017 WL 8186996, at *7. Although Kerr alleges that she did not intend for the letter to be sent, a jury could reasonably disbelieve this testimony. She therefore is not entitled to summary judgment.

## C. Claims against Wrigley

Katherine alleges that Wrigley committed intentional infliction of emotion distress, defamation, aiding and abetting defamation, and civil conspiracy.

### 1. Intentional infliction of emotional distress

A claim for intentional infliction of emotional distress under Illinois law has three elements:

> First, the conduct involved must be truly extreme and outrageous.
> Second, the actor must either intend that his conduct inflict severe
> emotional distress or know that there is at least a high probability that his
> conduct will cause severe emotional distress. Third, the conduct must in

11

fact cause severe emotional distress.

*Schweihs v. Chase Home Fin.*, 2016 IL 120041, ¶ 50, 77 N.E.3d 50, 63. Wrigley argues that she is entitled to summary judgment on Katherine's claim of intentional infliction of emotional distress for two reasons: first, because no reasonable jury could find that her conduct was extreme and outrageous, and second, because Katherine has not pointed to evidence from which a jury could find that Wrigley's conduct caused her harm.

### a.  Extreme and outrageous conduct

Liability for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* For this reason, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Id.*

Katherine points to three instances of allegedly extreme and outrageous conduct. First, she testified that Wrigley told her that if she (Katherine) continued to provide evidence, "it will be bad for you, you need a sex change operation, I will arrange one for you, you like it or not." Katherine Dep., Kerr's Ex. 3, dkt. no. 267–3, at 243:4–7. Katherine testified that she interpreted this as a threat to sexually assault her.

This remark, which Wrigley denies making, is undoubtedly tasteless and offensive, but it does not rise to the level of extreme and outrageous conduct, at least not by itself. As the Illinois Supreme Court explained in *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806 (1988), "[t]hreats . . . are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out. . . ." *Id.* at 87, 533 N.E.2d at 809. Even if a jury could reasonably conclude that Kerr's statement was a threat, rather than an insult, there is no evidence to suggest that

Katherine had reason to believe that Wrigley could carry out that threat.  Wrigley's alleged statement is therefore insufficiently extreme to allow Katherine to recover for intentional infliction of emotional distress.

Second, Katherine contends that Wrigley threatened her with burglary.  She points to e-mails and phone calls from Wrigley regarding jewelry and other property that Wrigley claimed belonged to Joanne.  In an e-mail to Bernard, Wrigley wrote that she and Pinto planned to retrieve some of Joanne's things.  Katherine emphasizes Wrigley's remark that "if I don't hear from you within 48 hours I will just continue on my own timeline."  Kerr E-mail to Bernard, Katherine's Ex. 53, dkt. no. 310–53, at 2.

No reasonable jury could conclude, based on this evidence, that this amounted by a threat by Wrigley to burglarize Katherine's home.  In context of the e-mail, it is clear that Wrigley was attempting to coordinate dates for retrieving Joanne's property.  For example, Wrigley wrote, "I can come for a few of her things and a general discussion the weekend of Nov. 6th.  Better dates would be Nov. 12, 13, or 14."  *Id.*  Nothing in the e-mail supports a reasonable inference that Wrigley was threatening to burglarize Katherine.

Third, Katherine contends that Wrigley threatened to file a false report to cause Katherine to lose custody of her children.  Katherine stated in a sworn declaration that Wrigley approached her in the airport following a hearing in the Denver probate court case and stated that if Katherine opposed her effort to become Joanne's guardian, "she would file a false police report and a false report with child protective services about child abuse, and my children would be taken away from me."  Katherine Decl., Katherine's Ex. 1, dkt. no. 310–1, at 3.  Katherine further stated, in an affidavit submitted

13

to the New York state court, that Wrigley said she would use her "contacts with Chicago's child protective services to remove [Katherine's] small children from home pending investigation."  Katherine Aff., Katherine's Ex. 4, dkt. no. 310–4, ¶ 75.

Unlike Wrigley's other alleged statements, this one is sufficient to allow Katherine's claim to withstand summary judgment.  Katherine alleges that Wrigley's threat was credible because she had experience in the field of child protection.  As the Court noted in its ruling on the motions to dismiss, Wrigley's "attempts to add credibility to her objectively deplorable threats"—that is, by citing her contacts with a child protective services agency—"would allow a reasonable jury to find her conduct extreme and outrageous."  *Black*, 2017 WL 8186996, at *11.  Katherine's anticipated testimony regarding Wrigley's conduct therefore preclude summary judgment on the claim for intentional infliction of emotional distress.

### b.    Resultant harm

Wrigley argues that Katherine has not introduced sufficient evidence to permit a reasonable jury to find that she was harmed by Wrigley's allegedly outrageous conduct. To withstand summary judgment, Katherine must point to evidence that the distress inflicted was "so severe that no reasonable [person] could be expected to endure it." *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155, 713 N.E.2d 679, 684 (1999).

Katherine relies on the report of Dr. Robert Galatzer-Levy, a psychiatrist who evaluated Katherine.  Dr. Galatzer-Levy stated that Katherine experiences severe psychological symptoms as a result of Wrigley's conduct.  In his report, he identified Katherine's fears relating to the loss of her children as a key feature of her psychological

14

disorders.  A reasonable jury could infer from this evidence that Wrigley's conduct caused Katherine psychological distress that was sufficiently severe to permit recovery for intentional infliction of emotional distress.  Thus Wrigley is not entitled to summary judgment on this basis.

### 2.    Defamation

Wrigley next argues that she is entitled to summary judgment on Katherine's defamation claim.  At issue are two allegedly defamatory statements in the ethics report Wrigley submitted to Northwestern.  First, in describing the letter Katherine wrote to the New York judge, Wrigley wrote that Katherine had used Northwestern's "letterhead to slander people and fight a personal case."  Ethics Report, Kerr's Ex. H, dkt. no. 270-8, at 2.  Second, Wrigley attached Kerr's letter, which included the statement (discussed above) that Katherine had made an allegation to the New York court that was "100% false."  Kerr Letter, Ex. K to Kerr Decl., dkt. no. 269–1, at 7.  Wrigley argues that she is entitled to summary judgment on Katherine's defamation claim because these statements are substantially true.  Alternatively, she argues that she reasonably relied on Kerr's expertise in preparing her letter and that the submission of the ethics report is protected by a qualified privilege.

### a.    "Slander" remark

Wrigley argues that her statement that Katherine used Northwestern letterhead to slander people cannot be defamatory because it is substantially true.  As the Court previously discussed, under Illinois law, a defendant may defeat a defamation claim "by showing that the statement, although not technically true in every respect, was substantially true."  *Global Relief Found., Inc. v. N.Y. Times Co.*, 390 F.3d 973, 982 (7th

15

Cir. 2004).  This standard requires the defendant to "show the truth of the 'gist' or 'sting' of the defamatory material."  *Id.*

Wrigley contends that no reasonable jury could conclude that her allegation of slander is not substantially true.  Specifically, she points to Katherine's repeated references to Esaun Pinto as a "convicted felon" in the letter to the New York judge.  It is undisputed that in 2009 Pinto was charged with unlawfully conveying government records in violation of 18 U.S.C. § 641.  Because the value of the property Pinto was charged with conveying was less than $1,000, the charge carried a maximum possible penalty of one year in prison.  Under 18 U.S.C. § 3559(a), therefore, the offense with which Pinto was charged and to which he pled guilty was a class A misdemeanor, not a felony.

In response, Katherine argues that accusation that she committed slander could not be substantially true because the letter she wrote was directed to a court and submitted under seal, and thus her statements to the judge were privileged.  *See, e.g.*, *MacGregor v. Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007) ("Illinois like other states recognizes an absolute privilege for statements in testimony or pleadings in a judicial proceeding.").  Wrigley argues that her accusation is nonetheless substantially true, contending that Katherine committed slander under the ordinary meaning of the term even if her statement did not legally constitute slander in light of the absolute privilege.

The Court concludes that summary judgment is inappropriate because a reasonable jury could find that Wrigley's allegation of slander was not substantially true. That is, a jury could reasonably conclude that a statement submitted to a court as evidence in litigation and filed under seal does not amount to slander, i.e. commission of

an actionable tort. As mentioned above, statements made in testimony or other submissions in a judicial proceeding are absolutely privileged. *Id.* at 791. "Slander" itself is a legal term that refers to a particular type of defamation. *Slander*, Black's Law Dictionary (11th ed. 2019); *see also Slander*, Merriam-Webster, https://www.merriam-webster.com/dictionary/slander (last visited June 11, 2019). On its ordinary meaning, therefore, slander refers not just to a falsehood but to a certain kind of legally actionable falsehood. If the context in which the statement was made rendered it privileged, a jury could reasonably conclude that the statement did not amount to slander and that Wrigley's statement therefore was not substantially true.

### b. Statement in the Kerr letter

Wrigley next argues that she is entitled to summary judgment because the statement in Kerr's letter—that Katherine falsely stated to the New York judge that Kerr had been authorized to investigate Pinto—is substantially true. Wrigley incorporates Kerr's arguments on this point. As the Court has already discussed, however, a reasonable jury could find that this allegation is not substantially true, and thus summary judgment is inappropriate.

Separately, Wrigley argues that she cannot be held liable for the statements in Kerr's letter because she reasonably relied on Kerr's expertise. She notes that under Illinois law, a plaintiff alleging defamation must show "that the defendant acted negligently in making the defamatory statement." *Dawson v. N.Y. Life Ins. Co.*, 135 F.3d 1158, 1162 (7th Cir. 1998); *see also Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 26, 19 N.E.3d 1165, 1175 ("In general, where the allegedly defamed person is a private individual, she need only demonstrate that the defendant was

17

negligent in its publication of the alleged defamatory falsehood.").  Wrigley would therefore be entitled to summary judgment if no reasonable jury could find that she did not reasonably believe that Kerr's allegation was true.

This argument is unavailing, however, because the evidence permits a reasonable inference that Wrigley was at least negligent in assuming the truth of Kerr's allegations.  Wrigley was present in court at the New York state court hearing during which the judge approved the proposal for Kerr to investigate Pinto's activities.  Wrigley has not explained why Kerr's expertise as an accountant excuses Wrigley's publication of a statement of whose claimed falsity she had first-hand knowledge.  A jury could reasonably conclude that Wrigley's alleged reliance on Kerr's characterization was at least negligent.

### c.    Qualified privilege

Wrigley next argues that the statements in her ethics report are subject to a qualified privilege.  "Where a qualified privilege exists, a statement that might otherwise be considered defamatory is protected due to the circumstances under or occasion on which it was made." *Ladao v. Faits*, 2019 IL App (1st) 180610, ¶ 33, 2019 WL 1856994, at *6.  The purpose of a qualified privilege is to protect "honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Id.* (quoting *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 156 Ill. 2d 16, 24, 619 N.E.2d 129, 132 (1993)).  If a qualified privilege applies, the plaintiff must show that the defendant abused the privilege; that is, she bears the burden of proving that the defendant acted not just negligently, but intentionally or recklessly.  *Id.*

Regardless of whether Wrigley's report is covered by a qualified privilege, she is

not entitled to summary judgment.  A reasonable jury could find that she abused the privilege.  As the Court previously noted, the evidence permits a reasonable inference that Wrigley had first-hand knowledge that the New York state court had authorized Kerr to investigate Pinto.  This fact in turn supports a reasonable inference that Wrigley knew the statement in Kerr's letter was false or at least consciously disregarded the risk of its falsity.

Because a jury could reasonably conclude that Wrigley acted knowingly or recklessly, the Court need not decide whether the qualified privilege applies in this context.  The parties have not identified any case that clearly establishes whether an ethics report to a private university is covered by the privilege.  The closest case the Court has discovered is *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, 987 N.E.2d 864, in which the Illinois Appellate Court applied the qualified privilege to allegedly defamatory statements made in a research misconduct proceeding at Northwestern University.  *Id.* ¶ 85, 987 N.E.2d at 887.  But because the parties failed to discuss *Mauvais-Jarvis* or other pertinent cases in their briefs, the Court reserves decision on whether the qualified privilege doctrine raises Katherine's burden of proof in this case. The parties should focus their attention on finding relevant caselaw regarding the applicability of qualified privilege in this or a similar context.

**D.    Claims against Cohenson and Brian A. Raphan, P.C.**

Cohenson, Wrigley's attorney in the guardianship proceedings, argues that she is entitled to summary judgment because the evidence does not permit a reasonable inference that she defamed Katherine.  Katherine's sole allegation of defamation against Cohenson relates to a phone call Cohenson had with Schulte, the assistant to the dean

19

of the law school. Katherine contends that Cohenson repeated the allegedly defamatory statement in Kerr's letter—namely, that Katherine made a false statement to the New York court about Kerr's investigative responsibilities.

The Court concludes that Katherine has not pointed to admissible evidence from which a jury could reasonably infer that Cohenson made any defamatory statements in her conversation with Schulte. Cohenson testified in her deposition that the two spoke only about the use of Northwestern's letterhead, not about any false statements in the letter itself. She characterized the conversation in the same way in an affidavit submitted to the New York state court.

Katherine admits that "[p]recisely what Cohenson said to Katherine Schulte is unknown." Katherine's Resp. Br., dkt. no. 307, at 24. She seeks to rely on inferences from the fact that Cohenson elsewhere admitted that she believed that Katherine's letter to the court contained false statements. But these admissions do not support an inference that Cohenson relayed that opinion to Schulte. Katherine also testified that she remembered that Schulte told her "that the letter was not true or the letter wasn't accurate or it was inappropriate, something like that." Katherine Dep., Kerr's Ex. 3, dkt. no. 267–3, at 378:20–379:5. But Katherine's testimony recounting Schulte's statements about what Cohenson told her is hearsay not within any exception, and the Court may not consider it at summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

Cohenson's deposition testimony and her roughly contemporaneous written statements, both of which indicate that she said to Schulte only that a professor had used Northwestern letterhead in personal litigation, are thus effectively unrebutted.

20

Because Katherine's defamation claim against Cohenson relies on unsubstantiated speculation about what they discussed, she cannot withstand summary judgment. *See Coleman*, 2019 WL 2240575, at *6.

Katherine's sole claim against the Raphan law firm is premised on the doctrine respondeat superior. Raphan, P.C. is therefore entitled to summary judgment on the defamation claim as well. *See, e.g.*, *Carroll v. Cmty. Health Care Clinic, Inc.*, 2017 IL App (4th) 150847, ¶ 37, 81 N.E.3d 122, 130 ("[W]here the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty.").

## E.    Aiding and abetting defamation

Under Illinois law, a plaintiff alleging that a defendant aided and abetted a tortious injury must show that "(1) the party whom the defendant aid[ed] performed a wrongful act causing an injury; (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). "[A]iding and abetting is a theory for holding the person who aids and abets liable for the tort itself. . . ." *Id.*

### 1.    Kerr and Wrigley

Katherine has introduced evidence from which a jury could reasonably infer that Kerr and Wrigley aided and abetted each other's allegedly tortious conduct. Kerr and Wrigley first argue that there was no underlying wrongful act that would give rise to accomplice liability. For the reasons explained above, however, a jury could reasonably conclude that both Kerr and Wrigley defamed Katherine. Katherine has therefore satisfied her burden to point to evidence that a party committed a wrongful act causing an injury.

Kerr and Wrigley next contend that there is no evidence that they were aware of their respective roles in tortious or illegal activity. But the e-mails Kerr and Wrigley sent on January 8, 2016 support a reasonable inference that they knowingly coordinated their efforts to contact Katherine's employer to harm her professionally. For example, Kerr and Wrigley shared information about how and when they planned to contact the dean of Northwestern law school. And Kerr wrote the allegedly defamatory letter that Wrigley ultimately uploaded along with her ethics report to the university. A jury could reasonably conclude that Kerr's conduct in preparing the letter and sending it to Wrigley knowingly and substantially assisted Wrigley's alleged defamation and that Wrigley assisted Kerr's alleged defamation by submitting the letter Kerr wrote.

Because a jury could reasonably infer based on this conduct that both Kerr and Wrigley knowingly and substantially assisted the other's tortious actions, they are not entitled to summary judgment on the aiding and abetting claims against them.

### 2. Cohenson

Katherine has not pointed to evidence, however, to support a reasonable inference that Cohenson aided and abetted wrongdoing by Kerr or Wrigley. Katherine argues that Cohenson may be liable as an accomplice because she circulated Katherine's letter knowing that it would assist Kerr or Wrigley's alleged defamation. But although Cohenson was the first person to contact Northwestern in connection with Katherine's letter, there is no evidence that in so doing she defamed Katherine. The fact that Cohenson was included on e-mails in which Kerr and Wrigley discussed their subsequent plans to contact Northwestern does not support an inference that Cohenson substantially assisted those efforts, as she was merely a recipient of their messages.

22

To the contrary, the record contains no evidence that Cohenson was involved with any subsequent communications with Northwestern after she spoke with Schulte. Katherine's claim of aiding and abetting against Cohenson therefore rests on speculation that is insufficient at the summary judgment stage. *See Coleman*, 2019 WL 2240575, at *6.

Because Katherine has not introduced evidence from which a reasonable jury could find that Cohenson knowingly and substantially assisted Kerr or Wrigley's allegedly tortious conduct, she is entitled to summary judgment on the claim of aiding and abetting defamation.

## F. Civil conspiracy claims

Lastly, Katherine alleges that the defendants participated in a civil conspiracy. A plaintiff alleging civil conspiracy must prove an agreement by "two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (1999). "The civil conspiracy theory has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act." *Id.* The plaintiff must show that a tortious act was committed in furtherance of the agreement. *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927, 921 N.E.2d 67, 78 (2010).

The analysis of this claim is largely the same as the foregoing discussion of aiding and abetting defamation. Kerr and Wrigley contend that they are entitled to summary judgment on the civil conspiracy claim because there was no tortious conduct. As with the claims for aiding and abetting, however, this argument is unavailing because

23

a reasonable jury could find that tortious conduct occurred. And, as discussed above, the e-mail records from January 8, 2016 in which Kerr and Wrigley shared information about their plans to contact the law school amply support an inference that they agreed to make the allegedly defamatory statements.[2]

Cohenson, by contrast, is entitled to summary judgment on the civil conspiracy claim. Cohenson's participation in the efforts to contact the law school was much more limited than that of Kerr or Wrigley. Katherine argues that a reasonable jury could infer that Cohenson agreed to engage in tortious conduct because she was the first of the defendants to call the law school in connection with Katherine's letter to the New York court. But as the Court has already discussed, Katherine has not introduced sufficient evidence to permit a reasonable inference that this call was itself defamatory. And unlike Kerr or Wrigley, Cohenson apparently did not participate in the e-mail conversation about the ongoing efforts to contact the law school. In essence, Katherine asks the Court to assume without evidence that a jury could find that Cohenson made an agreement with others to defame her. Mere speculation, however, is not sufficient, *see Coleman*, 2019 WL 2240575, at *6, and the Court concludes that Cohenson is therefore entitled to summary judgment on the civil conspiracy claim.

## Conclusion

For the foregoing reasons, the Court grants defendants Melissa Cohenson and Brian A. Raphan, P.C.'s motion for summary judgment on all of the claims against them [dkt. no. 261]. The Court grants defendants Wrigley and Kerr's motions for summary

---

[2] If the case proceeds to trial, the jury will be instructed that there cannot be double recovery for the same injury under a theory of civil conspiracy. *See Cameron v. City of Chicago*, No. 16 C 8347, 2017 WL 342474, at *5 (N.D. Ill. Aug. 9, 2017).

judgment [dkt. nos. 262, 263] as to count 6, plaintiff's false light claim, but otherwise denies those defendants' motions. Counsel should appear as scheduled for the June 12, 2019 status hearing in order to discuss the final pretrial order, the final pretrial conference, and the trial.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 11, 2019