IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KATHERINE BLACK**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17- cv- 00101 |
| | ) | |
| | ) | Honorable Matthew F. Kennelly |
| **CHERIE WRIGLEY,** | ) | |
| **MELISSA COHENSON,** | ) | |
| **BRIAN A. RAPHAN, P.C.,** and | ) | |
| **PAMELA KERR,** | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' JOINT PROFFERED
## EVIDENCE RELATING TO BERNARD BLACK

The Court asked the defendants Cherie Wrigley and Pamela Kerr ("Defendants") to submit a proffer regarding evidence Defendants want to introduce "about Mr. [Bernard] Black" relating to evidence to the issues of liability and damages in this case. To be clear, Defendants seek to put in evidence about the Denver Probate Court ("DPC") proceedings, the subject of which was Mr. Black's conduct. Relevance must be assessed in relation to the claims and defenses in the case. Plaintiff Katherine Litvak Black ("Plaintiff") sues Kerr for defamation based on one statement Kerr made in a letter (**Ex. A** hereto) she addressed (but did not send) to Plaintiff's employer, Northwestern University Law School, in which Kerr characterized (as 100% false) certain statements Plaintiff made in a letter Plaintiff wrote (on Northwestern letterhead) to New York state court Judge Aliotta. **Ex. B** hereto. Plaintiff's letter to Judge Aliotta is the centerpiece of this litigation, *i.e.*, it is what sets off the events that led to this suit. In it, Plaintiff largely tries to minimize the impact of rulings the DPC made against Bernard by: (a) suggesting

that the rulings were the product of misconduct by Wrigley and others, and (b) raising the possibility that another individual (Esaun Pinto) was responsible for Joanne Black's financial losses.

Plaintiff sues Wrigley for defamation for publishing Kerr's letter to Plaintiff's employer (through an online portal designed to receive ethics complaints) and for providing her own separate commentary regarding what she perceived to be ("slanderous") inaccuracies in Plaintiff's letter to Judge Alliota. Plaintiff also sues Wrigley for intentional infliction of emotional distress ("IIED") based on alleged threats Wrigley made regarding Plaintiff's children. An element of this claim is that Plaintiff suffered "severe or extreme emotional distress." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89-90 (1976).

Regarding the defamation claims, Plaintiff must show to the jury that the Kerr and Wrigley statements were "in fact understood to be defamatory." *Tuite v. Corbitt*, 224 Ill. 2d 490, 509 (2006). Because Plaintiff is seeking presumed damages, Plaintiff must also show that Defendants made the statements with actual malice, *i.e.*, they subjectively knew the statements were false or harbored serious doubts about their truth. *Babb v. Minder*, 806 F.2d 749, 758 (7th Cir. 1986). In response, Defendants intend to raise a number of defenses including that the statements when considered in context were not understood to be defamatory; even if they contained any inaccuracies, they were substantially true; the statements represented hyperbole or opinion; and, in any event, the Defendants believed the statements to be true and therefore did not make them with actual malice.

In light of these claims and defenses, the Defendants must be able to testify about and introduce evidence of the proceeding in the DPC involving the investigation of and findings against Bernard Black to be able to explain to the jury the basis of their understanding of these proceedings and why they characterized Plaintiff's statements to Judge Aliotta as "100% false" (Kerr) or "slanderous" (Wrigley). In the charts below, Defendants identify specific evidence from the DPC proceeding they intend to introduce and why it bears upon liability and/or damages (See Chart 1). Defendants also include a chart that summarizes the misstatements in Plaintiff's letter to Judge Aliotta. (*See* Chart 2).

| CHART 1 | | | |
|---|---|---|---|
| Dfts' Ex. No. | Description | Liability | Damages |
| 29 | DPC Hearing Transcript, 4/2/2015<br><br>At this hearing the scope of Kerr's forensic review (to which the parties stipulated) is addressed. | The transcript demonstrates: a) substantial truth that Kerr was not appointed by the court and was not ordered to investigate Esaun Pinto but rather to investigate the Conservator, Bernard Black; b) lack of actual malice by defendants; c) Defendants' statements were non-actionable hyperbole or opinion. | Plaintiff attended this hearing where her husband was removed from his role as conservator because of allegations of financial impropriety. This is relevant as an intervening cause of Plaintiff's severe and extreme mental distress. |
| 30 | DPC Order, 4/2/2015<br><br>This order memorializes the DPC's order following the hearing above | Same as above | Same as above |
| 36 | DPC Hearing Transcript, 8/5/2015<br><br>At this hearing, Plaintiff testifies on behalf of her husband in the | Same as above | Rebuts Plaintiff's claim that Wrigley's statements in April 2015 caused Plaintiff sever and extreme mental distress. |

4

| | | | |
|---|---|---|---|
| | DPC. In her testimony, she states: "Let me honestly tell you Ms. Wrigley is not an important part of my life." | | |
| 37 | DPC Order, 8/6/15<br><br>This is the first order ruling Bernard Black breached his fiduciary duty and recommends he be removed as a fiduciary for Joanne Black in all jurisdictions. There is no mention of Esaun Pinto. | Same as above | This is relevant as an intervening cause of Plaintiff's severe and extreme mental distress. |
| 40 | DPC Order, 9/28/15<br><br>DPC finds Bernard Black breached his fiduciary duties and committed civil theft and assesses treble damages against him in excess of $4.5 million. | Same as above<br><br>This Order also forms the basis of Plaintiff and her husband's scorched earth litigation strategy. After this Order was issued Plaintiff and her husband filed causes of action against every person named in therein, including Joanne Black (and her lawyer Ira Salzman), Anthony Dain, Cherie Wrigley (and her legal counsel Melissa Cohenson and Brian A. Raphan, P.C.), Lisa DiPonio, Gayle Young, and Pamela Kerr. This Order describes the efforts of Kerr and Wrigley took to uncover Bernard and Plaintiff's scheme, and accordingly serves is the likely motivation for the instant | This is relevant as an intervening cause of Plaintiff's severe and extreme mental distress. |

5

| | | cause of action. | |
|---|---|---|---|
| 55 | DPC Order, 2/25/16<br><br>This order provides a summary of significant litigation events that occurred after Plaintiff sent her letter to Judge Aliotta on 1/7/2016 | | Same as above |
| 66 | DPC Order 1/4/18<br><br>The court finds the conduct of Bernard Black "shocking to the conscience" and the conduct of Plaintiff "shocking" because "together their actions only serve to dramatically increase attorney fees and costs and otherwise reduce or eliminate the funds that are due to Joanne Black apparently for no | | Bears upon other causes of Plaintiff's reputational injury. |

6

| | | | |
|---|---|---|---|
| | reason." | | |
| 74 | Colorado Appellate Court Order 1/25/18<br><br>Upholds the DPC's order of 9/25/15 (Def. Ex. 40) | Validates 9/28/15 order and thereby demonstrates: a) substantial truth that Kerr was not appointed by the court and was not ordered to investigate Esaun Pinto but rather to investigate the Conservator, Bernard Black; b) Defendants' statements were non-actionable hyperbole or opinion. | This is relevant as an intervening cause of Plaintiff's severe and extreme mental distress. |
| 70 | Colorado Supreme Court Order 5/20/19<br><br>The Supreme Court denies Bernard Black's petition for certiori | Same as above | Same as above |

## CHART 2

**Evidence of Bernard Black Necessary to Wrigley's Substantial Truth Defense
Relating to Plaintiff's Letter Dated 1/7/16 to Judge Aliotta**

| Page | Quote from Katherine Black's 1/7/16 Letter | Evidence Probative of Substantial Truth |
|---|---|---|
| 1 | "Dain, acting as a trustee of the Black family trusts, repeatedly violated his fiduciary duties as trustee to prevent the Black family from hiring legal representation." | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 4/2/15 DPC transcript at 47 (Ex. 29); 4/2/15 DPC Order at ¶6 (Ex. 30); 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 4/2/16 DPC hearing transcript and Order. During the hearing the DPC stated, "I'm not authorizing payment for legal fees at this point. I'm holding it in abeyance |

| | | |
|---|---|---|
| | | pending the results of the accounting and the evidentiary hearing [concerning Bernard Black's misconduct] to determine whether or not it's appropriate." Ex. 29 at 47. Additionally, the Order states that froze assets as a result of the allegations of misconduct against Bernard Black, which were ultimately substantiated: "All other assets related to Ms. Black are frozen, pending final hearing [concerning Bernard Black's alleged misconduct as conservator]." Ex. 30 at ¶6. This directly contradicts Plaintiff's claim that Dain violated his fiduciary duties by obtaining a freeze of the assets and thus is probative of the substantial truth of Wrigley's "slander" comment. Moreover, the 9/28/16 DPC Order explicitly states: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary." Ex. 40 ¶6. This directly contradicts Plaintiff's defamatory statements in her letter concerning breach of fiduciary duty and misconduct by Dain and Wrigley, and thus is probative of the substantial truth of Wrigley's "slander" comment. |
| 2 | "The pattern of Wrigley's and Dain's misconduct includes perjury, suborning of perjury, witness tampering, blackmail, threats to counter-parties, threats to an attorney of the counterparties, illegal withholding of documents, failure to comply with discovery requests in the related proceedings in Colorado; repeated efforts to obtain relief without proper notice or, as in the case in this Court, without any notice at all; repeated false and misleading statements made by an officer of the court (Dain); repeated efforts to persuade courts to act, not only without proper notice but without jurisdiction; bringing Dain and Wrigley as surprise witnesses after Dain repeatedly said they would not testify, and much more." | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 9/28/16 DPC Order that explicitly states: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary." Ex. 40 ¶6. This directly contradicts Plaintiff's defamatory statements in her letter concerning breach of fiduciary duty and misconduct by Dain and Wrigley, and thus is probative of the substantial truth of Wrigley's "slander" comment. |
| 5 | "Dain petitioned this Court and the Colorado court to freeze all Black | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim |

8

| | | |
|---|---|---|
| | family trust assets, again openly stating that the purpose of the asset freeze is to ensure that the Black family does not use any trust money for legal expenses. All of this violates Dain's fiduciary duties to the trust beneficiaries." | that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 4/2/15 DPC transcript at 47 (Ex. 29); 4/2/15 DPC Order at ¶6 (Ex. 30); 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 4/2/16 DPC hearing transcript and Order. During the hearing the DPC stated, "I'm not authorizing payment for legal fees at this point. I'm holding it in abeyance pending the results of the accounting and the evidentiary hearing [concerning Bernard Black's misconduct] to determine whether or not it's appropriate." Ex. 29 at 47. Additionally the Order states that froze assets as a result of the allegations of misconduct against Bernard Black, which were ultimately substantiated: "All other assets related to Ms. Black are frozen, pending final hearing [concerning Bernard Black's alleged misconduct as conservator]." Ex. 30 at ¶6. This directly contradicts Plaintiff's claim that Dain violated his fiduciary duties by obtaining a freeze of the assets and thus is probative of the substantial truth of Wrigley's "slander" comment. Moreover, the 9/28/16 DPC Order explicitly states: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary." Ex. 40 ¶6. This directly contradicts Plaintiff's defamatory statements in her letter concerning breach of fiduciary duty and misconduct by Dain and Wrigley, and thus is probative of the substantial truth of Wrigley's "slander" comment. |
| 5 | "[Dain] breached numerous fiduciary duties while he was at it, including the duty of loyalty, duty of impartiality, duty to defend the trusts in litigation, duty to provide information, duty of confidentiality, and so on." | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 9/28/16 DPC Order that explicitly states: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their |

9

| | | |
|---|---|---|
| | | cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary." Ex. 40 ¶6. This directly contradicts Plaintiff's defamatory statements in her letter concerning breach of fiduciary duty and misconduct by Dain and Wrigley, and thus is probative of the substantial truth of Wrigley's "slander" comment. |
| 5 | "Dain's temporary success in Colorado was obtained through his own gross legal violations, combined with his and Wrigley's threats, blackmail, coercion, and outright perjury, in proceedings where neither the trusts nor beneficiaries individually were represented due to Dain's breaches of fiduciary duties." | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 9/28/16 DPC Order that explicitly states: "The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court. Ms. Wrigley, by virtue of her special relationship with Joanne Black and her training, is especially suited to be appointed as guardian over the person of Joanne Black. Mr. Dain was fully justified in his decision to not be added as a signatory to accounts set up by Mr. Black. Mr. Dain is fully qualified to continue to act as a sole trustee or as a co-trustee for any trust naming Joanne Black as a beneficiary." Ex. 40 ¶6. This directly contradicts Plaintiff's defamatory statements in her letter concerning breach of fiduciary duty and misconduct by Dain and Wrigley, and thus is probative of the substantial truth of Wrigley's "slander" comment. |
| 8 | "...Wrigley and Dain personally sought and obtained the freeze on Joanne's trusts! All that Dain and Wrigley need to do is to petition the Colorado court to lift their own freeze on the trusts' assets. Until that happens, the vast bulk of Joanne's money is not accessible to anyone, whether Wrigley is appointed guardian or not." | The following cited portions of the below listed exhibits all contain language that demonstrate the substantial truth of Wrigley's claim that this statement by Plaintiff amounts to "slandering" people as that term is commonly used: 4/2/15 DPC transcript at 47 (Ex. 29); 4/2/15 DPC Order at ¶6 (Ex. 30); 8/6/2015 DPC Order at 1 (Ex. 37); 9/28/15 DPC Order at ¶6 (Ex. 40); 1/25/18 Colorado Appellate Court Order (upholding the 9/28/15 DPC Order) (Ex. 74); 5/20/19 Colorado Supreme Court Order (upholding 9/28/15 DPC Order) (Ex. 70). Of particular importance is the 4/2/16 DPC hearing transcript and Order. During the hearing the DPC stated, "I'm not authorizing payment for legal fees at this point. I'm holding it in abeyance pending the results of the accounting and the evidentiary hearing [concerning Bernard Black's misconduct] to determine whether or not it's appropriate." Ex. 29 at 47. Additionally the Order states that froze assets as a result of the allegations of misconduct against |

| | | |
|---|---|---|
| | | Bernard Black, which were ultimately substantiated: "All other assets related to Ms. Black are frozen, pending final hearing [concerning Bernard Black's alleged misconduct as conservator]." Ex. 30 at ¶6. This directly contradicts Plaintiff's claim that Dain violated his fiduciary duties by obtaining a freeze of the assets and thus is probative of the substantial truth of Wrigley's "slander" comment. Moreover, the 8/6/15 DPC short form order that states finds Bernard Black breached his fiduciary duties and, as a result, immediately freezes the assets "TO PREVENT FURTHER DISSIPATION OF JOANNE BLACK'S ASSETS." |
| 10 | "Wrigley and Bernard Black together conceived a plan to disclaim assets in Renata Black's accounts at Vanguard, which Renata Black had supposedly left directly to Joanne, so that they would flow through Renata Black's estate, with two-thirds of the assets going to Joanne's Supplemental Needs Trust, and one-third to an Issue Trust, principally for Renata Black's grandchildren." | 9.28.15 Order at 8 (Ex. 40) ("There were, however, discussions with Ms. Wrigley regarding the plan and she attempted to assist Mr. Black with obtaining a disclaimer directly from Joanne Black. Ms. Wrigley testified that although Mr. Black did not tell her how he came up with the concept of the disclaimer or what its effect would be, he assured her that he would put the funds received into the SNT with Mr. Dain as trustee, again not explaining the two-third, one-third division."). *Id.* at 4 "Cherie Wrigley also filed an objection which asserted, inter alia, that Mr. Black had not accounted for all of the funds in the POD accounts the PP inherited from Renata Black." *Id* at 13 ("The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court." |
| 11 | "Because Bernard Black did not acquiesce to Wrigley's blackmail, she developed a new scheme. In 2014, with the help of her litigator brother Dain, Wrigley devised a scheme to strip the Black family of their interests in their family trusts, take control over the Black family money, and spend a significant portion of it on herself, and convince Joanne to bequeath to Wrigley and Dain whatever Wrigley failed to spend." | 9.28.15 Order at 8 (Ex. 40) ("There were, however, discussions with Ms. Wrigley regarding the plan and she attempted to assist Mr. Black with obtaining a disclaimer directly from Joanne Black. Ms. Wrigley testified that although Mr. Black did not tell her how he came up with the concept of the disclaimer or what its effect would be, he assured her that he would put the funds received into the SNT with Mr. Dain as trustee, again not explaining the two-third, one-third division."). *Id.* at 4 "Cherie Wrigley also filed an objection which asserted, inter alia, that Mr. Black had not accounted for all of the funds in the POD accounts the PP inherited from Renata Black." *Id* at 13 ("The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court." |
| 12 | "Dain and Wrigley claim to be acting in the interests of Joanne Black, but their efforts have harmed Joanne Black as well, as we will explain in a hearing if we are allowed to have one." | With respect to Dain: DPC 2.25.16 Order at 3-4, 6; DPC 9.28.16 Order at 4-8 (Ex. 40) ("The Court finds none of the actions taken by Mr. Black had anything to do with what Mr. Dain did or did not do and any accusations to the contrary are reprehensible."); 13 ("The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court.") Also limited testimony from Dain stating, essentially, |

11

| | | that he tried to put stolen money back into the SNT for the benefit of Joanne, and tried to protect beneficiaries of the Issue Trust against possession of stolen property. With respect to Wrigley: DPC 9.28.15 Order at 8-9, 13 (Ex. 40) |
|---|---|---|
| 22 | "Dain has breached a litany of fiduciary duties to the beneficiaries of the Black family trusts." | DPC 2.25.16 Order at 3-4 (Ex. 55), 6; DPC 9.28.16 Order at 4-8 (Ex. 40) ("The Court finds none of the actions taken by Mr. Black had anything to do with what Mr. Dain did or did not do and any accusations to the contrary are reprehensible."); 13 ("The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court.") Also limited testimony from Dain stating, essentially, that he tried to put stolen money back into the SNT for the benefit of Joanne, and tried to protect beneficiaries of the Issue Trust against possession of stolen property. |
| 22 | "Wrigley, assisted by a convicted felon Esaun Pinto, embezzled and defrauded Joanne and the Black family." | DPC 2.25.16 Order at 3-4, 6 (Ex. 55); DPC 9.28.16 Order at 4-8 (Ex. 40) ("The Court finds none of the actions taken by Mr. Black had anything to do with what Mr. Dain did or did not do and any accusations to the contrary are reprehensible."); 13 ("The Court, from the evidence before it, finds the actions of Cherie Wrigley and Anthony Dain have solely been for the benefit of their cousin, Joanne Black. Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court.") Also limited testimony from Dain stating, essentially, that he tried to put stolen money back into the SNT for the benefit of Joanne, and tried to protect beneficiaries of the Issue Trust against possession of stolen property. |

Dated: July 12, 2019
       Chicago, Illinois

CHERIE WRIGLEY


By: /Andrew Mancilla
      Andrew Mancilla

Andrew Mancilla
Robert Fantone
Mancilla & Fantone, LLP
260 Madison Avenue, 22nd Floor
New York, New York 10016
Telephone (646) 225-6686
*Attorneys for Defendant Cherie Wrigley*


PAMELA KERR


By: /Steven P. Mandell
      Steven P. Mandell

Steven P. Mandell
Steven L. Baron
Natalie A. Harris
Mandell Menkes LLC
One North Franklin Street
Suite 3600
Chicago, Illinois 60606
Telephone (312) 251-1000

13