IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERINE BLACK, | : |
| Plaintiff, | : |
| | : Case No. 1:17-cv-00101 |
| v. | : |
| | : Honorable Matthew F. Kennelly |
| CHERIE WRIGLEY and PAMELA KERR, | : |
| Defendants. | : |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER F.R.C.P. 59(e)**

Plaintiff, Katherine Black, acting *pro se*, hereby moves this Court, under Federal Rule of Civil Procedure 59(e), to alter or amend the judgment.

The Court awarded Kerr $19,004.97 in costs. Katherine seeks to amend the judgment on the following grounds. First, the Court concluded, simultaneously, that the presence of Katherine's husband in Israel was not proven (and thus awarded Kerr the costs of useless efforts to serve him in Illinois) and that the same presence was proven (and thus awarded Kerr the costs of video-deposing him). But the Schrödinger's husband cannot simultaneously be in Israel and not be in Israel. Since this is a clear error, Katherine is asking the Court to conclude that the husband's presence in Israel was not proven, and therefore award only one set of the fees against Katherine.

Second, in her response to Kerr's motion for costs, Katherine argued that Kerr misled the Court as to the magnitude of her fees: Kerr's lawyers improperly used her insurance company money to bankroll joint defense for all co-defendants, and are now seeking to tax to Katherine the costs attributable to the three out of four parties who never sought taxation of costs. To reimburse only Kerr's own portion of expenses, all of Kerr's stated pre-trial expenses should be divided by

1

four, and all of her trial-time expenses should be divided by two (because two defendants, Cohenson and Raphan, were dismissed before trial).

The Court's final order from 08/03/2020 ("Order") concluded that Katherine did not meet the burden of showing that Kerr bankrolled litigation for her co-defendants, and therefore denied dividing the costs by four. This is a clear error at least with respect to fixed expenses (paid once for all defendants as a group, such as the service of summons). If Kerr paid the entire service of summons fee, which she conceded, then, the rest of co-defendants paid none. There is nothing left for Katherine to prove. Kerr alone (or rather her insurer) bankrolled the expense for the entire team of defendants, and only one-forth of that is attributable to Kerr. QED.

As to the expenses that should have been paid separately by each co-defendant, such as deposition and trial transcripts: Katherine alleged that Kerr paid for her own copies and shared them with Wrigley for free. Kerr could have easily refuted this accusation by providing a copy of Wrigley's receipts, showing that Wrigley paid for her own transcripts. Instead, Kerr misled the Court: she failed produce any evidence showing that she did not share documents with Wrigley, and simply claimed that she paid the amount reported. But this is red herring: the issue is not whether Kerr paid what she said, but whether what Kerr paid is properly attributable to Kerr as taxable costs, i.e., whether Kerr improperly bankrolled Wrigley.

But Katherine had no way of providing evidence that Kerr bankrolled Wrigley's litigation: when Kerr petitioned for taxation of costs, the discovery was already closed. Kerr did not voluntarily turn over relevant documents to the Court or to Katherine. All that Kerr needed to show was the actual receipts paid by her co-defendants. If Wrigley paid for her own transcripts, she obviously did not get them for free from Kerr. But Kerr failed to do so. Indeed, Kerr turned over only one piece of relevant evidence – the letter to the company that generated an absurdly

overpriced poster, and showed that Wrigley did not pay a penny for the poster. This letter is evidence against Kerr's: it shows that Kerr (her insurer) was the defendant paying.

Given that Kerr (1) had access to conclusive evidence of her cost-sharing with co-defendants, (2) failed to turn over that evidence in Reply to Katherine's Response, and instead (3) produced evidence that Kerr in fact bankrolled Wrigley's litigation, the Court can reach only one conclusion – that Kerr indeed bankrolled her co-defendants' litigation, and she is now seeking reimbursement beyond her share. Worse, Kerr is lying to the Court, denying this obvious reality.

Since the Court was dissatisfied that Katherine did not produce better evidence of Kerr's expense sharing, Katherine is asking the Court to order Wrigley to turn over records of costs she actually paid, in each category for which Kerr seeks taxation. If Wrigley fails to turn over such evidence, the Court should conclude that expense sharing indeed occurred, and divide Kerr's demanded costs by four, and/or (2) award Katherine the sanctions against Wrigley, Kerr, and their attorneys, jointly and severally, in the amount of $20,000.

## I. BASES FOR MOTION TO ALTER OR AMEND A JUDGMENT

F.R.C.P. 59(e) allows a party to move to "alter or amend a judgment," and is sometimes employed as a basis for seeking reconsideration. A motion for reconsideration brought under Rule 59(e), may be granted to: (1) accommodate an intervening change in controlling law; (2) account for new evidence not available at trial; or (3) correct a clear error or prevent manifest injustice.

## II. THE COURT SHOULD CANCEL THE AWARD OF EITHER VIDEOTAPING BERNARD'S DEPOSITION OR OF SERVICE IN ILLINOIS; BOTH CANNOT BE AWARDED AT THE SAME TIME

In seeking reimbursement for summons and subpoenas, Kerr sought the costs of serving Katherine's husband, Bernard, in Illinois, even though Kerr knew that he was living in Israel. Katherine objected, and the Court stated:

3

> Even if that was a valid basis for reducing costs (which the Court need not decide), Katherine has not carried her burden of showing that costs were not appropriate for this service. This is because she has not submitted evidence showing that Bernard was living in Israel at that time or that Kerr knew he was living there. Order at 54.

At the same time, Kerr also sought reimbursement for her costs of videotaping Bernard's deposition. The Court concluded:

> The Court… awards costs for the video of the deposition of Bernard. He was on sabbatical in Israel at the time of the deposition, so it was reasonable for Kerr to presume that he might not be within the Court's subpoena power at the time of trial. Order at 57.

That is, the Court concluded that the parties proved that Bernard was living in Israel (and that Kerr knew it) -- and they simultaneously did not prove so. In both cases, Katherine ended up on the losing end of such finding. Katherine asks this Court to make a consistent finding and remove one of the two costs.

Katherine asks to remove the video deposition costs. Kerr submitted no evidence that Bernard lived in Israel – lived at any time, including the time of his deposition. Kerr could have easily done so, but did not. Since Kerr failed to meet her burden, Katherine asks the Court to deny Kerr all costs of Bernard's video depositions. Further, the Court stated that:

> Though Katherine responds that Kerr had no reason to believe that Bernard would not return to Illinois before the trial, the determination of whether a deposition-related cost is necessary must be made in light of the facts known at the time of the deposition. (internal citations omitted). *Id*.

Kerr submitted no evidence showing that she had any reasons to think that Bernard would not return to Illinois before the trial. The burden was on Kerr, and Kerr produced nothing. Since Kerr neither submitted any evidence that Bernard was not in Illinois at the time of his deposition, nor any evidence that Kerr, at the time of the deposition, had reasonable grounds to think that he would not return for trial, the Court should deny her the costs of Bernard's deposition.

In the alternative, the Court should not award Kerr the costs of her attempts to serve

4

Bernard in Illinois. Kerr can get one or the other, not both.

### III. THE COURT SHOULD REDUCE THE AWARD OF TAXABLE COSTS BY 75% DUE TO DEFENDANTS' IMPUTED COST-SHARING

Katherine argued that Kerr should only be entitled to one-fourth of her claimed expenses because Kerr alone (or rather, Kerr's insurer) bankrolled all of defendants' fixed costs. It is irrelevant whether Kerr actually obtained reimbursement from co-defendants or simply gifted her insurer's money to them by paying for everyone without reimbursement. The idea here is the same as mitigation in damages: if you fail to reasonably mitigate your damages, we will award you the damages you would have incurred if you had mitigated properly. Same here. Taxation of costs is granted only for *reasonable* expenses. Kerr's effort to jack up her expenses to defraud her insurer is not reasonable behavior, and the Court should not reward it. The Court should ask how much Kerr would have spent if she reasonably mitigated, i.e., if she had obtained a reasonable reimbursement of all expenses from her co-defendants.

When litigation has multiple defendants and a single fixed fee for all (like service of process), the only reasonable allocation is to pro rata to each defendant, and thus only that portion should be taxable to a losing plaintiff. Any other solution invites gaming and fraud on insurers and plaintiffs: defendants who are not entitled to taxation of costs (like Wrigley) would transfer their costs to those who are entitled (like Kerr), and tax them to plaintiffs, circumventing the rules as to who is entitled to taxation of costs. The Court's Order seems to agree with this uncontroversial principle, but found that Katherine had not provided evidence that the fee was split:

> Katherine contends that all of Kerr's costs for service of process should be divided by four because there were four defendants at the times of service and that she should be taxed only for Kerr's one-fourth share of the expenses. But the invoices Kerr has submitted reflect that she was charged the amounts for the process service fees that she requested. Though Katherine contends that Kerr is seeking to be awarded more than her fair share of the costs, Katherine has not carried her burden of affirmatively showing that is the case. Order at 55.

5

This is a clear error. Kerr *conceded* that she paid the entire fee herself. There is a single fee for the service of summons and subpoenas that defendants had to pay, and Kerr paid it alone. There is nothing left for Katherine to prove. Kerr's own portion of this fee, taxable to Katherine, is ¼ of the total. If Kerr decided not to seek reimbursement from co-defendants, that's Kerr defrauding her insurer, and should be treated as unreasonable (indeed wrongful) failure to mitigate. Katherine should not be penalized for this. Katherine should pay ¼ of awarded services fees, or $203.

The same is true for all other fixed costs paid once by the defense and paid entirely by Kerr's insurer. Such costs, taxable to Katherine per order: appearance fees for court reporters ($1,260), fees for the use of exhibits during depositions ($982.80), and processing fees ($375).

Here again, the Court concluded that prorating the fees common to all defendants might have been reasonable, but Katherine did not prove that these fees were actually split by the parties:

> As with the fees for the service of summons and subpoenas, Katherine contends that the parties shifted all of their costs to Kerr and thus that Kerr is requesting more than her fair share. But she has provided no evidence in support of this contention and thus has not carried her burden to prove that these costs are not appropriate. Order at 58.

This is a clear error for the same reason as discussed above. There is nothing left for Katherine to prove. The costs taxed to Katherine should be reduced by 75%, because there were four co-defendants, and Kerr conceded that she paid the entire fee, even though she was only responsible for a quarter. Thus, Katherine's taxable costs on those items should be $315 (appearance fees for court reporters), $245.7 (exhibits fees), and $93.75 (processing fees).

For these reasons, the same reduction of claimed costs should also apply to costs that each defendant was supposed to incur independently (like transcripts), but instead shared. *Infra* Part IV.

    **IV.**    **COURT SHOULD ORDER WRIGLEY TO TURN OVER CERTIFIED RECORDS OF HER ACTUAL DIRECT PAYMENTS OF ALL COSTS THAT KERR CLAIMED OR IMPLIED WERE NOT SHARED**

The main portion of the taxation-of-costs number comes from Kerr's claimed costs of

6

standard transcripts and other items that each co-defendant had to purchase for herself. Katherine responded that, for items like depositions that defendants ordered, the costs must be divided equally among all defendants. Katherine diplomatically stated that there was a "good chance" that other defendants paid nothing for transcripts, receiving them free from Kerr. Pl.'s Br. in Resp. to Kerr's Mot. for Costs at 21. This was a polite expression of the virtual certainty that Kerr was dumping her co-defendants' costs on her insurer – but Katherine did not have direct evidence.

In response, Kerr did not present any evidence that she did <u>not</u> share transcripts with co-defendants for free. It was easy for Kerr to provide such evidence: all she had to do was turn over receipts for such services paid by her co-defendants directly to service providers before Kerr sought taxation of costs. She did not. Instead, Kerr presented evidence <u>against</u> her position. Kerr submitted a letter she wrote to the supplier of the exorbitantly priced demonstratives, who billed $14,887.52 for two simple posters.[1] As the letter clearly stated, both Wrigley and Kerr were billed half the price of the demonstratives, but Wrigley paid nothing – and yet, the demonstratives were generated. Kerr again was the only one who paid.[2]

Thus, the only evidence that was turned over to the Court as to defendants' bill-sharing is that: (1) Kerr paid all of her co-defendants' joint fixed expenses, and (2) even when a service provider charged each co-defendant separately, only Kerr paid her portion; others got services free.

The Court stated that it refused to reduce the award on the basis of Kerr's bankrolling all defense costs because "Katherine has provided no evidence that Kerr divided the costs of the transcripts with any of the defendants." Order at 61. But Katherine could not provide such evidence

---

[1] The Court agreed with Katherine that those charges were unreasonable and already refused to tax them. Order at 63.
[2] One wonders whether the exorbitant $14,887 for a trivial exhibit was a scheme by Kerr's attorneys to defraud Kerr's insurer: the poster-maker charges twice the normal price, sends half a bill to Kerr and half to Wrigley, knowing that Wrigley will not pay; Kerr's insurer thinks it's paying half of the bill, but in reality, it's paying the normal bill in full.

because when Kerr made her motion, discovery was closed. If the Court thinks such specific evidence is needed, Katherine asks the Court to order Wrigley to turn over all records of actual payments that Wrigley made, prior to Kerr's filing of her motion for costs, for any services for which Kerr is seeking costs. If Wrigley fails to turn over such records, Katherine asks the Court to, at least, divide all such costs by four, and at most, award sanctions against defendants in the amount approximating expected taxation of costs to Katherine.

## V. THE COURT SHOULD IMPOSE REASONABLE SANCTIONS AGAINST DEFENDANTS AND THEIR ATTORNEYS

### A. The Relationship Between "the Wrigley Rate" and Sanctions against Defendants

Katherine's Response asked the Court for an alternative relief: instead of awarding Kerr her prorated portion of all expenses, the Court should tax against Katherine the amount that Wrigley <u>actually paid</u> to Kerr in reimbursement for those same expense items. Clearly, such amount for most or all items is zero. If Kerr did not properly mitigate (did not seek reimbursement from Wrigley), and instead, mislead this Court into thinking that she did (that Wrigley paid her own expenses), then, the Court should choose award Kerr the same reimbursement from Katherine as Kerr was willing to take form Wrigley– zero.

It appears from Order that the Court misunderstood Katherine's argument in Response brief. Katherine did not claim that Wrigley and Kerr had a system where Wrigley would <u>actually</u> reimburse Kerr joint expenses. Wrigley and Kerr's lawyers apparently agreed that Kerr's insurer would simply pay much of Wrigley's litigation costs. This is what Katherine's Response Brief called "the Wrigley rate". If Wrigley was expected to pay zero, so should Katherine.

One way to accomplish the "Wrigley (zero) Rate" of reimbursement is to tax Katherine at a $1/4^{th}$ of the total reimbursable expenses, but grant Katherine sanctions against Kerr and Kerr's lawyers for misleading the Court as to the sharing of expenses. Thus, Katherine seeks sanctions

8

on those grounds. If the sanctions against Kerr and Wrigley are awarded in the amount of the taxable costs attributed to Katherine, then, the net is the "Wrigley Rate", which is zero.

### B. The Court Should Impose Sanctions against Wrigley, Kerr, and their Attorneys for Pervasive Perjury, Discovery Abuse, Misleading the Court, and Other Misconduct
i. <u>Legal Standard</u>

Per Fed. R. Civ. P. 37, a District Court has inherent power to sanction a party who "has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015); *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir.2009). The District Court may impose a wide range of remedies including dismissal and awarding of costs or attorney's fees. See Fed. R. Civ. P. 37(b)(2) and (c). Although Rule 37 requires violation of a judicial order before a court imposes sanctions, "[c]ourts can broadly interpret what constitutes an order for purposes of imposing sanctions" and a formal order is not required. Quela v. Payco-General Amer. Credits, Inc., 2000 WL 656681, at *6 (N.D.Ill. May 18, 2000) (collecting cases).

> The order, or equivalent, serves as notice to a disobedient party that sanctions may be imposed. In this case, although there has been no specific court order, we believe such an order is not required to provide notice that parties must not engage in such abusive litigation practices as coercing witness testimony, lying to the court, and tampering with the integrity of the judicial system. Because all litigants are presumed to know that contumacious conduct of this sort is absolutely unacceptable, we can properly consider the sanctions available under Rule 37. Quela, 2000 WL 656681 at *6 citing United States v. Golden Elevator, Inc ., 27 F.3d 301, 302 (7th Cir.1994)

Rule 37 is interpreted very broadly because all offending parties are presumed to know that tampering with the integrity of the judicial system, lying to the court, or engaging in other deceptive or abusive practices are absolutely unacceptable regardless of the absence of a specific court order to the contrary. *Id*.; see also *Lightspeed Media Corp. v. Smith*, 2015 WL 3545253, *5 (S.D. Ill. 2015) ("Although the language of Rule 37(b) requires violation of a judicial order in order to impose sanctions, a formal, written order to comply with discovery is not required, where

9

a litigant engages in abusive litigation practices."); *JFB Hart Coatings, Inc. v. AM Gen. LLC*, 764 F. Supp. 2d 974, 981-82 (N.D. Ill. 2011) ("Although Rule 37 requires violation of a judicial order before a court imposes sanctions, '[c]ourts can broadly interpret what constitutes an order for purposes of imposing sanctions' and a formal order is not required. This broad latitude "stems from the presumption that all litigants ... are reasonably deemed to understand that fabricating evidence and committing perjury is conduct of the sort that 'is absolutely unacceptable.'").

> ii. <u>Wrigley Repeatedly, Intentionally, and Maliciously Lied to this Court, Including Under Oath, and Obstructed Katherine's Access to Discovery</u>

Katherine's Motion for New Trial listed Wrigley's pervasive perjury as one of the grounds, and the Court disagreed that the new trial was a proper remedy. In this Motion, Katherine raises a different issue. The fact that Wrigley's perjuries may not justify a new trial does not mean that Wrigley should get away with those perjuries scot-free. The Court is still permitted to issue sanctions against Wrigley to punish her for her numerous perjuries.

**Even if the Court decides to impose mild sanctions against Wrigley, they would be very valuable to Katherine**. They would vindicate what most participants in this family saga had known for years – that Wrigley lies under oath and abuses discovery. Constantly. Because of space limitations, Katherine lists only most obvious, and clearly proven, Wrigley's perjuries.

> *(a) Wrigley's Perjuries #1 and #2 – Lying that She Did Not Submit a 2017 Complaint Against Katherine to Northwestern*

During her 2018 deposition, Wrigley falsely testified that she did not file anonymous complaint against Katherine at Northwestern in 2017, and did not know who did. Exhibit D at 114. Wrigley's lie was material: on June 7, 2016, the NY Supreme Court issued an order, discontinuing the TRO against Wrigley only on the condition that Wrigley does not contact Northwestern. Exhibit A. Wrigley violated that order. If Katherine learned in 2017 that Wrigley violated an order,

Katherine would have sought a new TRO. Thus, Wrigley filed her 2017 complaint anonymously.[3]

It is clear that Wrigley lied in deposition. After much delay, Kerr turned over an email she received from Wrigley, where Wrigley notified Kerr that she had submitted another complaint to Northwestern, and attached the confirmation email she received upon submission, and a copy of her complaint itself. Exhibit B. Hence Wrigley's perjury at deposition is undeniable.

During her testimony on August 22, 2019, Wrigley bizarrely repeated the same falsehood, testifying again that she did not think she submitted the 2017 complaint – after she was already shown her own email to Kerr confirming her submission. Exhibit J at 101. Wrigley could not explain the origin of her email to Kerr, or the automated email to her confirming her confirmation.

> *(b) Wrigley Perjury #3 – Lying about Having Deleted Her Email Account to Avoid Turning Over Documents in Discovery*

During discovery, Wrigley turned over virtually no documents, except those that she knew Katherine already had. During Wrigley's deposition on Sept 7, 2018, she falsely testified that the reason she did not turn over any meaningful documents was that during the period to which discovery applied, Wrigley was using her yahoo account, but 4-5 months before the deposition, she deactivated that yahoo account, deleted everything from it, and, in those last 4-5 months, was using a gmail account. Exhibit D at 74. Much later, in discovery in another case, Katherine obtained a discovery log from a law firm where Wrigley's brother, Dain, works, showing that Wrigley lied in every part of her deposition response. Exhibit E. Wrigley was sending emails to her co-defendants from her yahoo account as late as 9/28/2018 (row 15 in Exhibit E) – two weeks after she claimed at the deposition that she had deleted that account months earlier. And Wrigley's proclaimed use of gmail account was also a fabrication – the log shows that she never used gmail

---

[3] Not only did Wrigley file numerous malicious complaints against Katherine and her husband, she filed a false and malicious complaint against an attorney who represented Katherine's husband in Colorado, Carl Glatstein. Exhibit C. This complaint was another case of Wrigley's witness-tampering; after she submitted it, Mr. Glatstein had been investigated, his small practice threatened, and it became impossible for Katherine to call Mr. Glatstein as a witness.

account until 10 days before her deposition (row 14, Exhibit E).

Wrigley's perjury about the deleted email account was material: it allowed her not to turn over any meaningful documents in discovery. This perjury was also not an innocent mistake. This wasn't an offhand one-time response at the deposition. Wrigley received Katherine's discovery request. She testified that she turned to her numerous lawyers for assistance, and described how she was assisted with her searches. Exhibit D at 74-77. At the time of her deposition, the yahoo account, which she claimed she deleted to evade discovery, was her primary account.

*(c) Wrigley Perjury #4 – Lying about Not Having Been Served, and Not Having Received Any Service Attempts*

At an early stage of this litigation, Wrigley filed a sworn affidavit, falsely claiming that she was never served. Exhibit F. That was contradicted by a detailed report of service, Exhibit G, where the processor described how the saw two women at Wrigley's house, one woman "accepted the documents, but then, threw the papers back at me." Wrigley also falsely swore that there were no attempts to serve her at her house, Exhibit F. Meanwhile, two service logs, from a sheriff's deputy (6 attempts to serve) and from a professional process server (13 attempts), contradicted that. Exhibits H, I. This lie was material because the statute of limitations for defamation is only one year. If Wrigley's service had been invalid, it would have been too late to refile.

iii. Wrigley's Attorneys Knew that Wrigley Committed Numerous Perjuries, but Failed to Stop her or Inform the Court

When Wrigley was committing her perjuries, her attorneys, Mancilla and Fanton, knew about it: at that time of her deposition, they already had access to Kerr's discovery production (which Kerr did not turn over to Katherine until much later). Thus, they knew that (1) Wrigley did in fact submit the 2017 complaint to Northwestern, and (2) Wrigley had in fact used her yahoo email account that she claimed she had deleted to evade discovery. Because Wrigley's attorneys knowingly suborned perjury, sanctions should be awarded against them as well.

iv. <u>Kerr Knew that Wrigley Committed Perjury, but Failed to Stop her or Inform the Court</u>

For the reasons discussed above, Kerr and her attorneys knew that Wrigley was committing perjuries, but failed to do anything about it. In Order, this Court had stated:

> Katherine alleges that Kerr knew that Wrigley was engaging in alleged witness tampering and perjury and did nothing to stop this. The Court need not address whether Wrigley engaged in witness tampering or perjury, because even if she did, Katherine has not attempted to explain how that misconduct is fairly attributable to Kerr or Kerr's attorneys. Only misconduct *by the party seeking costs* can warrant the denial of costs. *Mother & Father*, 338 F.3d at 708. Order at 52.

But Kerr was a co-defendant in a joint conspiracy claim, and in a claim of aiding-and-abetting Wrigley. Wrigley's conduct is directly attributable to Kerr and Kerr's attorneys because Kerr's liability was parasitic to Wrigley's liability. A co-conspirator directly benefits from a fellow co-conspirator's successful perjury, aimed at obstructing discovery.

On other claims, Kerr's liability, although formally independent from Wrigley's, de facto depended on the jury's willingness to find Wrigley liable also. If the jury finds Wrigley not liable (because Wrigley successfully concealed evidence), then, the case against Kerr collapses.

Thus, when Wrigley lied under oath that she did not violate a court order prohibiting her from contacting Northwestern, this benefitted not only Wrigley, but Kerr too. When Wrigley lied under oath that she could not comply with discovery requests because she had deleted her email account, Kerr directly benefitted from the concealment of legally discoverable information.

v. <u>Kerr's Attorneys Knew that Wrigley Committed Perjury, but Failed to Stop Her or Inform the Court</u>

Kerr's attorneys knew that Wrigley committed perjuries because by the time of Wrigley's deposition, they already had Wrigley's emails to Kerr, and those emails definitively showed that Wrigley lied. Failing to stop Wrigley's perjury helped Kerr, and therefore Kerr's attorneys. Importantly, Kerr's attorneys directly assisted Wrigley in her perjury: they had possession of a

smoking gun showing that Wrigley lied, but wrongfully delayed the release of Kerr's correspondence with Wrigley in discovery. They delayed the release until after Kerr's and Wrigley's depositions, making it impossible for Katherine to properly depose Kerr and Wrigley.

Finally, Katherine reminds the Court that Kerr's attorneys directly lied to this Court. They tried to obtain the Court's permission to seek an order from Kerr's personal acquaintance, Judge Leith of Denver Probate Court. Kerr's attorneys tried to convince J. Leith to issue a bizarre preemptive order that would have answered the very question that this jury was asked to answer. The genius of Kerr's scheme was that she was asking her personal friend, J. Leith, to issue an order against Katherine (even though Katherine has never been a party to any litigation before J. Leith, and J. Leith had no jurisdiction over Katherine), and, at that same time, Katherine could not object to these machinations in Colorado because Katherine was not a party to litigation where Kerr was seeking the order. Katherine's husband was a party to that litigation, but could not object to Kerr's motion because he had no standing: he was not personally injured. This Court's Order stated:

> Although the Court agrees that, **based on counsel's second statement, his first statement was false**, this conduct is not so egregious that it would justify denying costs. Order at 51.

While the total denial of costs may not be justified by attorneys' lying to this Court, a different remedy (sanctions against those attorneys) are justified by the combination of their (1) lying to the Court, and (2) concealing known perjuries by Wrigley, and (3) aiding and abetting Wrigley's discovery abuse by delaying the release of smoking-gun evidence conclusively provide perjury. Kerr's attorneys are experienced, partners at a big law firm; they should know better.

**C. Reasonable Sanctions Are the Value of Katherine's Time and Her Attorneys' Time Incurred in Responding to Wrigley's Abuse of Discovery and Barrage of Perjuries, and Kerr's and Attorneys' Failure to Stop Them.**

Because of Wrigley's persistent pattern of perjury and discovery abuse, and Kerr's own discovery abuse (of turning to Denver Probate Court for an order preempting the current litigation),

Katherine had to pay her then-attorneys, Mr. Homyk and Ms. Abraham, to counteract these specific actions. Katherine also had to take time away from her own work to research and prepare her responses. Further, Katherine had to pay an attorney in Colorado to advise her how to respond to Kerr's motion to get a preemptive order from J. Leith. Katherine spent at least 25 hours to deal with Wrigley's and Kerr's perjury and discovery abuses. Katherine estimates that her total legal costs and value of her time attributable to Wrigley's and Kerr's misbehavior, are above $20,000.

Katherine is asking the Court to make all parties – Kerr, Wrigley, Kerr's attorney Steven Mandell, and Wrigley's attorneys Robert Fantone and Andrew Mancilla – jointly and severally liable for these sanctions.

## **CONCLUSION**

Katherine asks this Court to: (1) amend the judgment for taxation of costs, removing two clearly internally inconsistent entries related to Bernard's stay in Israel; (2) reduce all taxable costs by 75% because Kerr's share was 25%, and reasonable mitigation requires Kerr to obtain contribution from co-defendants. Or, (3) order Wrigley to turn over certified copies of documents showing that, prior to Kerr's making her motion for taxation of costs, Wrigley made direct payments of her share for each item for which Kerr was seeking taxation of costs. If Wrigley fails to do so, (4) not tax Katherine for such items at all. Or, (5) enter judgment for sanctions against Wrigley, Kerr, Mancilla, Fanton, and Mendell, in favor of Katherine, for at least $20,000. Or, (6) order a new trial. Or, (7) whatever other relief this Court deems fit.

Dated: August 29, 2020

                                                                        Respectfully submitted,

                                                                        KATHERINE BLACK

2829 Sheridan Place                                        *Pro se*
Evanston IL 60201
Kate.litvak@gmail.com                                /s/ Katherine Black